## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **AGIS SOFTWARE DEVELOPMENT LLC** §<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>**HUAWEI DEVICE USA INC.,** §<br>**HUAWEI TECHNOLOGIES USA INC.,** §<br>**AND** §<br>**HUAWEI TECHNOLOGIES CO., LTD.,** §<br>§<br>**Defendants.** §<br>§ | **Case No. 2:17-cv-513**<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, AGIS Software Development, LLC ("AGIS Software" or "Plaintiff") files this Original Complaint against Defendants Huawei Device USA Inc., Huawei Technologies USA Inc., and Huawei Technologies Co., Ltd. (collectively, "Defendants" or "Huawei") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

### THE PARTIES

1.    Plaintiff, AGIS Software, is a limited liability company organized and existing under the laws of the State of Texas, and maintains its principal place of business at 100 W. Houston Street, Marshall, Texas 75670.  AGIS Software is the owner of all right, title, and interest in and to U.S. Patent Nos. 9,467,838, 9,445,251, 9,408,055, and 8,213,970 (collectively, the "patents-in-suit").

2.    Upon information and belief, Defendant Huawei Technologies Co., Ltd. is a Chinese company that does business in Texas, directly or through intermediaries, and maintains

its principal place of business in Shenzhen, China.  Upon information and belief, Huawei

Technologies Co., Ltd. does business in Texas, directly or through intermediaries and offers its

products and/or services, including those accused herein of infringement, to customers and

potential customers located in Texas, including in the judicial Eastern District of Texas.

3.      Upon information and belief, Defendant Huawei Device USA Inc., is a Texas

corporation with its principal place of business located at 5700 Tennyson Parkway, Suite 600,

Plano, Texas 75024, and may be served with process through its registered agent, CT

Corporation System, 350 North Paul St., Ste. 2900, Dallas, Texas 75201.  Upon information and

belief, Huawei Device USA Inc. is a wholly-owned subsidiary of Huawei Technologies Co., Ltd.

4.      Upon information and belief, Defendant Huawei Technologies USA, Inc., is a

Texas corporation with its principal place of business located at 5700 Tennyson Parkway, Suite

500, Plano, TX 75024 and may be served with process through its registered agent, CT

Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.  Upon information and

belief, Huawei Device USA Inc. is a wholly-owned subsidiary of Huawei Technologies Co., Ltd.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the patent laws of the

United States, 35 U.S.C. §§ 1, et seq.  This Court has jurisdiction over this action pursuant to

28 U.S.C. §§ 1331, 1338(a), and 1367.

6.      This Court has personal jurisdiction over Defendants.  Defendants conduct

business and have committed acts of patent infringement and/or have induced acts of patent

infringement by others in this judicial district and/or have contributed to patent infringement by

others in this judicial district, the State of Texas, and elsewhere in the United States.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).  Huawei

Technologies Co., Ltd. is a foreign corporation and may be sued in this judicial district.  Venue

is further proper against Huawei Technologies USA Inc. and Huawei Device USA Inc. because

both companies are incorporated in the State of Texas and, thus, reside in Texas.  Venue is

further proper because Defendants together have regular and established places of business in

this judicial district, including in Plano, are deemed to reside in this judicial district, have

committed acts of infringement in this judicial district, and/or have purposely transacted business

involving the accused products in this judicial district.

## **PATENTS-IN-SUIT**

8.      On July 3, 2012, the United States Patent and Trademark Office duly and legally

issued U.S. Patent No. 8,213,970 (the "'970 Patent") entitled "Method of Utilizing Forced Alerts

for Interactive Remote Communications."  A true and correct copy of the '970 Patent is attached

hereto as Exhibit A.

9.      On August 2, 2016, the United States Patent and Trademark Office duly and

legally issued U.S. Patent No. 9,408,055 (the "'055 Patent") entitled "Method to Provide Ad Hoc

and Password Protected Digital and Voice Networks."  A true and correct copy of the '055

Patent is attached hereto as Exhibit B.

