**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| AGIS SOFTWARE DEVELOPMENT LLC<br><br>          Plaintiff,<br><br>     v.<br><br>HUAWEI DEVICE USA INC., HUAWEI DEVICE CO., LTD. AND HUAWEI DEVICE (DONGGUAN) CO., LTD.<br><br>          Defendants. | LEAD CASE NO. 2:17-cv-513-JRG<br><br>**JURY TRIAL DEMANDED** |
| AGIS SOFTWARE DEVELOPMENT LLC<br><br>          Plaintiff,<br><br>     v.<br><br>LG ELECTRONICS, INC.<br><br>          Defendant. | MEMBER CASE NO. 2:17-cv-515-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT LG ELECTRONICS, INC.'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................ 3

    A.    AGIS'S COMPLAINT AND PROCEDURAL HISTORY.................................... 3

    B.    PLAINTIFF AGIS AND ITS FORUM SELECTION TACTICS .......................... 4

    C.    DEFENDANT LGEKR IS A FOREIGN CORPORATION WITH NO JURISDICTIONAL CONTACTS WITH TEXAS RELATED TO THE ACCUSED DEVICES .................................................................................. 5

    D.    THIRD-PARTY EVIDENCE RELATED TO THE ACCUSED APPLICATIONS USED WITH THE ACCUSED DEVICES ARE LOCATED IN AND AROUND NORTHERN CALIFORNIA ............................ 7

III.  LEGAL STANDARDS ................................................................................. 8

    A.    PERSONAL JURISDICTION.................................................................... 8

    B.    TRANSFER OF VENUE PURSUANT TO 28 U.S.C. §1404(A)...................... 10

IV.   ARGUMENT ............................................................................................ 11

    A.    EXERCISING PERSONAL JURISDICTION OVER LGEKR WOULD NOT COMPORT WITH DUE PROCESS ......................................................... 11

        1.    LGEKR Is Not Subject To General Jurisdiction In EDTX...................... 11

        2.    The Court Does Not Have Specific Jurisdiction Over LGEKR Because The Issues In This Case Do Not Arise Out Of Or Relate To Any Contacts Between LGEKR And Texas ..................................... 12

            a.    LGEKR Does Not Have Minimum Contacts With Texas .............13

            b.    Any Exercise Of Jurisdiction Over LGEKR Would Not Be Reasonable Or Fair ......................................................15

    B.    ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(A) ....................................................................................... 18

        1.    AGIS Could Have Brought Suit In The Northern District of California ............................................................................... 18

        2.    The Court Should Not Give Deference To AGIS's Choice of Venue ...................................................................................... 19

        3.    All Private Interest Factors Weigh In Favor of Transfer ......................... 19

          a.      The Relative Ease of Access To Sources of Proof Factor Favors NDCA ................................................................................19

          b.      The Availability of Compulsory Process To Secure the Attendance of Witnesses Factor Strongly Favors NDCA..............21

          c.      The Convenience For Witnesses Factor Favors NDCA ................22

     4.      The Local Interests Factor Favors Transfer To NDCA ............................ 23

     5.      All Remaining Factors Are Neutral .......................................................... 24

V.     CONCLUSION............................................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010)..............................................................................21

*Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd. et al.*,
    968 F. Supp. 2d 852 (E.D. Tex. 2013) ...........................................................17, 19

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
    689 F.3d 1358 (Fed. Cir. 2012).......................................................................9, 10

*In re Apple, Inc.*,
    581 F. App'x 886 (Fed. Cir. 2014) .......................................................................22

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009)...............................................................8, 9, 12, 13

*Beijing Zhongyi Zhongbiao Elec. Info. Tech. v. Microsoft Corp.*,
    No. 4:12-cv-4077, 2013 WL 3808009 (W.D. Ark. July 22, 2013).........................20

*Bluestone Innovations, LLC v. LG Elecs., Inc.*,
    940 F. Supp. 2d 310 (E.D. Va. 2013) ...........................................................17, 19

*Bluestone Innovations Tex., LLC v. Formosa Epitaxy Inc.*,
    822 F. Supp. 2d 657 (E.D. Tex. 2011)...................................................................12

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006).............................................................................12

*Burger King Corp. v. Rudzewicz*,
    105 S. Ct. 2174 (1985)..........................................................................................15

*Celgard, LLC v. SK Innovation Co., Ltd.*
    792 F.3d 1373 (Fed. Cir. 2015)...................................................................8, 14, 15

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).........................................................................9, 11, 12, 16

*Droplets, Inc. v. Amazon.com, Inc.*,
    No. 11-cv-392, 2012 WL 3578605 (E.D. Tex. June 27, 2012) .............................22

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc. et al.*,
    No. 2:15-cv-2049-JRG, 2016 WL 6917272 (E.D. Tex. Sept. 1, 2016) ..................14

*Fujinomaki v. Google Inc. et al.*,
    No. 2:15-cv-1381-JRG-RSP, 2016 WL 2807798 (E.D. Tex. May 13, 2016) ..................17, 18

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)...................................................................................10, 19, 22

*Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*,
   No. 2:15-cv-01702-RWS-RSP (E.D. Tex. Mar. 24, 2017), ECF No. 73................................23

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*,
   No. 2:17-cv-00100-JRG-RSP, 2017 WL 4076052 (E.D. Tex. Sept. 14, 2017)................11, 21

*Gonzalez v. Social Concepts, Inc.*,
   No. 2:14-cv-650-JRG-RSP (E.D. Tex. Mar. 24, 2015), ECF No. 12 ......................................23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846 (2011)..........................................................................................................9, 11, 12

*In re Hoffmann-LaRoche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)...................................................................................20, 21, 23

*In re Horseshoe Ent'mt*,
   337 F.3d 429 (5th Cir. 2003) .......................................................................................................18

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................................................11, 12

*J. McIntyre Mach., Ltd. v. Nicastro*,
   131 S. Ct. 2780 (2011)....................................................................................................................18

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ...........................................................................................................8

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011)......................................................................................................19

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009).......................................................................................................19

*Optimum Power Sols. LLC v. Apple, Inc.*,
   794 F. Supp. 2d 696 (E.D. Tex. 2011)..........................................................................................20

*Perkins v. Benguet Consol. Mining Co.*,
   342 U.S. 437 (1952)..........................................................................................................................12

*Porto Tech. Co., Ltd. v. Samsung Elec. Am., Inc. et al.*,
   Case No. 15-cv-00456-JRG-RSP, 2:15-cv-00458-JRG-RSP, 2:15-cv-00459-
   JRG-RSP, 2:15-cv-00460-JRG-RSP, 2016 WL 937388
   (E.D. Tex. Mar. 11, 2016)................................................................................................................23

