# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT LLC, | § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 2:17-CV-00513-JRG |
| v. | § § | |
| HUAWEI DEVICE USA INC., HUAWEI DEVICE CO., LTD., HUAWEI DEVICE (DONGGUAN) CO., LTD., | § § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Huawei Device USA Inc. ("Huawei USA"), Huawei Device Co., Ltd. ("Huawei Device"), and Huawei Device (Dongguan) Co., Ltd.'s, ("Huawei Dongguan," collectively, "Huawei") Motion to Transfer Venue to the Northern District of California (Dkt. No. 36, "the Motion"), wherein Huawei moves this Court to transfer venue for this action pursuant to 28 U.S.C. § 1404(a). Having considered the Motion and the relevant authorities, the Court is of the opinion that the Motion should be **DENIED** for the reasons set forth herein.

## I. LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d

201, 203 (5th Cir. 2004) ("*Volkswagen I*"). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2012); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("§ 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'" (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957))). For purposes of § 1400(b), a domestic corporation resides only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521.

Once the initial threshold of proving the proposed transferee district is one where the suit might have been brought is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single

factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected by the defendant's elevated burden of proof. *Id.* at 315. In order to support its claim for a transfer under § 1404(a), the moving defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* Absent such a showing, however, the plaintiff's choice is to be respected. *Id.* Additionally, when deciding a motion to transfer venue under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd. v. Tower Group, Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008).

## II. DISCUSSION

### a. The Action May Have Been Brought in the Transferee District.

As noted above, the threshold inquiry in a § 1404(a) analysis requires a court to find that the action could have been filed in the proposed transferee district. *Volkswagen I*, 371 F.3d at 203. A party cannot unilaterally waive proper venue under § 1404 such that transfer would be permitted—upon a finding of convenience—to a district desired by the movant but not one in which the action might have been brought. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).

Here, Huawei admits that proper jurisdiction over each Huawei Defendant exists in the Northern District of California. "Huawei USA is registered to do business in the State of California, has business operations in Santa Clara within N.D. Cal., and therefore is subject to jurisdiction in that district." (Dkt. No. 36 at 9 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011))). "With respect to foreign defendants Huawei Device and Huawei Dongguan,

venue is appropriate in N.D. Cal." (*Id*. (citing 28 U.S.C. § 1391(c)(3))). Plaintiff AGIS Software Development LLC ("AGIS") does not dispute these admissions. (Dkt. No. 56 at 8 ("[T]his suit could have been brought against Huawei in the proposed transferee district.")).

The Court finds that this action may have been brought in the proposed transferee district of the Northern District of California and proceeds to the second portion of the analysis, the private and public convenience factors.

    **b. Convenience Factors**

        *i. Relative Ease of Access to Sources of Proof*

Huawei argues that this factor "favors transfer because . . . relevant documents, including highly proprietary source code, and witnesses with knowledge relating to the development, manufacturing, and management of the Accused Devices and the third-party Accused Applications are located in N.D. Cal. or at locations far more convenient to N.D. Cal. than to E.D. Tex." (Dkt. No. 36 at 10).

Huawei submits that, as to Huawei Device and Huawei Dongguan, both are Chinese corporations which design and manufacture the Accused Devices outside of the United States, including any pre-loaded installation of Google software on those devices. (Dkt. No. 36 at 4). "Huawei Device and Huawei Dongguan's employees who design and manufacture Huawei's smartphones and tablets reside in China." (*Id*.) Neither of these companies have facilities or employees in Texas, nor do they maintain any documents in Texas. (*Id*.) Huawei USA is a Texas corporation with its principal place of business in Plano, Texas. (*Id*.) Huawei submits, however, that none of its Plano-based employees are involved in research and development, or sales and marketing of the Accused Devices, and argues that its Plano facility "primarily handles corporate-level functions that are not product or technology specific." (*Id*. at 4–5).

Instead, Huawei argues, Huawei USA's research and development, testing, and sales and marketing efforts for the Accused Devices occur primarily within California, specifically in Huawei USA's Santa Clara, Mountain View, and San Diego facilities in California. (*Id*. at 5). Related to these efforts, Huawei has identified in its Motion two witnesses: Wen Wen and Yao Wang. Huawei identified Wen Wen as having "knowledge of sales and marketing efforts for the Accused Devices;" Wen Wen is employed at the Bellvue facility in California. (*Id*.) Huawei has also identified Yao Wang as its only other party witness; Yao Wang is a Principal Engineer who works out of Huawei's Santa Clara office.