10.     On September 13, 2016, the United States Patent and Trademark Office duly and

legally issued U.S. Patent No. 9,445,251 (the "'251 Patent") entitled "Method to Provide Ad Hoc

and Password Protected Digital and Voice Networks."  A true and correct copy of the '251

Patent is attached hereto as Exhibit C.

11.     On October 11, 2016, the United States Patent and Trademark Office duly and

legally issued U.S. Patent No. 9,467,838 (the "'838 Patent") entitled "Method to Provide Ad Hoc

and Password Protected Digital and Voice Networks."  A true and correct copy of the '838

Patent is attached hereto as Exhibit D.

## FACTUAL ALLEGATIONS

12.     Malcolm K. "Cap" Beyer, Jr., a graduate of the United States Naval Academy and

a former U.S. Marine, is the CEO of AGIS Software and a named inventor of the AGIS patent

portfolio.  Mr. Beyer founded Advanced Ground Information Systems, Inc. ("AGIS, Inc.")

shortly after the September 11, 2001, terrorist attacks because he believed that many first-

responder and civilian lives could have been saved through the implementation of a better

communication system.  He envisioned and developed a new communication system that would

use integrated software and hardware components on mobile devices to give users situational

awareness superior to systems provided by conventional military and first-responder radio

systems.

13.     AGIS, Inc. developed prototypes that matured into its LifeRing system.  LifeRing

provides first responders, law enforcement, and military personnel with what is essentially a

tactical operations center built into hand-held mobile devices.  Using GPS-based location

technology and existing or special-purpose cellular communication networks, LifeRing users can

exchange location, heading, speed, and other information with other members of a group, view

each other's locations on maps and satellite images, and rapidly communicate and coordinate

their efforts.  The system also interfaces with military command-and-control systems, such as

GCCS, JCR, AFATDS, C2PC, and FBCB2.

14.     AGIS Software licenses its patent portfolio, including the '970, '055, '251, and

'838 Patents to AGIS, Inc.  AGIS, Inc.'s LifeRing product practices one or more of the patents in

the AGIS portfolio and AGIS, Inc. has marked its products accordingly.

15.     AGIS Software and all previous assignees of the patents-in-suit have complied with the requirements of 35 U.S.C. § 287(a).

16.     Non-party Google, Inc. ("Google") licenses the Android operating system to third parties, including Defendants, who design their own products that utilize the Android operating system.  The Android operating system is the most widely used in smartphones and other mobile devices.

17.     Defendants manufacture, use, sell, offer for sale, and/or import into the United States electronic devices, such as Android-based smartphones and tablets (including, but not limited to, the Union, Mate 9, Nexus 6P, GX8, and P8lite) (collectively, the "Accused Devices"), all of which are pre-configured or adapted with map-based communication applications and/or features such as Google Maps, Android Device Manager, Find My Phone, Find My Device, Google Messages, Android Messenger, Google Hangouts, Google Plus, and Google Latitude, among other applications and/or features relevant to the patents-in-suit.  The Accused Devices include software, including but not limited to the above-listed applications and/or features as components of its operating system and as downloads from a pre-installed application store, such as the Play Store, in the Accused Devices.  The Accused Devices include functionality that allows users to form groups with other users such that users may view each others' locations on a map and engage in communication including text, voice, and multimedia based communication. Additionally, the users may form groups that include their own devices in order to track their own lost or stolen devices as shown below.





## COUNT I
### (Infringement of the '970 Patent)

18.     Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth in their entireties.

19.     AGIS Software has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any Accused Devices and/or products that embody the inventions of the '970 Patent.

20.     Defendants have and continue to directly infringe at least claim 6 of the '970 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Devices without authority and in violation of 35 U.S.C. § 271(a).

21.     Defendants have and continue to indirectly infringe at least claim 6 of the '970 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the infringing Accused Devices and by instructing users of the Accused Devices to perform methods claimed in the '970 Patent.  For example, Defendants, with knowledge that the Accused Devices infringe the '970 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, direct infringement of the '970 Patent in violation of 35 U.S.C. § 271(b).