*QR Spex, Inc. v. Motorola, Inc.*,
    507 F. Supp. 2d 650 (E.D. Tex. 2007) ...........................................................................10, 14

*Regent Mkts. Grp., Ltd. v. IG Mkts., Inc.*,
    No. 2:10-cv-42-TJW, 2011 WL 1135123 (E.D. Tex. Mar. 25, 2011) ....................................21

*Rothschild Storage Retrieval Innovations, LLC v. LG Elecs., Inc. et al.*,
    No. 14-cv-22654-DPG, 2015 WL 11233067 (S.D. Fla. June 3, 2015) ...................................18

*Software Rights Archive, LLC v. Google, Inc.*,
    No. 2:07-cv-511, 2010 WL 2950351 (E.D. Tex. July 22, 2010) ...........................................23

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)................................................................................10, 19, 22

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017) ...........................................................................................................2, 17

*In re Volkswagen AG (Volkswagen I)*,
    371 F.3d 201 (5th Cir. 2004) ...........................................................................................10, 18

*In re Volkswagen of Am., Inc. (Volkswagen II)*,
    545 F.3d 304 (5th Cir. 2008) (en banc) .............................................................10, 11, 22

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ...........................................................................................9, 13, 14

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)....................................................................................24

*Zitovault, LLC v. Amazon.com, Inc.*,
    No. 6:15-cv-152-JRG, 2015 WL 11089482 (E.D. Tex. Dec. 4, 2015)...................................20

**STATUTES, RULES AND REGULATIONS**

28 U.S.C.

    § 1391(c)(2) ...........................................................................................................18

    § 1391(c)(3) ...........................................................................................................17, 18

    § 1400(b)................................................................................................................18

    § 1404(a) .................................................................................................1, 10, 18, 22

Fed. R. Civ. P.

12(b)(2) ...................................................................................................................9, 17

45(c)(1)(B) ...................................................................................................................21

## STATEMENT OF THE ISSUE TO BE DECIDED

1. Whether the Court should dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over Defendant LG Electronics, Inc., who Plaintiff acknowledges is a Korean company with its principal place of business in Korea and who has no contacts relevant to Plaintiff's patent infringement allegations in Texas.

2. Alternatively, whether the Court should transfer this case to the Northern District of California under 28 U.S.C. § 1404, which is the forum that is more convenient for the relevant party and non-party witnesses and evidence implicated by the Complaint.

Defendant LG Electronics, Inc. ("LGEKR") respectfully moves this Court to dismiss AGIS Software Development LLC's ("AGIS") Complaint for Patent Infringement (D.I. 1) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, or, in the alternative, to transfer this case to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a).

## I.     INTRODUCTION

It is a well-known fact and a matter of public record that LGEKR is a foreign entity and that the relevant U.S. entity for the importation and sale of LG mobile devices in the United States is LGEKR's United States subsidiary, LG Electronics MobileComm U.S.A., Inc. ("LGEMU").  LGEMU is a California company with large offices in the Northern and Southern Districts of California.  Here, AGIS has tactically ignored the relevant U.S. subsidiary, and its Complaint is purposefully and solely limited to claims that LGEKR infringes four related U.S. patents by selling certain Android mobile devices in this District ("EDTX").

As confirmed by the declarations filed in support of this motion and previous public record filings in EDTX, LGEKR does not make, sell, offer for sale or import any of the accused mobile phones in the United States, let alone within EDTX or the State of Texas.  LGEKR, a Korean corporation with its principal place of business in Seoul, South Korea, also has no physical presence, employees or records related to the accused mobile phones in EDTX or Texas.  Instead, as is well-known in this District, LGEKR's California subsidiary, LGEMU (and its own subsidiary LG Electronics MobileResearch LLC ("LGEMR")[1], is solely and independently responsible for importing, selling, and offering for sale the accused mobile

---

[1] LGEMR is also a California company with offices in the Northern and Southern Districts of California.

1

devices in the United States.  For its part, LGEKR's work related to the design, development, and manufacture of the accused mobile devices occurs internationally, primarily in South Korea. Furthermore, as plainly apparent from the Complaint, the core of the accused functionalities in this case is provided by non-parties, such as Google LLC ("Google"), and the relevant witnesses and information about those functionalities are located in and around Northern California. Exercising personal jurisdiction against LGEKR in view of these facts would be improper and the Complaint is properly dismissed on this basis.

That AGIS, which was formed solely to file and maintain this litigation in EDTX, sued the wrong LG defendant is no accident.  Rather, it is a deliberate attempt to forum shop and evade the jurisdiction of the most convenient and proper forum for this action – NDCA. Following *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), AGIS is well aware that EDTX is not a proper venue for a suit against LGEKR's California subsidiary, LGEMU, which is the entity actually responsible for importing, selling, and offering for sale the accused mobile devices.  Thus, AGIS elected to sue only LGEKR, who, AGIS views as subject to venue in any District, including EDTX, by virtue of being a foreign corporation.  But AGIS's attempted end-run around the venue rules fails because LGEKR has no contacts with Texas relevant to this case for the exercise of personal jurisdiction.

AGIS's forum-shopping is also a waste of judicial resources – any claim of infringement would ultimately have to be directed at LGEKR's U.S. subsidiary, since LGEKR does not import, sell, or control the distribution of the accused devices in the United States.  AGIS's efforts to avoid California jurisdiction by choosing not to sue the relevant party now means that any work by the courts in this District may ultimately be for naught, because AGIS ultimately has no claim against LGEKR – any claim would have to arise through LGEKR's California

subsidiary, LGEMU.  For these reasons, maintenance of this lawsuit here is neither reasonable, nor fair, nor efficient.

Alternatively, if the Court determines that it may exercise personal jurisdiction over LGEKR, then LGEKR requests that the case be transferred to NDCA.  The core evidence implicated by AGIS's allegations exists in and around NDCA.  Core evidence includes relevant documents and witnesses for the accused mobile devices from LGEMU and LGEMR operating out of California and for the third-party applications (which are the primary focus of the infringement claims) provided by non-parties Google and Family Safety Production / Life360, Inc. ("Life360"), both of whom are located in NDCA.