Unsurprisingly, there is *much* speculation from both sides under this factor about third party witnesses. Specifically, Huawei argues that "Accused Applications are all developed by third parties located in and around N.D. Cal.," such as Google, and, thus, "Google's knowledge and documents will be essential to showing how these applications function." (Dkt. No. 36 at 5–6). Huawei supports this argument with a number of declarations by Google employees. (Dkt. Nos. 36-4, 36-5, 36-6). The declarations address various Google software products or services, such as Google Maps for Mobile, Google Hangouts or Messenger, and Find My Device. (*Id*.) Each of the declarations states that "at least" the engineers at Google's Mountain View campus have knowledge regarding the current design, development, and operation of those various products and that the declarant is unaware of any employee with relevant knowledge who resides or works in the Eastern District of Texas. (*Id*.) Further, the declarations state that:

> Nearly all the documents relating to [the declaration's product/service], including highly proprietary information and source code, are either physically present in or electronically accessible from Mountain View, California, as that is where many of the personnel most qualified to identify and locate such documents reside. I am aware of no documents described in this paragraph being located in the Eastern District of Texas.

(*Id*.) Notably, Huawei does not identify with particularity any specific Google employees that they anticipate calling at trial or any documentation they plan to present as evidence. (*See, generally*, Dkt. No. 36).

5

However, Huawei has specifically identified three additional non-Google third party witnesses: Christopher Rice (a named co-inventor on the two of the patents-in-suit, resident of Redmond, Washington); Daniel J. Burns (the prosecuting attorney for at least three of the four patents-in-suit (*i.e.*, the '055, '838, and '251 Patents), resident of Santa Clara, CA, within N.D. Cal.); and, generally, "[m]ost of the inventors of prior art references that appear related to the Patents-In-Suit" (asserted to reside in N.D. Cal. or elsewhere in California, with none of the inventors residing in Texas.). (Dkt. No. 36 at 7).

Huawei misunderstands how this factor is properly evaluated, including in its analysis various witnesses in support of its evaluation of access to sources of proof in the Northern District of California. First, sources of proof in terms of the *Volkswagen* factor refers exclusively to sources of documentary or physical proof. *See Volkswagen II*, 545 F.3d at 316 ("All of the *documents and physical evidence* relating to the accident are located in the Dallas Division, as is the collision site.") (emphasis added); *see also id.* (noting that while "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous" in reference to advances in copying technology and information storage). Access to witnesses *for presentation at trial*, which is the purpose of the venue transfer analysis,[1] is properly considered under either the second factor, relating to the Court's subpoena power to compel testimony at trial, or the third factor, which relates to the cost of attendance for willing witnesses. These factors do not permit a single source of proof or witness to be "double counted" or unduly influence the analysis. *See Peteski Prods., Inc. v. Rothman*, No. 5:17-CV-00122-JRG, 2017 WL 8943154, at *3 (E.D. Tex. Nov. 13, 2017)

---

[1] Similarly, the inquiry regarding access to sources of proof correlates to production and presentation to the jury at trial. *See Volkswagen II*, 545 F.3d at 316; *accord Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979) ("In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or *inconvenient place of trial*") (emphasis added). The same principle holds true for consideration of documentary evidence under the first factor, i.e., bringing physical materials to the Court for exhibition before the factfinder. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (considering only "physical and documentary evidence" in analyzing the first factor).

(excluding willing third-party witnesses and party witnesses (presumed to be willing) from consideration under the compulsory process factor).

Accordingly, the only question the Court can consider under this factor is the access to documentary evidence including source code.[2] On this point and as outlined above, Huawei has presented argument that its relevant documents are located at its facilities in China or its research and development facilities in the Northern District, and that Google's allegedly relevant documents are located at Google's Mountain View campus.