22.     For example, Defendants have indirectly infringed and continue to indirectly infringe at least claim 6 of the '970 Patent in the United States because Defendants' customers use such devices, including at least the Android Device Manager, Find My Phone, Find My Device, Google Messages, Android Messenger, Google Hangouts, Google Plus, and Google

Latitude, and Google Maps apps installed on the Accused Devices, in accordance with

Defendants' instructions and thereby directly infringe at least claim 6 of the '970 Patent in

violation of 35 U.S.C. § 271.  For example, Huawei directly and/or indirectly intentionally

instructs its customers to infringe through training videos, demonstrations, brochures,

installations and/or user guides, such as those located at one or more of the following:

www.huawei.com, consumer.huawei.com,

http://devicehelp.virginmobileusa.com/document/HowToSetupGuide/Union/Virgin_Mobile/en/U

se_Android_Device_Manager_with_your_Huawei_Union, and Huawei agents and

representatives located within this judicial district.  Defendants are thereby liable for

infringement of the '970 Patent under 35 U.S.C. § 271(b).

      23.     For example, Defendants directly and/or indirectly instruct their customers to

infringe through pre-installed applications in the exemplary Accused Devices as shown below.



(https://support.google.com/accounts/answer/3265955?hl=en)

24.     AGIS Software has suffered damages as a result of Defendants' direct and indirect infringement of the '970 Patent in an amount to be proved at trial.

25.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '970 Patent for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

26.     Defendants have committed and continue to commit acts of infringement that Defendants actually knew or should have known constituted an unjustifiably high risk of

infringement of at least one valid and enforceable claim of the '970 Patent.  Defendants'

infringement of the '970 Patent has been and continues to be willful, entitling AGIS Software to

an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## COUNT II
### (Infringement of the '055 Patent)

27.     Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth

in their entireties.

28.     AGIS Software has not licensed or otherwise authorized Defendants to make, use,

offer for sale, sell, or import any Accused Devices and/or products that embody the inventions of

the '055 Patent.

29.     Defendants have and continue to directly infringe at least claim 28 of the '055

Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell,

selling and/or importing into the United States the Accused Devices without authority and in

violation of 35 U.S.C. § 271(a).

30.     Defendants have and continue to indirectly infringe at least claim 28 of the '055

Patent by actively, knowingly, and intentionally inducing others to directly infringe, either

literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or

importing into the United States the Accused Devices and by instructing users of the Accused

Devices to perform methods claimed in the '055 Patent.  For example, Defendants, with

knowledge that the Accused Devices infringe the '055 Patent at least as of the date of this

Complaint, actively, knowingly, and intentionally induced, and continue to actively, knowingly,

and intentionally induce, direct infringement of the '055 Patent in violation of 35 U.S.C.

§ 271(b).

31.    For example, Defendants have indirectly infringed and continue to indirectly infringe at least claim 28 of the '055 Patent in the United States because Defendants' customers use such devices, including at least the Android Device Manager, Find My Device, Find My Phone, Google Maps, Google Messages, Android Messenger, Google Hangouts, Google Plus, and Google Latitude apps installed on the Accused Devices, in accordance with Defendants' instructions and thereby directly infringe at least one claim of the '055 Patent in violation of 35 U.S.C. § 271.  Defendants directly and/or indirectly intentionally instruct their customers to infringe through training videos, demonstrations, brochures, installations and/or user guides such as those located at one or more of the following: www.huawei.com, consumer.huawei.com, and Huawei agents and representatives located within this judicial district.  Defendants are thereby liable for infringement of the '055 Patent under 35 U.S.C. § 271(b).

32.    For example, Defendants' exemplary Accused Devices are pre-installed with at least the Google Maps app which allows users to share their location and view other users' locations on a map and to communicate with those users via the Google Maps app (as shown below) which is integrated with Google Messages or Android Messenger and which is also pre-installed on the exemplary Accused Devices.