## II.    FACTUAL BACKGROUND

### A.    AGIS'S COMPLAINT AND PROCEDURAL HISTORY

AGIS filed the Complaint on June 21, 2017.  (D.I. 1.)  It alleges that LGEKR infringes one or more claims of U.S. Patent Nos. 8,213,970 (the "'970 Patent"), 9,408,055 (the "'055 Patent"), 9,445,251 (the "'251 Patent"), and 9,467,838 (the "'838 Patent") (collectively, "Patents-In-Suit") based on the inclusion of "Google Maps, Android Device Manager, Find My Phone, Find My Device, Google Messages, Android Messenger, Google Hangouts, Google Plus, and Google Latitude" (the "Accused Applications") on certain LG-branded devices.[2]  (D.I. 1, ¶ 15.)  In simplified terms, AGIS alleges infringement based on Accused Devices including functionality from third parties that "allows users to form groups with other users such that users may view each others' locations on a map and engage in communication."  (*Id*.)  AGIS asserts that this Court can exercise personal jurisdiction over LGEKR with respect to its infringement

---

[2] The Complaint alleges that the following LG devices are at issue:  G Stylo, G6, X venture, V20, Phoenix, G5, K10, Phoenix 2, V10, Vista 2, and Escape 2 (collectively, the "Accused Devices").  (D.I. 1, ¶ 15.)

allegations because "[LGEKR] conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this judicial district and/or has contributed to patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States." (*Id.*, ¶ 4.)  AGIS does not support this boilerplate assertion with any facts or evidence.

The Court has consolidated this case with Case No. 17-cv-513 (D.I. 20) and set a scheduling conference for November 28, 2017 (Case No. 17-cv-513, D.I. 33).  No docket control order has been entered and discovery has not begun.

## B.     PLAINTIFF AGIS AND ITS FORUM SELECTION TACTICS

AGIS was formed on June 1, 2017, less than three weeks prior to the commencement of this action.  (513 D.I. 36, Ex. 5.)  The Patents-In-Suit themselves were only assigned to AGIS one day before it filed the Complaint.  (513 D.I. 36, Exs. 1-4.)  AGIS alleges that it is a Texas company with its principal place of business at 100 W. Houston Street, Marshall, TX 75670. (D.I. 1, ¶ 1.)  But, outside this assertion, according to Texas's Secretary of State and Office of the Comptroller, AGIS's address is 211 E. 7th Street, Suite 620, Austin, Texas 78701, which is the address of its agent for service of process.  (513 D.I. 36, Exs. 7-8.)  AGIS's Certificate of Formation identifies one corporate member, AGIS Holdings Inc. ("AGIS Holdings"), a Florida corporation located at 92 Lighthouse Drive, Jupiter, Florida, with Florida-resident directors and officers.  (513 D.I. 36, Exs. 5-6, 9.)  AGIS has no known employees in Texas, and it conducts no business in Texas.  (513 D.I. 36-7, ¶ 12.)  Stated differently, even if it is true that AGIS is located in this District, and not where it is registered with the Texas Secretary of State, AGIS's recent establishment was solely for litigating these cases in EDTX.

### C. DEFENDANT LGEKR IS A FOREIGN CORPORATION WITH NO JURISDICTIONAL CONTACTS WITH TEXAS RELATED TO THE ACCUSED DEVICES

LGEKR is a South Korean corporation with its principal place of business in Seoul, Korea.  (Ryu Decl.,[3] ¶ 4; Lee Decl.,[4] Ex. 2, ¶ 3.)  LGEKR's employees are responsible for designing, engineering, sourcing components, and manufacturing the Accused Devices.  All of this work is done outside the United States, mostly in South Korea.  (Ryu Decl., ¶ 4; Lee Decl., Ex. 1, ¶ 4; *id.*, Ex. 2, ¶¶ 3, 8.)  Because the Accused Devices are manufactured by LGEKR outside the United States, the installation of the Android OS and any pre-installation of Android applications on those devices also occur outside the United States, in South Korea.  (Ryu Decl., ¶ 7; Lee Decl., Ex. 2, ¶ 8.)  The Android OS is developed by non-party Google, who also provides most of the Accused Applications.  (Ryu Decl., ¶¶ 3, 7.)  LGEKR obtains the Android OS from Google and performs any integration and/or modification tasks related to installation of the Android OS, including any pre-installation of Google-provided Android applications that occurs during the manufacturing process, into the Accused Devices outside the United States.  (Ryu Decl., ¶ 7; Lee Decl., Ex. 1, ¶¶ 7-8; *id.*, Ex. 2, ¶¶ 7-8.)  All of LGEKR's technical information is located outside the United States, and primarily in South Korea.  (Ryu Decl., ¶¶ 7, 12; Lee Decl., Ex. 2, ¶ 12.)

The entities solely responsible for importing, testing, performing quality management, marketing, offering for sale, and selling the Accused Devices in the United States are LG

---

[3] "Ryu Decl." refers to the Declaration of JuSeong Ryu In Support Of Defendant's Motion To Dismiss For Lack of Personal Jurisdiction Or Transfer Venue To The Northern District of California filed concurrently herewith.

[4] "Lee Decl." refers to the Declaration of Nicholas H. Lee In Support Of Defendant LG Electronics, Inc.'s Motion To Dismiss For Lack of Personal Jurisdiction Or, In The Alternative, To Transfer Venue To The Northern District of California filed concurrently herewith.

Electronics MobileComm U.S.A., Inc. ("LGEMU") and its wholly-owned subsidiary, LG

Electronics MobileResearch U.S.A., LLC ("LGEMR").  (Ryu Decl., ¶¶ 5-6, 8-9; Lee Decl., Ex.

1, ¶ 5; *id.*, Ex. 2, ¶ 6.)  LGEMU and LGEMR are both California corporations, and they both

maintain key operations with respect to the Accused Devices in California, including Santa Clara

in the Northern District of California.  (Ryu Decl., ¶¶ 5, 8-9; Lee Decl., Ex. 1, ¶¶ 10-11, 13; *id.*,

Ex. 2, ¶¶ 6, 9-10, 13.)  LGEMU and LGEMR are wholly-owned subsidiaries of LG Electronics

U.S.A., Inc. ("LGEUS"), which is a wholly-owned subsidiary of LGEKR.  (Lee Decl., Ex. 2, ¶¶

4, 6.)  LGEUS, a Delaware company with its principal place of business in Englewood Cliffs,

NJ, is the sole entity responsible for maintaining the website for LG-branded products that are

viewable from the U.S., including Texas.  (Ryu Decl., ¶ 15; Lee Decl., Ex. 2, ¶ 4.)  The website

is passive and provides only product-related information, meaning a consumer cannot purchase

the Accused Devices directly on it.  (*Id.*)  LGEKR does not control or have authority over the

day-to-day operations of LGEMU (or LGEMR).  (Ryu Decl., ¶ 14.)  LGEMU, LGEMR, and

LGEUS are not parties to this litigation.