AGIS submits that it is a Texas limited liability company with a principal place of business located at 100 W. Houston Street, Marshall, and offices in Lenexa, Kansas, Jupiter, Florida and Austin, Texas. (Dkt. No. 56 at 3). AGIS represents that "AGIS's proof will come from records maintained in the offices of its related companies in Jupiter, Florida; Lenexa Kansas; Austin, Texas; and in Allen, Texas in the office of its consultant Eric Armstrong." (*Id.* at 10). "AGIS also intends to obtain evidence relevant to damages, such as the consumer market value of the features enabled by the Patents-in-Suit, consumer surveys and marketing information regarding demand for particular applications and features from third-party cellular carriers, including AT&T, Sprint, and Verizon," whose headquarters are in Dallas, Texas (AT&T), Overland, Kansas (Sprint), and Basking Ridge, New Jersey (Verizon), each of which is, AGIS submits, "substantially closer and more convenient to this District than to the Northern District of California." (*Id.*) AGIS also submits that it has no sources of proof in the proposed transferee district. (*Id.*)

Further, AGIS identifies "[a]n important non-party witness for AGIS [Mr.] Eric Armstrong, a former AGIS Inc. employee who is now a full-time consultant for AGIS and AGIS Inc.," who "lives and works in Allen, Texas, in this District," and who is "expected to have documents relevant to this

---

[2] The Court may also consider sources of physical evidence, but such evidence has not been identified in this case.

action in his office in this District, including e-mails regarding the development of software and marketing which are stored on his computer." (Dkt. No. 56 at 5).

Huawei argues that AGIS's prospective reliance on the third-party cellular carriers' documentary evidence "is self-serving speculation" since the carriers "have no responsibility for the development and maintenance of those applications," and faults AGIS for failing to present proof to the contrary. (Dkt. No. 74 at 2). However, as AGIS points out, Huawei's prospective reliance on the third-party Google's documentary evidence is also speculative and lacks specificity since "Huawei fails to specify what these documents are, or why they are important to the case, and does not contend that these documents are inaccessible from this District." (Dkt. No. 81).[3]

The Court notes, first, that AGIS misstates the test under applicable Fifth Circuit law: this inquiry does not focus on whether the documentary sources of proof are "accessible" from this district. "Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered." *Implicit v. Trend Micro*, No. 6:16-cv-00080-JRG, 2016 U.S. Dist. LEXIS 191571, at *5 (E.D. Tex. Sep. 1, 2016) (citing *Volkswagen II*, 545 F.3d at 316). However, AGIS is correct to raise the failure of Huawei to identify with particularity the documents it refers to or their specific importance to Huawei's case. Huawei essentially argues that because AGIS identifies functionality related to Google products and services that Google must be a major source of information to be presented at trial, but does not demonstrate why that must be the case.[4] AGIS's argument that "AGIS has not relied on any confidential Google

---

[3] Additionally, the Court notes that this is exactly the kind of speculative inquiry which Courts should not be engaging in at this early stage in the development of the case, yet they are required to do so. *See Implicit, LLC v. Palo Alto Networks, Inc.*, No. 6:17-CV-00336-JRG, 2018 WL 1942411, at *4 (E.D. Tex. Feb. 20, 2018) ("The venue analysis, by its nature, calls on courts to weigh scenarios that tend to be speculative and conjectural.") (quoting *Oyster Optics v. Cisco Systems, Inc.*, No. 2:16-cv-1301-JRG, Dkt. No. 45 at 7 (E.D. Tex. Dec. 8, 2017)). The presence of relevant documents, and, indeed, their alleged relevance, is precisely the sort of factual development intended to be addressed by general discovery, yet the Court is asked to guess as to whether or not it thinks that a given discovery avenue will bear fruit.

[4] The Court also notes the peculiarity of the various Google declaration's statements indicating that "at least" individuals at the Mountain View campus possess relevant knowledge but not defeating, or even addressing, AGIS's submission that Google's Austin campus (which is admittedly not within this District), includes staff dedicated to a

code in its preliminary infringement contentions," and that its contentions actually "identify publicly available source code, functionality that is within the public view," further complicate this analysis. (Dkt. No. 81 at 4). In addition, the Court remains unsure, at this juncture, of the true presence and/or relevance of documentary evidence from the third-party carriers that AGIS will seek discovery from.