33.     The exemplary Accused Devices are programmed to obtain contact information from other users' devices, where that contact information includes phone numbers. (e.g., https://support.google.com/nexus/answer/6118731?hl=en&ref_topic=6118711)

34.     The exemplary Accused Devices are further programmed to facilitate the initiation of Internet Protocol (IP) based communication between devices with SMS messages and other text messages.  This functionality is available at least through Google Hangouts and the Messages apps.  (e.g., https://play.google.com/store/apps/details?id=com.google.android.apps.messaging&hl=en; https://play.google.com/store/apps/details?id=com.google.android.talk&hl=en).  The IP- and SMS-based messages include location information as depicted below. (e.g., https://blog.google/topics/rcs/delivering-rcs-messaging-android-users-worldwide/)



35.     This location information is presented on interactive displays on the exemplary Accused Devices which include interactive maps and a plurality of user-selectable symbols corresponding to other devices.  These symbols are positioned on the map at positions corresponding to the locations of the other devices as depicted below.  (e.g., https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/)



36.     The exemplary Accused Devices are further programmed to permit interaction with the display where a user may select one or more symbols and where the exemplary Accused Devices further permit data to be sent to other devices based on that interaction.  The exemplary Accused Devices are further programmed to permit users to specify additional locations and to communicate those user-specified locations to other users via symbols on an interactive display as depicted below.  (e.g., https://support.google.com/maps/answer/144361?co=GENIE.Platform%3DAndroid&hl=en)

# Embed a map or share a location

On your computer, you can embed a map, Street View image, driving directions, or search into your website or blog. On your computer, phone, or tablet, you can share a location or map with others over email, Google+, Facebook, Twitter, or text.

**ANDROID**    COMPUTER    IPHONE & IPAD

## Share a map or location

1. Open the Google Maps app 📍.
2. Search for a place. Or find a place on the map then touch and hold to drop a pin.
3. At the bottom, tap the place's name or address.
4. Tap Share ◁. If you don't see this, tap More ⋮ > **Share**.
5. Select an app. It'll send a link that shows the place in Google Maps.

## Share your E.T.A

After you start your drive, you can share your destination, estimated arrival time, and where you are on the route.

1. Open the Google Maps app 📍.
2. Set a driving destination. Learn how to navigate to a place.
3. After you start navigation, tap **More** ⌃ > **Share trip progress**.
4. Choose a person from the list.
5. Tap **Share**.
6. Location Sharing will stop when you reach your destination or stop navigating.

• To stop sharing before you arrive, tap **More** ⋮ > **Stop sharing**.

37.    AGIS Software has suffered damages as a result of Defendants' direct and indirect infringement of the '055 Patent in an amount to be proved at trial.

38.    AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '055 Patent for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

39.    Defendants have committed and continue to commit acts of infringement that Defendants actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '055 Patent.  Defendants'

infringement of the '055 Patent has been and continues to be willful, entitling AGIS Software to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## COUNT III
### (Infringement of the '251 Patent)

40.    Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth in their entireties.

41.    AGIS Software has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '251 Patent.

42.    Defendants have and continue to directly infringe at least claim 24 of the '251 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Devices without authority and in violation of 35 U.S.C. § 271(a).

43.    Defendants have and continue to indirectly infringe at least claim 24 of the '251 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Devices and by instructing users of the Accused Devices to perform methods claimed in the '251 Patent.  For example, Defendants, with knowledge that the Accused Devices infringe the '251 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce, direct infringement of the '251 Patent.

44.    For example, Defendants have indirectly infringed and continue to indirectly infringe at least claim 24 of the '251 Patent in the United States because Defendants' customers use such devices, including at least the Android Device Manager, Find My Device, Google Maps, Google Messages, Android Messenger, Google Hangouts, Google Plus, and Google

Latitude apps installed on the Accused Devices, in accordance with Defendants' instructions and thereby directly infringe at least one claim of the '251 Patent in violation of 35 U.S.C. § 271. Defendants directly and/or indirectly intentionally instruct their customers to infringe through training videos, demonstrations, brochures, installations and/or user guides, such as those located at one or more of the following: www.huawei.com, consumer.huawei.com, and Huawei agents and representatives located within this judicial district.  Defendants are thereby liable for infringement of the '251 Patent under 35 U.S.C. § 271(b).