LGEMU acquires the Accused Devices from LGEKR overseas and imports them into the

United States for sale to national mobile phone carriers, retailers, and distributors, who in turn

sell those devices to end users throughout the nation.  (Ryu Decl., ¶ 5; Lee Decl., Ex. 1, ¶ 5; *id.*,

Ex. 2, ¶ 6.)  With respect to compliance testing for the Android OS on the Accused Devices,

LGEMR's Partner Engineering team, which works in Northern California, is responsible for

interfacing with Google to ensure that the Accused Devices comply with Google's compatibility

requirements for Android.  (Ryu Decl., ¶ 8; Lee Decl., Ex. 1, ¶¶ 9-11; *id.*, Ex. 2, ¶¶ 9-10.)  Thus,

Android-related certification documents and records are physically present in or electronically

accessible at the Northern California office.  (Ryu Decl., ¶ 11; Lee Decl., Ex. 1, ¶ 12; *id.*, Ex. 2,

¶¶ 11, 14.)  With respect to testing and quality management of the Accused Devices, there are LGEMU employees in San Diego, California who are responsible for ensuring pre-launch and post-launch quality assurance of those devices in the United States.  (Ryu Decl., ¶ 9; Lee Decl., Ex. 1, ¶ 13; *id.*, Ex. 2, ¶ 13.)  The documents and records concerning testing, quality management, and other similar types of documentation related to the Accused Devices are maintained in the San Diego office.  (Ryu Decl., ¶ 11; Lee Decl., Ex. 1, ¶ 13; *id.*, Ex. 2, ¶ 14.) LGEKR itself does not maintain any of its records related to the Accused Devices in the United States; has no contacts related to the sale or distribution of the Accused Devices in Texas; and does not direct any of its activities related to the Accused Devices to Texas.  (Ryu Decl., ¶¶ 7, 10, 12-13; Lee Decl., Ex. 1, ¶ 12; *id.*, Ex. 2, ¶¶ 12, 15.)

As related to the Accused Devices, LGEKR's relationship with LGEMU indicates that LGEKR's jurisdictional contacts lie, if anywhere in the United States, with California, not Texas. These California contacts, as outlined above, were a matter of public record in this District's court docket prior to AGIS filing suit.  (Lee Decl., Exs. 1-2.)  And for purposes of this motion, LGEKR does not challenge California's exercise of specific personal jurisdiction over LGEKR for the issues presented in this case.

### D.      THIRD-PARTY EVIDENCE RELATED TO THE ACCUSED APPLICATIONS USED WITH THE ACCUSED DEVICES ARE LOCATED IN AND AROUND NORTHERN CALIFORNIA

The most critical evidence for key issues in this case is located outside this District and primarily in NDCA.  The Accused Applications, which are the focus of the infringement claims, are all developed by third parties located in and around NDCA.  For example, AGIS's infringement claims plainly depend upon functionality in the Google Maps application and the Find My Device application.  (*See* D.I. 1, ¶¶ 14-15, 20-21, 30-34, 43-46, 55-60.)  Third-party Google provides these two applications for the Android OS installed on the Accused Devices.

(513 D.I. 36-4, ¶¶ 1-3; 513 D.I. 36-5, ¶¶ 1-3.)  The other Accused Applications for which Google

is responsible, as set forth in the Complaint, include Messenger, Android Messages, Google

Hangouts, and Google Plus.[5]  (D.I. 1, ¶ 15; 513 D.I. 36-6, ¶¶ 2, 5-8.)  Each of these Google

applications identified in the Complaint is designed, developed and/or maintained in or around

NDCA, or logistically closer to NDCA than to EDTX.  (513 D.I. 36-4, ¶¶ 2-6; 513 D.I. 36-5, ¶¶

2-6; 513 D.I. 36-6, ¶¶ 4-9.)  Nearly all the documents, including highly proprietary source code,

related to those Google applications are either physically present in NDCA or electronically

accessible from Mountain View, as are the persons most qualified to identify and locate those

documents.  (513 D.I. 36-4, ¶ 6; 513 D.I. 36-5, ¶ 6; 513 D.I. 36-6, ¶ 10.)  Indeed, Google has no

offices in this District and its Mountain View, California headquarter is the strategic center of its

business, where the most significant management and engineering decisions for the accused

Google applications occur.  (513 D.I. 36-6, ¶¶ 4-5; 513 D.I. 36-4, ¶¶ 2, 5; 513 D.I. 36-5, ¶¶ 2, 5.)

Stated differently, Google does not design, maintain, or manage any of the Accused Applications

in EDTX.  (513 D.I. 36-4, ¶ 5; 513 D.I. 36-5, ¶ 5; 513 D.I. 36-6, ¶ 9.)

The other application identified in the Complaint appears to be a non-Google application:

"Find My Phone."  (D.I. 1, ¶ 15.)  But, that too is offered by a third party, *i.e.*, Family Safety

Production / Life360, Inc. ("Life360"), located in NDCA.  (513 D.I. 37, Exs. 26-30.)

## III.     LEGAL STANDARDS

### A.     PERSONAL JURISDICTION

In patent infringement actions, personal jurisdiction is governed by Federal Circuit law.

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).  The

---

[5] On information and belief, Google Latitude has been discontinued and is no longer available,
meaning it is not supported on all the Accused Devices.

burden is on the plaintiff to establish that the Court has jurisdiction over the defendant.  *See*

*Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).  Determining

whether jurisdiction exists over a foreign defendant involves two inquiries:  (1) whether the

state's long-arm statute permits service of process; and (2) whether the exercise of jurisdiction

over the defendant is consistent with due process.  *See Autogenomics*, 566 F.3d at 1017.  Texas's

long-arm statute is coextensive with the due process inquiry, meaning the focus is solely on

whether the exercise of jurisdiction over a foreign defendant would comport with due process.

*See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *Autogenomics*, 566

F.3d at 1017.  The due process inquiry looks at two types of personal jurisdiction:  general and

specific.

General jurisdiction allows the Court to hear "any and all claims against [the foreign

defendant], wherever in the world the claims may arise."  *Daimler AG v. Bauman*, 134 S. Ct.

746, 751 (2014).  The exercise of general jurisdiction, however, is inappropriate unless the

foreign defendant's contact with the forum state is so "'continuous and systematic' as to render

[it] essentially at home in the forum state."  *Id.* at 754 (quoting *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  The Supreme Court has made clear

that a defendant's "place of incorporation and principal place of business are paradig[m] . . .

bases for general jurisdiction."  *Id*. at 760 (internal quotations omitted).

"Specific or case-linked jurisdiction depends on an affiliation between the forum and the

underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and

is therefore subject to the State's regulation)."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6

(2014) (internal quotations and alteration omitted).  The defendant itself, and not unnamed third

parties, must create the jurisdictional contacts with the forum state itself – "not the defendant's contacts with persons who reside there." *Id*. at 1122-23.