Further, Huawei argues that Mr. Armstrong's documentary evidence is "effectively irrelevant to this case and the transfer analysis." (Dkt. No. 74 at 3). This is because, Huawei argues, "AGIS's infringement contentions confirm that it '*does not intend to rely on the assertion that its own apparatuses . . . practice the claimed inventions*,' meaning Mr. Armstrong's development efforts related to LifeRing and ASSIST are effectively immaterial to this case." (*Id*. at 3–4). However, the infringement contentions do not tell the whole story. The relevance of Mr. Armstrong's documentary evidence lies in Huawei's Answer, wherein it asserts a marking defense, arguing that damages are barred as a result of a failure to mark by AGIS. (Dkt. No. 29 at 16 ("Plaintiff's claims for damages are barred, in whole or in part, under 35 U.S.C. §§ 286, 287 and/or 288.")). Pursuant to § 287, a plaintiff may defeat a marking defense by showing either: (1) the patented articles were substantially consistently and continuously marked with the patent number during the entire period the patented articles were sold, or (2) the alleged patented articles are not patented articles within the meaning of § 287(a) because they do not meet all the elements of any of the claims of the asserted patent. *See Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993) ("[O]nce marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute."); *see also Toro Co. v. McCulloch Corp.*, 898 F. Supp. 679, 684 (D. Minn. 1995) ("A device is a "patented article" under a patent when it contains all of the elements disclosed in any single claim of the patent."). Thus, by raising § 287 as an issue to be decided in this

---

host of products and services including "Android, G Suite, Google Play, people operations, finance, engineering, and marketing." (Dkt. No. 56 at 9). While the Court does not consider this issue in its analysis of this factor, it presents this as a possibility of clever declaration preparation which, in another case and upon the proper showing, may warrant venue-related discovery to test the veracity of the declarations upon which parties ask the Court to rely.

case, Huawei has made the issue of whether AGIS's products—or the products of its affiliated companies—are covered by the patents in suit a central issue and of primary concern to the issue of limiting damages in this suit.[5]

Accordingly, the Court finds that primary sources of proof may be found both in this District and the proposed transferee district, along with many sources of proof that are in other districts and abroad. On balance, the Court notes the generally heavier evidentiary burden with which defendants are generally faced with in patent infringement lawsuits. However, taking into account the location of primary sources of proof within this District upon which the plaintiff will rely, the Court finds that this factor weighs in favor of transfer, but not to a great extent, especially given the multitude of other primary sources of proof outside of both this District and the proposed transferee district that the Parties expect to draw documentary evidence from.

*ii. Availability of Compulsory Process*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316. Third-party subpoena is governed by Fed. R. Civ. P. 45, providing the presiding court with nationwide subpoena power to order third-party witnesses to attend deposition, so long as the deposition is to take place within 100 miles of the witness's residence or regular place of business. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A); *see Virtualagility, Inc. v. Salesforce.com, Inc.*, 2:13-cv-00011-JRG, 2014 U.S. Dist. LEXIS 12015, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014).

---

[5] Huawei urges the Court to consider AGIS's corporate relatives to be one and the same as AGIS. (Dkt. No. 74 at 4 n.7) ("AGIS should not be able to rely upon AGIS, Inc.'s products to oppose transfer, while using its corporate form to shield itself from the requirements of PLR 3-1(f), particularly where the two entities are admittedly related and share many of the same employees.").

The Court now turns to those witnesses which it properly declined to address, *supra*, under the first factor. Huawei submits that the following non-party witnesses are subject to subpoena power in the Northern District of California and not subject to the same in this District: witnesses associated with the "Find My Phone" software (Family Safety Production/Life360 Inc., headquartered in San Francisco, California); the prosecuting attorney for three of the Patents-in-Suit (residing in Santa Clara, California); and potential prior art witnesses (located throughout California). (Dkt. No. 36 at 12). Huawei incorrectly considers the non-party Google witnesses under the third factor. Absent any indication that the third-party Google witnesses are willing, the Court may not consider the cost of their attendance as it must presume utilization of the Court's subpoena power will be required. *See Peteski Prods., Inc. v. Rothman*, No. 5:17-CV-00122-JRG, 2017 WL 8943154, at *3 (E.D. Tex. Nov. 13, 2017) (refusing to consider a consultant, non-party witness a willing witness absent indication he was willing or otherwise a party witnesses, such as an employee). Accordingly, the identified pool of third-party Google witnesses is appropriately considered under this factor, and the Court does consider the presence of this identified pool of third-party witnesses to be, "at some level, probative." *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-CV-1302, 2017 WL 4225202, at *6 (E.D. Tex. Sept. 22, 2017) (holding that while defendant "did not point to specific witnesses they would call (so that the Court may ascertain the applicability of compulsory process over those witnesses)," defendant had, nonetheless "identified an established pool of likely third party witnesses as to whom the Northern District clearly exercises compulsory process."); *id*. (noting that "greater specificity would certainly strengthen [defendant's] position" but that the showing was "relevant" and "at some level, . . . probative."). These are the only third-party witnesses that Huawei identifies with respect to this factor in its Motion. (Dkt. No. 36 at 11–13).