45.     For example, Defendants' Accused Devices are pre-installed with at least the Google Maps app which allows users to share their location and view other users' locations on a map and to communicate with those users via the Google Maps app (as shown below) which is integrated with Google Messages or Android Messenger and which is also pre-installed on the Accused Devices.



46.     The exemplary Accused Devices are programmed to receive messages from other devices where those messages relate to joining groups as depicted below.  (e.g., https://support.google.com/plus/answer/3302509?hl=en&co=GENIE.Platform%3DAndroid&oco =1; https://support.google.com/mail/answer/30970?hl=en)

## Create a group

1. Go to Google Contacts ⧉.
2. On the left under "Labels," click **Create label**. (If you don't see "Labels," go to group contacts in old Contacts.)
3. Type a name, then click **OK**.

---

**Add contacts to a group label**                                      ⌃

1. To select contacts, check the boxes next to their names.
2. In the top right, click Label ▥. (If you don't see Label ▥, go to group contacts in old Contacts.)
3. Choose the groups you want to add the contacts to. You'll see a checkmark appear next to the groups you chose.

47.     The exemplary Accused Devices are further programmed to facilitate participation in the groups by communicating with a server and sending to and receiving location information as depicted below.  (e.g., https://developers.google.com/maps/documentation/android-api/location).

## The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

* Determine the device location.
* Listen for location changes.
* Determine the mode of transportation, if the device is moving.
* Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Google Maps Android API, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

48.     This location information is presented on interactive displays on the exemplary Accused Devices which include interactive maps and a plurality of user selectable symbols corresponding to other devices.  These symbols are positioned on the map at positions

corresponding to the locations of the other devices as depicted below.  (e.g.,

https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/)



49.     The exemplary Accused Devices are further programmed to permit users to

request and display additional maps by, for example, moving the map screen and/or by selecting

satellite image maps.  The exemplary Accused Devices are further programmed to permit

interaction with the display where a user may select one or more symbols and where the

exemplary Accused Devices further permit data to be sent to other devices based on that

interaction.

50.     AGIS Software has suffered damages as a result of Defendants' direct and

indirect infringement of the '251 Patent in an amount to be proved at trial.

51.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a

result of Defendants' infringement of the '251 Patent for which there is no adequate remedy at

law, unless Defendants' infringement is enjoined by this Court.

52.     Defendants have committed and continue to commit acts of infringement that

Defendants actually knew or should have known constituted an unjustifiably high risk of

infringement of at least one valid and enforceable claim of the '251 Patent.  Defendants'

infringement of the '251 Patent has been and continues to be willful, entitling AGIS Software to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## COUNT IV
### (Infringement of the '838 Patent)

53.     Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth in their entireties.

54.     AGIS Software has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any Accused Devices and/or products that embody the inventions of the '838 Patent.

55.     Defendants have and continue to directly infringe at least claim 54 of the '838 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Devices without authority and in violation of 35 U.S.C. § 271(a).

56.     Defendants have and continue to indirectly infringe at least claim 54 of the '838 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Devices and by instructing users of the Accused Devices to perform methods claimed in the '838 Patent.  For example, Defendants, with knowledge that the Accused Devices infringe the '838 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continue to actively, knowingly, and intentionally induce direct infringement of the '838 Patent in violation of 35 U.S.C. § 271(b).

57.     For example, Defendants have indirectly infringed and continue to indirectly infringe at least claim 54 of the '838 Patent in the United States because Defendants' customers

use such devices, including at least the Android Device Manager, Find My Device, Google

Maps, Google Messages, Android Messenger, Google Hangouts, Google Plus, and Google

Latitude apps installed on the Accused Devices, in accordance with Defendants' instructions and

thereby directly infringe at least one claim of the '838 Patent in violation of 35 U.S.C. § 271.

Defendants directly and/or indirectly intentionally instruct their customers to infringe through

training videos, demonstrations, brochures, installations and/or user guides such as those located

at one or more of the following: www.huawei.com, consumer.huawei.com, and Huawei agents

and representatives located within this judicial district.  Defendants are thereby liable for

infringement of the '838 Patent under 35 U.S.C. § 271(b).