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), where the parties have not undertaken jurisdictional discovery, the plaintiff must make a *prima facie* showing that the defendants are subject to personal jurisdiction in the relevant forum. *See Autogenomics*, 566 F.3d at 1017. Courts accept only uncontroverted jurisdictional allegations in the complaint as true and are not required to credit conclusory allegations. *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012).[6] In other words, when a defendant sets forth declarations refuting the jurisdictional allegations in the complaint, the court cannot accept any "bare formulaic accusation[s]" in the complaint, and the burden is on the plaintiff to submit declarations or other evidence sufficient to create a factual dispute regarding the foreign defendant's forum-state contacts. *Id*. at 1365. As discussed below, LGEKR's contacts with Texas are insufficient for this Court to sustain personal jurisdiction in this action.

### B.    TRANSFER OF VENUE PURSUANT TO 28 U.S.C. §1404(A)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). In patent cases, the laws of the regional circuit in which the case was originally brought governs the transfer analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The Fifth Circuit applies a two-part test when determining whether transfer is appropriate. First, the movant(s) must show that the case could have been brought in the

---

[6] "Federal Circuit precedent controls personal jurisdiction in patent cases because the issue is intimately involved in the substance of enforcement of the patent right." *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 655 (E.D. Tex. 2007).

proposed transferee district.  *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir.

2004).  If so, the court then weighs the relative convenience of the transferee district and the

original district, based on a number of private and public interest factors.  *Id.*  The private factors

are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process

to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all

other practical problems that make trial of a case easy, expeditious, and inexpensive."  *In re*

*Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (citations

omitted).  The public interest factors are: "(1) the administrative difficulties flowing from court

congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity

of the forum with the law that will govern the case; and (4) the avoidance of unnecessary

problems of conflicts of laws [or in] the application of foreign law."  *Id.* at 315 (citations

omitted).  In addition, this court recognizes that the location of third parties is a "particularly

compelling" consideration.  *Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, No. 2:17-cv-00100-JRG-

RSP, 2017 WL 4076052, at *3 (E.D. Tex. Sept. 14, 2017).  On balance, the location of, and

access to, relevant proof and witnesses militate in favor of transferring this case to NDCA.

## IV.    ARGUMENT

### A.    EXERCISING PERSONAL JURISDICTION OVER LGEKR WOULD NOT COMPORT WITH DUE PROCESS

As explained below, due process precludes this Court from exercising either general or

specific personal jurisdiction over LGEKR given its lack of relevant contacts with Texas.

#### 1.    LGEKR Is Not Subject To General Jurisdiction In EDTX

"A court may assert general jurisdiction over foreign (sister-state or foreign-country)

corporations . . . when their affiliations with the State are so 'continuous and systematic' as to

render them essentially at home in the forum State."  *See Goodyear*, 131 S. Ct. at 2851 (quoting

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  AGIS concedes that the sole defendant in this case is a Korean company that maintains its principal place of business in Seoul.  (D.I. 1, ¶ 2.)  And because LGEKR's principal place of business is not in Texas, the "paradigm basis" for general jurisdiction is admittedly absent here.  *See Daimler*, 134 S. Ct. at 760 (explaining that the "paradigm all-purpose forums" are those where a foreign defendant "is incorporated or has its principal place of business.")

There are no exceptional circumstances to change this conclusion.[7] *Id.* at 761 n.19. Giving AGIS's allegations in the Complaint their broadest interpretation in favor of AGIS, the unsubstantiated allegation that LGEKR does business and has committed patent infringement in EDTX (D.I. 1, ¶ 4) even if it were true (which it is not), cannot, without more, constitute "continuous and systematic" contacts that would make LGEKR "essentially at home" in Texas for purposes of general jurisdiction.  *See Goodyear*, 131 S. Ct. at 2851 (precluding the exercise of general jurisdiction over a foreign corporation merely because it is alleged to do business in the forum state); *Daimler*, 134 S. Ct. at 760-62 (same); *Bluestone Innovations Tex., LLC v. Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 660, 662 (E.D. Tex. 2011) (finding no general personal jurisdiction over foreign corporation as the plaintiff only alleged defendant infringed in the district and failed to identify any specific facts evidencing contacts between defendant and Texas).  On this record, exercising general jurisdiction over LGEKR is not warranted.

>   **2.    The Court Does Not Have Specific Jurisdiction Over LGEKR Because The Issues In This Case Do Not Arise Out Of Or Relate To Any Contacts Between LGEKR And Texas**

---

[7] The Supreme Court in *Daimler* cited *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) as a very narrow example of an exceptional circumstance.  134 S. Ct. at 761 n.19.  In *Perkins*, general jurisdiction in Ohio was upheld over an international corporation because it temporarily moved its principal place of business there during World War II.

If a foreign defendant is not subject to general jurisdiction in the forum state, a court may still exercise personal jurisdiction under specific jurisdiction if:  (1) "the defendant purposefully directed its activities at residents of the forum"; (2) "the claim arises out of or relates to those activities"; and (3) the "assertion of personal jurisdiction is reasonable and fair."  *Autogenomics*, 566 F.3d at 1018 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).  The "minimum contacts" analysis set forth by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), is used to guide the analysis under the first two factors.  *Id.* at 1019.  Under this analysis, to satisfy the federal due process requirements, "the defendant's suit-related conduct must create a substantial connection with the forum State" and must not be based on "'random, fortuitous, or attenuated' contacts that [the foreign defendant] makes by interacting with other persons affiliated with the State."  *Walden*, 134 S. Ct. at 1121, 1123.  Under this exacting standard, specific jurisdiction in Texas over LGEKR cannot be exercised.

### a.    LGEKR Does Not Have Minimum Contacts With Texas

LGEKR itself has no contacts with Texas related to issues presented in this case to create a substantial connection with the state.  LGEKR, as a foreign corporation, is not registered to do business in Texas; has no registered agent for service of process in Texas; has never owned, leased, possessed, or maintained any real or personal property in Texas; has never maintained an office or place of business in Texas; has no inventory of products in Texas; has no employees or sales representatives, distributors, brokers, wholesalers, or agents in Texas; has no bank accounts in Texas; and is not listed in a telephone directory in Texas.  (Ryu Decl., ¶ 13.)  LGEKR does not manufacture, use, test, advertise, market, sell, offer to sell, trade, import, package, or distribute any products in the United States, let alone the Accused Devices.  (*Id.  See* Section II.C, *supra*.) LGEKR has not negotiated any business contracts with individuals or entities in Texas with

respect to the sale or distribution of the Accused Devices, and has not issued any invoices, purchase orders, or other sale-related documents to customers in Texas.  (Ryu Decl., ¶ 13.) Rather, third parties who are not named in this action carry out those activities.  (*See* Section II.C, *supra*.)  LGEKR simply has no direct role related to the presence of the Accused Devices in Texas, and there is no basis for a determination that LGEKR – as opposed to separate, third parties – has purposefully directed its activities to the residents of Texas.