AGIS submits that "AGIS witness, software developer Eric Armstrong, is in Allen, Texas." (Dkt. No. 56 at 13). Mr. Armstrong is not a party witness, but is "a former AGIS Inc. employee who is now a full-time consultant for AGIS and AGIS Inc." (*Id*. at 5). The Court has already addressed his relevance through Huawei's attempt to limit damages via marking pursuant to § 287, discussed *supra*. AGIS also submits that "[e]vidence relevant to damages will likely come from non-party witnesses from AT&T, Sprint, and Verizon" and that "[i]t is more likely that the attendance of witnesses working at AT&T in the Dallas area can be compelled if this action remains in the Eastern District of Texas." (*Id*. at 13).

First, with respect to AGIS's arguments, the Court credits the presence of Mr. Armstrong as counting against transfer. However, its argument regarding the compulsion of third-party witnesses related to companies whose employers are located *outside* of this district is not availing. And the relative convenience of these identified non-party and currently-unwilling witnesses is not something which can be considered under the third factor. Accordingly, the Court will consider Mr. Armstrong under this factor and no other submitted witnesses from AGIS.

While AGIS also argues that the presence of Life360 as a third-party is not relevant, this is the type of speculative inquiry with which the Court cannot, again, truly engage at this early stage of the proceeding. *See supra* n. 2. The Court will, accordingly, not discount the presence of Life360 in its analysis. The Court is more suspicious, however, of the potential prior art witnesses identified by Huawei; these witnesses are, in the Court's experience, rarely called to trial. Regardless, even if the Court were to wholly discount both of these sources of third-party witnesses, the identified pool of third-party witnesses tends to tip the balance of this factor towards transfer. Thus, on balance, the Court finds that this factor weighs in favor of transfer.

### iii. Cost of Attendance for Willing Witnesses

Huawei argues that "Huawei Device and Huawei Dongguan have no witnesses in E.D. Tex., and travel for their witnesses from China to N.D. Cal. is more convenient," and that "most of Huawei USA's relevant witnesses are located in California or in locations closer to N.D. Cal. than to E.D. Tex." (Dkt. No. 36 at 13). While Huawei identifies third-party Google witnesses for consideration under this factor, those witnesses, as discussed above, are not willing third-party witnesses and are thus properly considered only under the second factor since witnesses cannot be double counted.

Huawei argues that "[c]ontrolling precedent directs courts to consider actual travel logistics, including airplane flight times—and not distance-as-the-crow-flies." (Dkt. No. 74 at 4 (citing *Volkswagen II*, 371 F.3d 203, n.3)). However, in *Volkswagen II*, the Fifth Circuit first considered in the body of its opinion the distance-as-the-crow-flies between San Antonio and Marshall, noting, via footnote, that the absence of any direct flights between Shreveport and San Antonio did not somehow mitigate the distance which it had considered in the first instance. 371 F.3d at 203 n.3. This notation does not disturb the initial consideration of distance-as-the-crow-flies, but rather supplements it, by permitting courts to take note of substantial travel considerations which may impact the analysis beyond simple distance comparisons. It does not require, however, a court to become a travel agent for the parties' witness lists, comparing travel schedules to determine absolute efficiencies and ease of travel prior to making its determination under this factor to the relative cost of attendance of willing witnesses.