       58.    For example, Defendants' Accused Devices are pre-installed with at least the

Google Maps app which allows users to share their location and view other users' locations on a

map and to communicate with those users via the Google Maps app (as shown below) which is

integrated with Google Messages or Android Messenger and which is also pre-installed on the

Accused Devices.



       59.    The exemplary Accused Devices are programmed to form and join groups by

transmitting messages.  (e.g.,

https://support.google.com/plus/answer/3302509?hl=en&co=GENIE.Platform%3DAndroid&oco=1; https://support.google.com/mail/answer/30970?hl=en)

## Create a group

1. Go to Google Contacts ⬀.
2. On the left under "Labels," click **Create label**. (If you don't see "Labels," go to group contacts in old Contacts.)
3. Type a name, then click **OK**.

Add contacts to a group label                                              ⌃

1. To select contacts, check the boxes next to their names.
2. In the top right, click Label 🏷. (If you don't see Label 🏷, go to group contacts in old Contacts.)
3. Choose the groups you want to add the contacts to. You'll see a checkmark appear next to the groups you chose.

60.    The exemplary Accused Devices are further programmed to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information as depicted below.  (e.g., https://developers.google.com/maps/documentation/android-api/location).

## The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

- Determine the device location.
- Listen for location changes.
- Determine the mode of transportation, if the device is moving.
- Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Google Maps Android API, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

61.    This location information is presented on interactive displays on the exemplary Accused Devices which include interactive maps and a plurality of user selectable symbols

corresponding to other devices.  These symbols are positioned on the map at positions

corresponding to the locations of the other devices as depicted below.  (e.g.,

https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/)



62.    The exemplary Accused Devices are further programmed to permit users to

request and display additional maps from additional servers by, for example, moving the map

screen and/or by selecting satellite image or other types of maps.  The exemplary Accused

Devices are further programmed to permit interaction with the display where a user may select

one or more symbols and where the exemplary Accused Devices further permit data to be sent to

other devices based on that interaction.

63.    AGIS Software has suffered damages as a result of Defendants' direct and

indirect infringement of the '838 Patent in an amount to be proved at trial.

64.    AGIS Software has suffered, and will continue to suffer, irreparable harm as a

result of Defendants' infringement of the '838 Patent for which there is no adequate remedy at

law, unless Defendants' infringement is enjoined by this Court.

65.    Defendants have committed and continue to commit acts of infringement that

Defendants actually knew or should have known constituted an unjustifiably high risk of

infringement of at least one valid and enforceable claim of the '838 Patent. Defendants'

infringement of the '838 Patent have been and continue to be willful, entitling AGIS Software to

an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, AGIS Software prays for relief against Defendants as follows:

a.     Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the patents-in-suit;

b.     Entry of judgment declaring that Defendants' infringement of the patents-in-suit has been willful and deliberate;

c.     An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the patents-in-suit;

d.     An order awarding damages sufficient to compensate AGIS Software for Defendants' infringement of the patents-in-suit, but in no event less than a reasonable royalty, together with interest and costs;

e.     An order awarding AGIS Software treble damages under 35 U.S.C. § 284 as a result of Defendants' willful and deliberate infringement of the patents-in-suit;

f.     Entry of judgment declaring that this case is exceptional and awarding AGIS Software its costs and reasonable attorney fees under 35 U.S.C. § 285; and

g.     Such other and further relief as the Court deems just and proper.

Dated: June 21, 2017                                    Respectfully submitted,

MCKOOL SMITH, P.C.

*/s/ DRAFT*
Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
MCKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Alfred R. Fabricant
NY Bar No. 2219392
Email: afabricant@brownrudnick.com
Peter Lambrianakos
NY Bar No. 2894392
Email:  plambrianakos@brownrudnick.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email:  vrubino@brownrudnick.com
Alessandra C. Messing
NY Bar No. 5040019
Email:  amessing@brownrudnick.com
John A. Rubino
NY Bar No. 5020797
Email: jrubino@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

**ATTORNEYS FOR PLAINTIFF,
AGIS SOFTWARE DEVELOPMENT
LLC**