To the extent that AGIS attempts to impute the activities of LGEKR's non-party subsidiary, which is responsible for distributing and providing support for the Accused Products to retailers within the United States, the Court should not exercise jurisdiction over LGEKR on that basis.  Specific jurisdiction must arise out of contacts that ***the defendant itself*** creates with the forum.  *Walden*, 134 S. Ct. at 1122.  The forum-state contacts of a third party may only be imputed to a defendant if the third party is the agent or alter ego of the defendant.  *Celgard, LLC*, 792 F.3d at 1379.  Here, to be an agent or alter ego, AGIS must show that LGEKR exercises control over the relevant activities of its U.S. subsidiaries.  But, AGIS does not, because it cannot, plead any facts supporting this type of control by LGEKR.  (*See generally* D.I. 1, ¶ 4.)

Indeed, courts in this District have consistently recognized that the "the typical corporate relationship between a parent and subsidiary, including one hundred percent stock ownership and identity of directors and officers, is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory."  *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc. et al.*, No. 2:15-cv-2049-JRG, 2016 WL 6917272, at *2 (E.D. Tex. Sept. 1, 2016) (citing *QR Spex, Inc.*, 507 F. Supp. 2d at 663).  The nature of LGEKR's connection with its non-party U.S. subsidiary (LGEMU) is that of a typical parent-subsidiary relationship.  LGEKR maintains corporate separateness with LGEMU.  It does not direct or have authority over the day-to-day

14

operations of LGEMU (or LGEMR).  (Ryu Decl., ¶ 14.)  Even the mere exercise of general supervisory authority over a subsidiary, without more, does not blur the line between a parent and its subsidiary such that the subsidiary is the parent's agent or alter ego.  *See QR Spex, Inc.*, 507 F. Supp. 2d at 663.

Nor is the mere fact that the Accused Devices are sold by third parties in the forum sufficient to support specific jurisdiction over LGEKR in this action.  Any sale or offer for sale of the Accused Devices in EDTX or Texas is the result of independent action by non-parties LGEMU or LGEMU's customers (mobile phone distributors and retailers).  (*See* Section II.C, *supra*.)  Those actions do not constitute purposeful availment of the laws of Texas by LGEKR. *See Celgard, LLC*, 792 F.3d at 1382.

### b. Any Exercise Of Jurisdiction Over LGEKR Would Not Be Reasonable Or Fair

Moreover, the exercise of jurisdiction over LGEKR would neither be reasonable nor fair. The Supreme Court set forth five factors in determining whether the exercise of specific jurisdiction would amount to fair play and substantial justice under this prong of the analysis. *See Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2184 (1985).  The five factors include: (1) "the burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) the "shared interest of the several States in furthering fundamental substantive social policies."  *Id.*

Applied here, the *Burger King* factors demonstrate that the exercise of personal jurisdiction over LGEKR would not comport with traditional standards of fair play and substantial justice.  As a Korean corporation with no direct presence in Texas, maintaining jurisdiction over LGEKR would impose a significant burden, particularly where the acts relevant

to AGIS's suit by LGEKR itself occur in South Korea, and in California by LGEKR's California subsidiary and third-party suppliers like Google.[8]  It is neither reasonable nor fair to sue LGEKR in Texas for activities related to the Accused Devices that took place in South Korea and California.  Moreover, jurisdiction over LGEKR premised on the activities of its U.S. subsidiary creates a risk to international comity.  *See Daimler*, 134 S. Ct. at 763 (subjecting a foreign defendant to suit based on the actions of its U.S. subsidiaries in the forum state recognized as a risk to international comity).

Texas's interest in adjudicating this dispute is limited.  As discussed *infra* at Section IV.B.2, AGIS's presence in this district is ephemeral, as it was formed shortly before commencing this action by a Florida company owned by Florida residents to sue a Korean company based on conduct occurring in South Korea and California.  AGIS even admits that Texas does not have any more jurisdictional interest in adjudicating this case than any other forum. (D.I. 1, ¶ 4 (alleging that LGEKR has committed acts of infringement elsewhere in the United States).)

Moreover, exercising jurisdiction over LGEKR in Texas does not promote efficient, convenient, or effective relief.  It is a matter of public record in this District that LGEKR has no direct contacts with Texas related to LG-branded mobile devices found in the United States. (*See* Section II.C, *supra*.)  Rather, LGEMU is the entity solely and independently responsible for importing, selling, offering for sale, marketing, and distributing those devices throughout the nation (*id.*), and third parties with relevant and necessary information for this dispute also are in California.  It would be far more efficient and convenient for the relief sought to litigate this

---

[8] Other non-parties, such as Google and Life360, who provide the relevant functionality of the Accused Applications identified in the Complaint are headquartered in Northern California.  (*See* Section II.D, *supra*.)

dispute where most of the parties and third-party witnesses[9] are located – NDCA – rather than EDTX, where none are located.

These efficiencies are lost by AGIS's deliberate attempt to avoid the *TC Heartland* decision by electing to sue only LGEKR, and not LGEMU, on the theory that AGIS could obtain venue in EDTX over a foreign company.  *See* 28 U.S.C. § 1391(c)(3).  In doing so, AGIS is deliberately sacrificing the exercise of personal jurisdiction in EDTX.[10]  Indeed, as much is clear from AGIS's decidedly boilerplate allegations, which, alone, cannot sustain personal jurisdiction in this District.  (*See* D.I. 1, ¶ 4 (generalizing that this Court has personal jurisdiction over LGEKR because it has allegedly committed acts of infringement in Texas).)  In fact, courts in this District and others have already acknowledged that California is more convenient for relief sought against LGEKR given its jurisdictional contacts there.  *See, e.g.*, *Fujinomaki v. Google Inc. et al.*, No. 2:15-cv-1381-JRG-RSP, 2016 WL 2807798, at *1-2 (E.D. Tex. May. 13, 2016) (transferring case against LGEKR and Google, among others, to NDCA); *Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd. et al.*, 968 F. Supp. 2d 852 (E.D. Tex. 2013) (transferring case involving LGEKR and LG-branded mobile devices to NDCA); *Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 313 (E.D. Va. 2013) (granting transfer to NDCA and acknowledging LGEKR's connection to California).

Accordingly, the exercise of specific jurisdiction over LGEKR in this action would not comport with the requirements of federal due process, and LGEKR respectfully requests that the Court dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2).