Regardless, the distance between Shenzen, China, and Marshall, Texas, is, obviously greater than the distance between Shenzen, China, and San Francisco, California. (*See* Dkt. No. 56-6 (respectively, approximately 8200 mi. and 6900 mi.)). Similarly, the Huawei employees

located in California will find transfer of this case to the Northern District of California to be much more convenient for them.

The same is true for AGIS's party witnesses, but with respect to the Eastern District of Texas. AGIS argues that its "key party witnesses will include Mr. Beyer (Jupiter, Florida), Mr. Sietsema (Austin, Texas), and Sandel Blackwell (Lenexa, Kansas)," and that the Eastern District of Texas "is a more convenient venue for each of them." (Dkt. No. 56 at 11). While AGIS also argues that "[u]nlike Huawei, AGIS is a small business, and AGIS's party witnesses' absence will create severe hardship for AGIS's ability to do business, while Huawei would likely experience no impact if its witnesses were required to travel to Texas to testify," the Court, in recognizing the minimal probative value of this argument,[6] gives this little weight as these key witnesses will be required to travel for trial no matter where the trial is held.

Regardless, both sides have identified party witnesses for whom the competing forums are respectively more convenient. Of course, as other courts in this Circuit have noted, the convenience of party witnesses is given less weight. *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (W.D. Tex. Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."); *see also Vassallo v. Goodman Networks, Inc.*, No. 5:14-cv-743-DAE, 2015 WL 502313, at *4 (W.D. Tex. Feb. 5, 2015) (noting that the convenience of non-party witnesses is given more weight in the transfer analysis than the convenience of party witnesses); *Summit 6 LLC v. HTC Corp.*, No. 7:14-cv-0014-

---

[6] *See Rossco Holdings Inc. v. Best W. Int'l Inc.*, No. H-06-0155, 2006 WL 1007474, at *3 (S.D. Tex. Apr. 18, 2006) (denying transfer due in part to "potential hardship [on plaintiff] as a small business [] litigating in Arizona").

O, 2014 WL 4449821, at *7 (N.D. Tex. Sept. 10, 2014) (same); *RPost Holdings, Inc. v. StrongMail Sys., Inc.*, No. 2:12-cv-515-JRG, 2013 WL 4495119, at *4 (E.D. Tex. Aug. 19, 2013) (same).

Accordingly, having found that both sides have party witnesses for whom the competing forums are respectively more convenient, and that there are no willing third party witnesses (all third party witnesses having been considered under the second factor), the Court finds that this factor is neutral.

### iv. All Other Practical Problems

Huawei argues that there are no practical problems which might arise from transfer of this case, as, when the motion was filed, this Court had not yet entered a docket control order and discovery had not yet begun. (Dkt. No. 36 at 14). AGIS argues that judicial economy presents a distinct basis which disfavors transfer as "[p]arallel actions on the same four patents-in-suit are presently pending against Huawei, LG, ZTE, and HTC in this Court" and that "adjudication of all five actions by this Court, rather than in duplicative suits in multiple jurisdictions serves the interests of judicial economy and weighs heavily against transfer." (Dkt. No. 56 at 14).

Not so. As this Court has noted previously, "certain cases warn against giving excessive weight" to consideration of copending cases in evaluating judicial economy under § 1404. *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302, 2017 U.S. Dist. LEXIS 155586, at *22 (E.D. Tex. Sep. 22, 2017) (citing *In re Google, Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017)). However, "consideration to the existence of copending cases is not foreclosed." *Oyster Optics*, 2017 U.S. Dist. LEXIS 155586, at *22. "Rather, *In re Google* indicates that courts should avoid considering copending cases which currently have, or have had, motions to transfer venue to avoid any 'double count' in according proper weight." *Id*. at *22–23.

In *every* copending case that AGIS points to, a motion to transfer venue and/or dismiss for improper venue has been filed. (*See* Dkt. No. 46; 2:17-cv-516, Dkt. No. 53; 2:17-cv-514, Dkt. No.

15

29; 2:17-cv-517, Dkt. No. 38). Accordingly, the Court does not consider any of the copending cases in evaluating the judicial economy of retaining the action under this factor. With no separate basis to support judicial economy or some other practical problem which would result from transfer, AGIS's position is rebuffed and Huawei's contention that this factor is neutral is, in the Court's opinion, correct. Accordingly, the Court finds this factor is neutral.