---

[9] Relief likewise would be more effective if this action were litigated in NDCA where that court has subpoena power over numerous relevant third-party witnesses.  *See* Section IV.B.3.b-c, *infra*.

[10] The lack of personal jurisdiction on a foreign corporate parent like LGEKR is not surprising given that the very purpose of creating LGEMU, a separate and independent subsidiary company, is for the subsidiary to conduct business in the United States.

**B.    ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(A)**

Even if the Court determines that it can exercise personal jurisdiction over LGEKR in the present action, EDTX is not the proper forum for the administration of this case. Rather, NDCA is the appropriate forum. As discussed below, all factors traditionally considered in analyzing a motion to transfer favor a transfer to NDCA here.

**1.    AGIS Could Have Brought Suit In The Northern District of California**

As a threshold matter, Section 1404(a) requires that the action could have been filed in the proposed transferee district. *Volkswagen I*, 371 F.3d at 203; *In re Horseshoe Ent'mt*, 337 F.3d 429, 433 (5th Cir. 2003). Venue is proper in any jurisdiction that has personal jurisdiction over the defendant. *See* 28 U.S.C. § 1400(b); 28 U.S.C. § 1391(c)(2). To the extent AGIS asserts that the activities of LGEKR's subsidiary can be imputed to LGEKR, LGEKR's subsidiary is necessarily subject to jurisdiction in NDCA. LGEMU is a California company with a large office within NDCA. LGEMU sells the Accused Devices throughout the country, including in California. (Ryu Decl., ¶ 5). *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011). Under AGIS's argument, venue is also proper in NDCA because LGEKR is a foreign defendant. *See* 28 U.S.C. § 1391(c)(3).

Furthermore, this District and others have previously found that LGEKR and its U.S. subsidiary have sufficient contacts with NDCA to confer jurisdiction and venue there. *See, e.g.*, *Fujinomaki*, 2016 WL 2807798, at *1-2 (granting transfer to NDCA for LGEKR and Google, among others); *Rothschild Storage Retrieval Innovations, LLC v. LG Elecs., Inc. et al.*, No. 14-cv-22654-DPG, 2015 WL 11233067, at *2 (S.D. Fla. June 3, 2015) (granting transfer to NDCA);

*Affinity Labs of Tex.*, 968 F. Supp. 2d at 854-55 (granting transfer to NDCA); *Bluestone Innovations, LLC*, 940 F. Supp. 2d at 313-14 (granting transfer to NDCA).

### 2.    The Court Should Not Give Deference To AGIS's Choice of Venue

As the Federal Circuit has explained, the Fifth Circuit does not give any special weight to the plaintiff's choice of venue.  *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).  Rather, the plaintiff's choice of venue is addressed within the multi-factor test that weighs the convenience of the transferor and transferee venues.  *See TS Tech*, 551 F.3d at 1320.

AGIS's only connection to EDTX is ephemeral and was undoubtedly "made in anticipation of litigation and for the likely purpose of making that forum appear convenient." *See In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) ("The only added wrinkle is that [the plaintiff] took the extra step of incorporating under the laws of Texas sixteen days before filing suit.  But that effort is no more meaningful, and no less in anticipation of litigation, than the other ones we reject.").  Therefore, any argument that AGIS's litigation-based connections to this District justify deference to its choice of venue "rests on a fallacious assumption."  *Id.* at 1364.

### 3.    All Private Interest Factors Weigh In Favor of Transfer

#### a.    The Relative Ease of Access To Sources of Proof Factor Favors NDCA

The location of the majority of evidence in and near NDCA weighs in favor of transfer. In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer . . . ."  *In re Genentech*, 566 F.3d at 1345.

This factor favors transfer because, as detailed in Section II.C, the employees of LGEKR's subsidiary (LGEMU, including LGEMR) who are knowledgeable about the importation, testing, marketing, and sale of the Accused Devices and any work with Google in

connection with those efforts are located in California, including within NDCA.  Documents relating to the Accused Devices are maintained in South Korea, California, and/or New Jersey. (Ryu Decl., ¶¶ 11-12).  Many of the documents exist on local computers and servers that are not accessible outside of LGEMU's offices.  (*Id.*).

Furthermore, as detailed in Section II.D, relevant documents, including highly proprietary source code, and witnesses with knowledge relating to the operation, design, and function of the third-party Accused Applications are located in NDCA or at locations far more convenient to NDCA than to EDTX.  The functionality provided by these third-party suppliers is the backbone of AGIS's infringement claims.  And where, as here, the key evidence will not come from the customer, but rather the upstream supplier, transfer is favored.  *Beijing Zhongyi Zhongbiao Elec. Info. Tech. v. Microsoft Corp.*, No. 4:12-cv-4077, 2013 WL 3808009, at *4-6 (W.D. Ark. July 22, 2013); *see also Zitovault, LLC v. Amazon.com, Inc.*, No. 6:15-cv-152-JRG, 2015 WL 11089482, at *2 (E.D. Tex. Dec. 4, 2015) (granting motion to transfer the case from EDTX, where Amazon's customer was located, to the Western District of Washington, where Amazon was located) (hereinafter *"Zitovault v. Amazon.com"*); Amazon's Motion, *Zitovault v. Amazon.com*, ECF No. 29.

LGEKR is not aware of any relevant witnesses or documents in EDTX.  (Ryu Decl., ¶¶ 10-12; Lee Decl., Ex. 1, ¶¶ 12-13; *id.*, Ex. 2, ¶¶ 11-12, 14-15.)  Moreover, given AGIS's recent creation, whatever documents AGIS may now have in EDTX must have been transferred or created in anticipation of litigation, and, therefore, are not considered to be local documents for purposes of a transfer analysis.  *In re Hoffmann-LaRoche, Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009); *see also Optimum Power Sols. LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D.

Tex. 2011) (noting that documents transferred to a venue in anticipation of litigation should not be considered).

### b. The Availability of Compulsory Process To Secure the Attendance of Witnesses Factor Strongly Favors NDCA

"The venue's ability to compel testimony through subpoena power is … an important factor." *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).  This factor favors transfer when a transferee venue, like NDCA here, has subpoena power over third-party witnesses for both depositions and trial (termed "absolute subpoena power").  *Hoffman-La Roche*, 587 F.3d at 1338; Fed. R. Civ. Proc. 45(c)(1)(B) (supporting that a subpoena issued by the Northern District may compel any witness within the State of California to attend a trial of this matter).  The availability of compulsory process "will weigh more heavily in favor of transfer when more non-party witnesses reside within the transferee venue."  *Regent Mkts. Grp., Ltd. v. IG Mkts., Inc.*, No. 2:10-cv-42-TJW, 2011 WL 1135123, at *3 (E.D. Tex. Mar. 25, 2011).