### v. Administrative Difficulties Flowing from Court Congestion

Huawei argues that "E.D. Tex. and N.D. Cal. offer comparable litigation timelines" and, accordingly, this factor is neutral. (Dkt. No. 36 at 14). AGIS argues that "U.S. District Court statistics for the 12-month period ending March 31, 2017 indicate the median time for cases to go from filing to trial in the Northern District of California is 25.4 months, compared to 21.4 months in this District," making time to trial faster in this District and weighing against transfer. (Dkt. No. 56 at 15). Huawei does not address this argument or evidence in its sur-reply. (*See* Dkt. No. 74).

The Court finds that the timelines are comparable to an extent, but that the consideration must take into account the four-month quicker time to trial that this District enjoys compared to the Northern District of California. Accordingly, the Court finds this factor weighs slightly against transfer.

### vi. Local Interest in Having Localized Interests Decided at Home

Huawei argues that the Northern District of California has a "strong local interest in this particular case" because various non-parties to this action are located there, specifically: (i) Google, (ii) Life360, (iii) the prosecuting attorney for three of the patents-in-suit, and (iv) prior art witnesses. (Dkt. No. 36 at 13). Notably, Huawei does *not* argue that *its* interests or presence in the Northern District of California contribute to that district's local interest in this case. (*Id.*) Further, Huawei argues that AGIS has no "legitimate presence" in this district and thus this District "has no particular interest in this litigation." (*Id.* at 14).

AGIS argues that "AGIS is organized under Texas law, maintains a principal place of business in this District, and works with a consultant in this District." (Dkt. No. 56 at 14). AGIS also points out that "Huawei USA is also incorporated under Texas law, maintains its headquarters within this District, and employs hundreds of employees who live and work in this District," and that "[t]he remaining Huawei defendants are located in China." (*Id*.)

On consideration, the local interest factor must weigh against transfer. Both domestic companies are located within this district and organized under the laws of Texas. There are no countervailing weighing against transfer because the presence of non-parties in a transferee district is not properly considered under this factor. *See Astute Tech., LLC v. Learners Digest Int'l LLC*, No. 2:12-CV-689-WCB, 2014 U.S. Dist. LEXIS 197246, at *32 (E.D. Tex. Apr. 28, 2014) (Bryson, J.) ("While LDI argues that the Western District of Wisconsin has an interest in determining if technology employed by one of its resident corporations, Sonic Foundry, infringes a valid patent, that interest, affecting only a third party that is a stranger to the lawsuit, is not of sufficient magnitude to be an important consideration in the transfer decision.").

Accordingly the Court finds that this factor weighs against transfer.

### *vii. Familiarity of the Forum with the Governing Law*

Huawei submits that this factor is neutral as "both districts are familiar with patent law." (Dkt. No. 36 at 14.) AGIS appears to suggest that this Court's "extensive experience with patent litigation" disfavors transfer. (Dkt. No. 56 at 15). Absent any specific rationale to the contrary having been presented by the Parties, the Court finds that both districts are familiar with patent law such that this factor is neutral.

### *viii. Avoidance of Unnecessary Conflicts of Law*

The Parties both submit that this factor is neutral. (Dkt. No. 36 at 14; Dkt. No. 56 at 15). The Court agrees.

### III. CONCLUSION

Having considered the relevant factors,[7] the Court is of the opinion that Huawei has not met its "significant burden" to show that the asserted transferee district is clearly more convenient. For the reasons stated above, the Court hereby **DENIES** Defendants' Motion to Transfer Venue (Dkt. No. 36). Additionally, the Court **DENIES AS MOOT** the Huawei Defendants' Motion to Stay Pending Resolution of Venue (Dkt. No. 102).

**So Ordered this**
May 23, 2018

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[7] Summary of factor holdings: (i) access to proof: "in favor of transfer, but not to a great extent"; (ii) availability of compulsory process: "in favor of transfer"; (iii) cost and attendance for willing witnesses: "neutral"; (iv) practical problems: "neutral"; (v) court congestion: "slightly against transfer"; (vi) local interest: "against transfer"; (vii) familiarity with the law: "neutral"; (viii) conflict of laws: (agreed) neutral.