Here, there are no known third-party witnesses located within the subpoena power of EDTX.[11]  On the other hand, many non-party witnesses who likely possess relevant information are located in NDCA and subject to that court's subpoena power.  For example, the accused "Find My Phone" application is made by Family Safety Production / Life360 Inc., which is headquartered in San Francisco, California (513 D.I. 36-7, ¶¶ 20-23 & Exs. 26-30); the prosecuting attorney for three of the Patents-In-Suit resides in Santa Clara, California (*Id.*, ¶ 15, Exs. 14, 38-40); and potential prior art witnesses are located throughout California (*Id.*, ¶¶ 16-19 & Exs. 15-25).  Because NDCA has subpoena power over such vital third parties, the availability of such power favors transfer.  *See Godo Kaisha*, 2017 WL 4076052, at *3-4

---

[11] AGIS itself has no known affiliates or employees within this District.  In fact, the primary inventor and owner of AGIS are Florida residents.

(transferring the case to NDCA in part because the court would have absolute subpoena power over third party manufacturers, which are likely to have extensive relevant information concerning the design and manufacturing of the accused products); *Droplets, Inc. v. Amazon.com, Inc.*, No. 11-cv-392, 2012 WL 3578605, at *5 (E.D. Tex. June 27, 2012) (finding compulsory process merits transfer when numerous prior art inventors with knowledge and documents relevant to the patents-in-suit reside in the transferee venue compared with few or none in plaintiff's chosen forum); *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (same).

### c.  The Convenience For Witnesses Factor Favors NDCA

The "single most important factor in transfer analysis" is the convenience to and cost for the witnesses to travel to and attend trial.  *In re Genentech*, 566 F.3d at 1343 (citation omitted). *See also TS Tech*, 551 F.3d at 1320 (additional distance means additional travel time and expense).  The Fifth Circuit has adopted a "100-mile" rule to assist with this analysis, pursuant to which "when the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen II,* 545 F.3d at 317 (internal quotation omitted).  The "100-mile" rule favors transfer when the average distance from witnesses to the transferee venue is shorter than to the transferor venue.  *Id.*

This factor favors transfer to NDCA.  LGEKR has no witnesses in EDTX, and travel for its witnesses from Korea to NDCA is more convenient than travel to EDTX.  (Lee Decl., ¶ 4 & Exs. 3-4.)  In addition, LGEMU has relevant witnesses located in NDCA or elsewhere in and around California.  (*See* Section II.C, *supra.*)

Furthermore, this Court held that while it "must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more

important factor and is accorded greater weight in a transfer of venue analysis." *Gonzalez v. Social Concepts, Inc.*, No. 2:14-cv-650-JRG-RSP at 3 (E.D. Tex. Mar. 24, 2015), ECF No. 12. As explained above in Section II.D, third-party witnesses play a particularly key role in this action because AGIS's infringement claims center on functionality in their applications. Because important third-party witnesses, including, for instance, the majority of Google witnesses, who LGEKR expects to be key (and the only) sources of evidence regarding the operation, design, and function of the Google applications identified in the Complaint, reside in and around NDCA, transfer is appropriate. *See* Section II.D, *supra*; *Porto Tech. Co., Ltd. v. Samsung Elec. Am., Inc. et al.*, Case No. 15-cv-00456-JRG-RSP, 2:15-cv-00458-JRG-RSP, 2:15-cv-00459-JRG-RSP, 2:15-cv-00460-JRG-RSP, 2016 WL 937388, *2 (E.D. Tex. Mar. 11, 2016) (determining that convenience of willing witnesses and NDCA's power over third-party witnesses favored transfer).

### 4. The Local Interests Factor Favors Transfer To NDCA

NDCA has a strong local interest in this particular case because it is where Google is headquartered, and is where most of its relevant witnesses reside and work; and because it is where other relevant third parties, such as Life360, the prosecuting attorney for three of the Patents-In-Suit, and prior art witnesses, are located. *See Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-cv-511, 2010 WL 2950351, at *5 (E.D. Tex. July 22, 2010) (NDCA had a strong local interest in patent suit since the defendants were headquartered there); *Hoffman-La Roche*, 587 F.3d at 1336 (transferee venue's local interest in the case was strong because "the cause of action calls into question the work and reputations of several individuals residing in or near that district who presumably conduct business in that community").

By contrast, EDTX has no particular interest in this litigation. *See, e.g.*, *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, No. 2:15-cv-01702-RWS-RSP, at 6 (E.D. Tex.

Mar. 24, 2017), ECF No. 73 (transferring case to NDCA because "both [courts are] capable of applying patent law to infringement claims").  AGIS has no legitimate presence in this District and was only recently established for venue purposes.  (*See* Section II.B, *supra*.)  The Federal Circuit has held time and again that establishing a principal place of business in a district for the sole purpose of seeking venue does not give rise to a local interest.  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

### 5.      All Remaining Factors Are Neutral

At this early stage of litigation, LGEKR is unaware of any practical problems that might arise if this case were transferred to NDCA.  This Court has not yet issued a docket control order, and discovery has not yet begun.  All other public interest factors are also neutral.  EDTX and NDCA offer comparable litigation timelines (513 D.I. 36-7, ¶ 27 & Ex. 37), both districts are familiar with patent law, and there appear to be no unique conflict-of-law issues.

## V.      CONCLUSION

For the foregoing reasons, LGEKR respectfully requests that the Court grant this motion to dismiss for lack of personal jurisdiction, or in the alternative, transfer this action to the Northern District of California.

Dated:  November 27, 2017                          Respectfully submitted by:

                                                   */s/ J. Mark Mann*
                                                   J. Mark Mann
                                                   SBN: 12926150
                                                   mark@themannfirm.com
                                                   G. Blake Thompson
                                                   SBN:  24042033
                                                   blake@themannfirm.com
                                                   MANN TINDEL THOMPSON
                                                   300 West Main Street
                                                   Henderson, Texas 75652
                                                   Tel: 903-657-8540

Michael A. Berta
Michael.berta@apks.com
ARNOLD & PORTER
KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Tel: 415-471-3000

James S. Blackburn
James.blackburn@apks.com
Nicholas H. Lee
Nicholas.lee@apks.com
ARNOLD & PORTER
KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Tel: 213-243-4000

*ATTORNEYS FOR DEFENDANT*
*LG ELECTRONICS, INC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 27, 2017, a true and correct copy of

the foregoing was served to the parties counsel of record via electronic mail pursuant to Local

Rule CV-5(d).

*/s/ J. Mark Mann*
**J. Mark Mann**