

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT LLC, | § § § | |
| *Plaintiff,* | § § § | **CIVIL ACTION NO. 2:17-CV-00514-JRG** |
| v. | § § | **(LEAD CASE)** |
| HTC CORPORATION, LG ELECTRONICS INC., ZTE CORPORATION, ZTE (USA), INC., AND ZTE (TX), INC. | § § § § § | **CIVIL ACTION NO. 2:17-CV-00515-JRG** **CIVIL ACTION NO. 2:17-CV-00517-JRG** |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is LG Electronics Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue to the Northern District of California.  (2:17-cv-513, Dkt. No. 46.)  Having considered the Motion, the Court is of the opinion that it should be and hereby is **DENIED**.

## I.      BACKGROUND

Plaintiff AGIS Software Development LLC ("AGIS") is a Texas limited liability company with its principal place of business in Marshall, Texas.  (2:17-cv-513, Dkt. No. 167 ¶¶1, 3.)[1] Defendant LG Electronics Inc. ("LG Korea") is a foreign company organized and existing under the laws of South Korea with its principal place of business in Seoul, Korea.  (Dkt. No. 180 at Ex. 25 ¶ 2.)

---

[1] Unless otherwise indicated, all docket citations herein refer to documents filed in *AGIS Software Development LLC v. Huawei Device USA, Inc., et al.*, No. 2:17-cv-0513 (E.D. Tex.).

On June 21, 2017, AGIS filed suit against LG Korea, alleging infringement of U.S. Patent Nos. 9,467,838; 9,445,251; 9,408,055; and 8,213,970 (the "Asserted Patents"). (2:17-cv-515, Dkt. No. 1.) On October 25, 2017, the Court consolidated the instant action with a related action filed by AGIS against Huawei Device USA Inc., Huawei Device Co., Ltd., and Huawei Device (Dongguan) Co., Ltd. ("*Huawei* case") (Dkt. No. 20.) On November 27, 2017, LG Korea filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, to Transfer Venue to the Northern District of California. (the "LG Korea Motion") (Dkt. No. 46.) The Parties completed briefing on the LG Korea Motion on January 12, 2018. (Dkt. No. 82.) The Court then held an evidentiary hearing on August 8, 2018. (Dkt. No. 176.) At the hearing, the Court accepted the declaration of Todd Parish, a private investigator hired by AGIS, the deposition transcripts and exhibits from the depositions of Juseong Ryu (LG Korea) and Hongsun Yoon (non-party witness for LG Mobile), and all record evidence submitted by the parties to complete the evidentiary record. (*Id.* at 49:7–10.) The Parties filed proposed Findings of Fact and Conclusions of Law within seven days of the hearing. (Dkt. Nos. 182, 185.) On August 22, 2018, the Court unconsolidated the instant action from the *Huawei* case and reconsolidated this case, *AGIS Software Development LLC v. LG Electronics, Inc.*, 2:17-cv-515 and *AGIS Software Development LLC v. ZTE Corporation*, 2:17-cv-517 under a new lead case, *AGIS Software Development LLC v. HTC Corporation*, 2:17-cv-514. (2:17-cv-515, Dkt. No. 25.)

## II. LEGAL STANDARD

### A. Personal Jurisdiction

Personal jurisdiction is governed by Federal Circuit law in patent cases. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). The plaintiff bears the burden of establishing that the defendant is subject to personal jurisdiction. *Celgard, LLC v. SK Innovation*

*Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). If no jurisdictional discovery is conducted, the plaintiff need only make a *prima facie* showing. *Id.* However, when, as here, there has been jurisdictional discovery and an evidentiary hearing, the preponderance of the evidence standard applies. *Id.* (citing *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001)).

Whether a court may exercise personal jurisdiction over an out-of-state defendant is a two-step analysis: (1) does the state's long-arm statute permit service of process, and if so, (2) does exercising jurisdiction over the defendant violate due process? *Autobytel, Inc. v. Insweb Corp.*, No. 2:07-cv-00524, 2009 WL 901482, at *1 (E.D. Tex. Mar. 31, 2009) (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). Since Texas's long-arm statute is coextensive with the due process inquiry, the two inquiries collapse into a single analysis of whether asserting jurisdiction comports with due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 118 (E.D. Tex. 2009). Due process is satisfied if (1) the defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *Autobytel*, 2009 WL 901482, at *1 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placemen*t, 326 U.S. 310, 316 (1945)). Once the plaintiff demonstrates that the defendant has sufficient contacts with the forum, the burden shifts to the defendant to show that litigating in the forum would be unfair or unreasonable. *Celgard*, 792 F.3d at 1377.

Minimum contacts can be found on the basis of general jurisdiction, specific jurisdiction, or the stream of commerce theory. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *Beverly Hills Fan*, 21 F.3d at 1566. General jurisdiction exists when the defendant's contacts with the forum are "so continuous and systematic as to render [it] essentially at home in

the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014). Specific jurisdiction is satisfied when the defendant has "purposefully directed [its] activities at the residents of the forum, and the litigation results from alleged inquires that arise from or relate to those activities." *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-cv-00026, 2009 WL 1025467, at *3 (E.D. Tex. Mar. 26, 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

Under the stream of commerce theory, minimum contacts are found if the defendant "deliver[s] its products into the stream of commerce with the expectation that they will be purchased by customers in the forum State." *Beverly Hills Fan*, 21 F.3d at 1566 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)).[2] The Supreme Court is split over whether merely placing a product into the stream of commerce, defined as "the regular and anticipated flow of products from manufacture to distribution to retail sale" (the "Brennan test"), or whether the existence of additional conduct by the defendant purposefully directed toward the forum state (the "O'Connor test") satisfies this test. *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112, 117 (1987). The Federal Circuit has declined to resolve this split and determines whether the specific facts at issue support jurisdiction under either theory. *Beverly Hills Fan*, 21 F.3d at 1566.

Despite these divergent views, it is undisputed that "unilateral actions of a third party having no pre-existing relationship with the tortfeasor" will not confer jurisdiction over a foreign defendant. *Beverly Hills Fan*, 21 F.3d at 1565 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 297). Put differently, jurisdiction "arises from the efforts of the [defendant] to serve, directly or

---

[2] Placing a product into the stream of commerce can form the basis for specific jurisdiction if the plaintiff alleges patent infringement based on the defendant's shipment of allegedly infringing products into the forum state. *Beverly Hills Fan*, 21 F.3d at 1565 ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction.").

indirectly, the market for its product." *Id.* at 1566 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

If minimum contacts have been found, the defendant bears the burden of showing that it would be unfair or unreasonable to maintain suit in the forum. *Asahi*, 480 U.S. at 121–22 (Stevens, J., concurring in part and concurring in the judgment) (quoting *Int'l Shoe*, 326 U.S. at 320); *Beverly Hills Fan*, 21 F.3d at 1568. This analysis requires balancing various factors: "(1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal citations and quotation marks omitted). Jurisdiction is generally denied in the "rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568 (internal citations omitted).

### B.     Transfer Under 28 U.S.C. § 1404(a)

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1404(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct.

1514, 1519 (2017) ("§1404(b) is the sole and exclusive provision controlling venue in patent infringement actions.") (internal citations and quotation marks omitted). For purposes of § 1404(b), a domestic corporation resides only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521.

LG Korea is not a domestic corporation. However, as noted above, once this threshold inquiry is met, the court analyzes public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *Volkswagen I*, 371 F.3d at 203; *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (internal citation omitted). The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* These factors are decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*").

To prevail on a motion to transfer under § 1404(a), the movant must show that transfer is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* at 315; *accord In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (holding that a movant must "meet its burden of demonstrating [] that the transferee venue is 'clearly more convenient.'") (internal citation

omitted).  Absent such a showing, the plaintiff's choice of venue is to be respected.  *Volkswagen II*, 545 F.3d at 315.  When deciding a motion to transfer under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party.  *See Sleepy Lagoon, Ltd., v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008).

## III.    ANALYSIS

### A.    Personal Jurisdiction Over LG Korea

The Court first addresses the issue of personal jurisdiction raised by LG Korea.  LG Korea "is a South Korean corporation with its principal place of business in Seoul, Korea." (Dkt. No. 185 at 3 ¶ 14; Dkt. No. 46 at 5.) LG Korea asserts that it has no connection with Texas to justify personal jurisdiction. (Dkt. No. 185 at 12–13 ¶17; Dkt. No. 46 at 11–15.) It is not incorporated in Texas nor is its principal place of business located in the state.  (Dkt. No. 185 at 10 ¶ 11; Dkt. No. 46 at 5, 11–12.)  It also has no offices, employees, records, or bank accounts in Texas.  (Dkt. No. 185 at 12–13 ¶ 17; Dkt. No. 46 at 13.) LG Korea argues that it "designs, engineers, and manufactures the Accused Devices outside the United States, mostly in South Korea," (Dkt. No. 185 at 3 ¶ 15; Dkt. No. 46 at 13-15), and that its wholly-owned subsidiaries, LG Electronics Mobilecomm U.S.A., Inc. ("LGEMU") and LG Electronics MobileResearch U.S.A., LLC ("LGEMR"), "are solely responsible for importing, testing, performing quality management, marketing, offering for sale, and selling the Accused Devices in the United States."  (Dkt. No. 185 at 4 ¶ 23; Dkt. No. 46 at 13-15.) "LGEMU acquires the Accused Devices from [LG Korea] in South Korea and imports them into the United States for sale to national phone carriers, retailers, and distributors, who in turn sell those devices to end users throughout the nation."  (Dkt. No. 185 at 5 ¶ 30; Dkt. No. 46 at 13-15.) LG Korea argues that it has no control or authority over its U.S. subsidiaries or the third-party

resellers, and therefore any alleged sale or offer for sale of the accused smartphones by those entities cannot be imputed to it. (Dkt. No. 185 at 12 ¶17–14 ¶ 21; Dkt. No. 46 at 13–15.) As a result, LG Korea argues that it does not have the requisite minimum contacts with this District necessary for personal jurisdiction.

AGIS argues that LG Korea has sufficient contacts under the stream of commerce theory. (Dkt. No. 182 at 18 ¶ CL23, at 19 ¶ CL24.) To support its argument, AGIS points to several facts: (1) from 2012 to 2017, LG Korea shipped approximately 86 million LG branded phones, including the accused devices, to LG Mobile, who in turn sold them to carriers and retailers in Texas, (*id.* at 19 ¶ CL25); (2) "[f]rom June 18, 2018 to July 26, 2018, Mr. Parish, [AGIS's private investigator], purchased thirteen (13) Accused Devices at various U.S. mobile phone carrier and retail locations within the Eastern District of Texas," (*id.* at 4 ¶ FF21); (3) on September 26, 2016, LG Korea shipped its phones to AT&T in North Fort Worth, Texas, (*id.* at 9 ¶ FF50); (4) LG Korea admitted that it was aware that its phones were sold nationwide, including in Texas, (*id.* at 7 ¶ FF 37); (5) LG Korea creates and distributes service manuals and user guides for the U.S. market, (*id.* at 5 ¶¶ FF27–29); (6) LG Korea marks its phones for sale in the U.S. which identify it as the source of the products, (*id.* at 6 ¶ FF30); and (6) LG Korea specially marks its phones with each U.S. carrier's trademarked symbols. (*Id.* at 7 ¶ FF36.) AGIS avers that these facts demonstrate that LG Korea sold its product into a nationwide distribution chain with the expectation that they would be sold in Texas and that LG Korea knew its products were sold in Texas, thereby satisfying both the Brennan and O'Connor applications of the stream of commerce test.

In response, LG Korea argues that it has no role in how its subsidiaries or carriers sell its phones, and AGIS has failed to provide any evidence that LG Korea itself sells the accused smartphones in the United States, "or directs or otherwise oversees LGEMU's distribution." (Dkt.

No. 185 at 16 ¶ 27.) Whether or how phones end up in Texas is entirely the result of unilateral acts of third-parties. (Dkt. No. 46 at 14–15; Dkt. No. 77 at 2–5.)

The Court finds LG Korea's arguments unavailing. LG Korea primarily relies on the fact that it has no *control* over LGEMU or the third-party resellers, and therefore lacks sufficient contacts under the stream of commerce theory. However, the relevant inquiry is not whether LG Korea controlled the intermediaries in the distribution chain, but instead whether it "deliver[ed] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Beverly Hills Fan*, 21 F.3d at 1566 (quoting *World-Wide Volkswagen*, 444 U.S. at 297–98). LG Korea admitted that it sells its smartphones to LGEMU and that it knew LGEMU resells the smartphones to third-party carriers who distribute the phones nationwide, including in Texas. (Dkt. No. 185 at 4 ¶ 23); (Dkt. No. 46 at 5–6.) It also admitted that a "small quantity of phones are imported by LGEMU through DFW airport in Texas based on special request from a LGEMU customer." (Dkt. No. 185 at 7 ¶ 43.) These facts are sufficient to show that LG Korea "knew, or reasonably could have foreseen, that a termination point of the channel was [Texas]." *Beverly Hills Fan*, 21 F.3d at 1564.

The Eastern District of Michigan recently found personal jurisdiction on similar facts. In *Ford Global Technologies LLC v. New World International, Inc.*, the plaintiff argued that jurisdiction was proper over Defendants New World International, Inc. and United Commerce Centers, Inc. (collectively "United") because United sold products in Michigan through their national distributor, Auto Lighthouse, LLC ("Auto Lighthouse"). No. 2:15-cv-10394, 2016 WL 3349041 at *1 (E.D. Mich. June 16, 2016). Auto Lighthouse sold products via several websites and did not have any physical stores or inventory. When an online order was placed, it would purchase the product from New World International, Inc., and then ship it to the contiguous 48

states, including Michigan. *Id.* at *1. The court found that United had sufficient contacts with Michigan under the stream of commerce theory because: (1) United formed Auto Lighthouse to increase its online presence and sales in the United States; (2) Auto Lighthouse filled its online orders by purchasing the products from United, and sold products throughout the contiguous United States, including Michigan; and (3) United monitored Auto Lighthouse's performance, among other things. *Id.* at *11–14. Based on these facts, the court concluded that "United uses Auto Lighthouse, and in particular, Auto Lighthouse's websites, to sell its inventory nationally and into Michigan, and that United is not only aware of the national reach of Auto Lighthouse's business, it aids Auto Lighthouse in maintaining and extending that reach." *Id.* at *13.

Likewise, LG Korea sells its products via an established distribution channel through LGEMU with knowledge, or at least reasonable foreseeability, that its products will end up in Texas. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012) (holding that presence of "defendant's continuous, established distribution channels" is a "significant factor supporting the exercise of personal jurisdiction [under] *Beverly Hills Fan*"); *see also MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-cv-289, 2008 WL 910012 (E.D. Tex. Apr. 2, 2008) (finding personal jurisdiction proper over defendant that sold vehicles containing the accused products to a related foreign entity, which sold the vehicles to a related U.S. entity for distribution throughout the U.S., including Texas); *Serius Innovative Accessories, Inc. v. Cabela's, Inc.*, No. 09-cv-102, 2009 WL 9141752, at *3 (S.D. Cal. Nov. 2, 2009) (finding jurisdiction even though Defendant denied knowledge of sales in California because Defendant's "subjective expectations about its products sales are only relevant to the extent they are reasonable" and since Defendant's distributor ships nationwide "the only reasonable expectation is that their products would be marketed and

sold in California"). The presence of this intentionally established distribution channel, therefore, provides sufficient grounds to assert personal jurisdiction over LG Korea.

Notwithstanding the above, LG Korea argues that a finding of personal jurisdiction would be unfair and unreasonable. However, jurisdiction is not found in the "rare situation [] in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation [therein]." *Beverly Hills Fan*, 21 F.3d at 1568; *see also Burger King*, 471 U.S. at 477 (holding that defendant must present "compelling case" to defeat jurisdiction if he has purposefully directed his activities at the forum). LG Korea has failed to show that this is one of those rare cases. AGIS is a Texas company with its principal place of business in this District and as such, it has a strong interest in having its injuries remedied in its home state. Texas also has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). This is especially true when, as here, the sale of the accused smartphones is not an isolated occurrence but arises from LG Korea's concerted efforts to serve the U.S. market, including Texas. While there is no dispute that a burden is placed on LG Korea, a foreign corporation, by being hailed into court in this District, that burden is one that LG Korea faces in any United States district court and is not one that is easily outweighed by Plaintiff's (and this state's respective) interests in resolving the dispute here.

Accordingly, based on the totality of the circumstances, the Court finds that the exercise of personal jurisdiction over LG Korea is proper.

### B. Transfer Under 28 U.S.C. § 1404(a)

The Court now addresses the issue of transfer under § 1404(a). LG Korea does not dispute that this action could have been properly filed in the Northern District of California, (Dkt. No. 46 at 18), and AGIS is silent on the issue in its briefs. Thus, the threshold requirement for transfer

under § 1404(a) has been satisfied. The Court now proceeds to analyze the private and public factors considered in determining whether transfer is appropriate.

### 1. Private Interest Factors

### a) Relative Ease of Access to Sources of Proof

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, LG Korea must show that transfer to the Northern District of California will result in more convenient access to sources of proof. *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6279907, at *2 (E.D. Tex. Dec. 28, 2017).

LG Korea argues that this factor favors transfer because the majority of relevant documents are located in the Northern District of California. (Dkt. No. 46 at 5–6.) LG Korea submits that it is a Korean company, and designs and manufactures the accused smartphones outside of the United States. (*Id.* at 5.) All of its technical documents are stored in its offices in South Korea, and it is not aware of any relevant documents in this District. (*Id.* at 5, 20.) LG Korea argues that most of the relevant documents reside with non-parties in California. (*Id.* at 5–6.) Its California subsidiaries and non-parties, LGEMU and LGEMR, are "solely responsible for importing, testing, performing quality management, marketing, offering for sale, and selling the Accused Devices in the United States," (*id.* at 5), and both "maintain key operations with respect to the Accused Devices in California, including Santa Clara." (*Id.* at 6.) "Android-related certification documents and records are physically present in or electronically accessible at [LGEMU's] Northern California office," (*id.* at 6), and "documents and records concerning testing, quality management, and other similar [documents] related to the Accused Devices are maintained in the San Diego office." (*Id.* at 7.) LG Korea explains that "many of [these] documents exist on local computers and servers that are not accessible outside of LGEMU's offices" in California. (*Id.* at 20.) In

addition, LG Korea argues that non-party Google maintains key documents and confidential source code that are central to AGIS's infringement claims in the Northern District of California. (*Id.* 8, 20.) For example, nearly all documents related to Google Maps for Mobile App, one of the accused applications, are either physically present in or electronically accessible in Mountain View, California. (Dkt. No. 36 at Ex. 4 ¶ 6.)

In response, AGIS argues that it maintains its books and records at its office in this District as well as documents "in the offices of its related companies located in Juniper, Florida; Lenexa, Kansas; [and] Austin, Texas." (Dkt. No. 68 at 25.) Its consultant, Eric Armstrong, also has relevant documents in this District, "including e-mails regarding the development of software and marketing which are stored on his computer." (*Id.* at 5.) "AGIS also intends to obtain evidence relevant to damages, such as the consumer market value of the features enabled by the Patents-in-Suit, consumer surveys and marketing information regarding demand for particular applications and features from third-party cellular carriers, including AT&T, Sprint, and Verizon," whose headquarters are in Dallas, Texas (AT&T); Overland, Kansas (Sprint); and New York (Verizon), each of which AGIS states is "substantially closer and more convenient to this District than to the Northern District of California." (*Id.*) With respect to Google's source code, AGIS asserts that its infringement contentions rely on Google's open source code which is publicly available and thus sees no reason why the parties cannot access it in this District. (*Id.* at 22.) It also argues that even if Google has relevant documentation, LG Korea fails to explain why the documents cannot be produced electronically in this District. (*Id.*)[3]

---

[3] On September 4, 2018, LG Korea moved for leave to supplement the record in support of its motion to transfer venue to the Northern District of California. (2:17-cv-514, Dkt. No. 66.) The Court granted LG Korea's motion for leave. (Dkt. No. 69). In its motion, LG Korea provided evidence that AGIS issued a subpoena on Google in both of the consolidated cases, *Agis Software Development, LLC v. Huawei Device USA Inc. et al.*, No. 2:17-cv-513 and *Agis Software Development, LLC v. HTC Corp. et al*, No. 2:17-cv-514. The subpoena sought the production of Google's confidential source code for several of the accused applications in the Northern District of California. LG Korea argued that these subpoena notices rebut AGIS's claims that its infringement claims rest solely on Google's publicly

13

LG Korea points to relevant documents that are stored with it in Korea, with its subsidiaries and non-parties LGEMU and LGEMR in California and New Jersey, and with non-party Google in California. As a foreign corporation with documents well outside the United States, the relative ease of access to its documents will not substantially change across different districts and is thus neutral. LG Korea submits that documents from Google and LGEMU/LGEMR are relevant to AGIS's infringement and damages claims, respectively, and are stored in or near the transferee district.[4] Accordingly, those sources of proof weigh in favor of transfer. AGIS, on the other hand, points to sources of proof located in this District, Kansas, and Florida. These documents include "AGIS's books and records," documents relevant to software and marketing from its consultant Eric Armstrong, and "documents relevant to damages" from "third-party cellular carrier, including AT&T, Spring, and Verizon." (Dkt. No. 40 at 26-27.) Texas, Kansas, and Florida are substantially closer to this District than to the Northern District of California, and thus those sources of proof weigh against transfer.

On balance, while relevant documents reside in multiple locations, the Court finds that this factor weighs slightly in favor of transfer given that a majority of the documents relevant to the accused products are located closer to the transferee district and that defendants generally face a heavier evidentiary burden in patent cases. *Godo Kaisha IP Bridge I. v. Xilinx, Inc.*, No. 2:17-cv-00100, 2017 WL 4076052, at *3 (E.D. Tex. Sept. 14, 2017); *In re Genentech, Inc.*, 566 F.3d 1338,

---

available source code and that such source code is located in the Northern District of California. The Court granted LG Korea's motion to supplement the record. (Dkt. No. 75.) The Court acknowledges that the subpoenas served on Google suggest that Google possesses relevant documents in the Northern District of California.

[4] AGIS argues that Google can electronically transfer its documents to this District and so that should counsel against transfer. While it is true that documents in digital format can be easily transferred electronically, the Fifth Circuit has nonetheless made clear that for purposes of this factor, the relevant inquiry is the ease of access to where information is *stored*. *Implicit v. Trend Micro*, No. 6:16-cv-00080, 2016 U.S. Dist. LEXIS 191571, at *5 (E.D. Tex. Sept. 1, 2016) (citing *Volkswagen II*, 545 F.3d at 316) ("Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered."). While this arguably appears illogical in today's world, the Court follow such guidance in its analysis.

1345 (Fed. Cir. 2009) (holding that relevant evidence in patent cases often comes from the accused infringer and may weigh in favor of transfer to that location).

### b)      Availability of Compulsory Process

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order.  *In re Volkswagen II*, 545 F.3d at 216.  A district court's subpoena power is governed by Federal Rule of Civil Procedure 45.  For purposes of § 1404(a), there are three important parts to Rule 45.  *See Virtual Agility, Inc. v. Salesforce, Inc.*, No. 2:13-cv-00011, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45).  First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse.  Fed. R. Civ. P. 45(c)(1)(A).  Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense."  Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii).  Third, a district court has nationwide subpoena power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works.  Fed. R. Civ. P. 45(a)(2), 45(c)(1).

LG Korea has named multiple third-party witnesses who reside in the Northern District of California and who are alleged to be relevant to this case.  (Dkt. No. 46 at 5–8, 21–22.)  These witnesses are: (1) employees at Family Safety Production/Life 360 who worked on the accused "Find My Phone" application, (Dkt. No. 46 at 21); (2) Mr. Daniel Burns, the prosecuting attorney

of three of the Asserted Patents, (*id.*);[5] and (3) several potential prior art witnesses located throughout California. (*Id.*) LG Korea argues that "[b]ecause NDCA has subpoena power over such vital third parties, the availability of such power favors transfer." (*Id.*)[6]

AGIS has identified various third-party witnesses: Eric Armstrong, "a former AGIS, Inc. employee [located in this District], who is now a full-time consultant for AGIS and AGIS, Inc.," Joseph C. McAlexander, AGIS's technical expert, located in nearby Richardson, Texas; and "non-party witnesses from AT&T, Sprint, and Verizon." (Dkt. No. 68 at 5-6, 26.) Mr. Armstrong "is expected to have relevant documents. . . regarding the development of software and marketing," (*id.* 5.) His presence, therefore, weighs against transfer, as he is subject to this Court's subpoena power but lies beyond the subpoena power of the Northern District of California. Mr. McAlexander, however, is a prospective expert and is properly considered as a willing witness. As such, he should not be counted as an unwilling third-party witness under this factor. *See AGIS v. Huawei Device USA Inc., et al.*, No. 2:17-cv-00513, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) ("Access to witnesses for presentation at trial, which is the purpose of the venue transfer analysis, is properly considered under either the second factor, relating to the Court's subpoena power to compel testimony at trial, or the third factor, which relates to the cost of attendance for willing witnesses. These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis.") (internal citation omitted).

---

[5] Because patent prosecuting attorneys are rarely called to trial, especially where as in this case there is no claim of inequitable conduct, the Court gives little weight to the availability of Mr. Burns. *See BMC Software, Inc. v. ServiceNow, Inc.*, No. 2:14-cv-904, Dkt. No. 77 at 9 (E.D. Tex. Apr. 30, 2015).

[6] LG Korea does not name non-party Google witnesses that would be subject to compulsory process, thereby suggesting that LG Korea is treating non-party Google witnesses as willing witnesses. LG Korea, however, has presented no evidence to support this and the Court will not infer willingness to any witness that is not a party witness absent circumstances to the contrary. As such, the Court will consider the availability of compulsory process as to Google witnesses as well.

Based on the foregoing, the Court finds that this factor weighs in favor of transfer. While both parties have identified non-party witnesses in both forums, the majority of non-party witnesses identified are subject to the transferee's subpoena power.

### c) Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech*, 566 F.3d at 1342. "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317).

LG Korea argues that the Northern District of California is more convenient for its witnesses. First, LG Korea employees work in Korea and "travel for its witnesses from Korea to NDCA is more convenient than travel to EDTX." (Dkt. No. 46 at 22.) Second, LG Korea's subsidiaries and non-parties, LGEMU and LGEMR, are responsible for importing and selling the accused smartphones in the United States, and "maintain key operations with respect to the Accused Devices in California, including Santa Clara" and San Diego. (*Id.* at 5–6.) These subsidiaries have relevant witnesses located in the transferee forum or elsewhere in California. (*Id.* at 22.) For example, Cecilia Son and Michael Henson, and their respective teams, are located in California and "have knowledge concerning certification to ensure that the Accused Devices adhere to the Android OS compatibility requirements and quality assurance." (Dkt. No. 77 at 8.) Finally, the Northern District of California is more convenient for third-party Google, who is headquartered in Mountain View and "develops the software actually accused in this matter." (*Id.* 7.)[7]

---

[7] As discussed above, the Court will not speculate on whether non-party Google is a willing witness and as such only considers those witnesses under the second factor since witnesses should not be double-counted. *See AGIS v. Huawei*

AGIS provides that its key witnesses will be Eric Armstrong (Allen, Texas), Malcom Beyer (Jupiter, Florida), David Sietsema (Austin, Texas), Sandel Blackwell (Lenexa, Kansas), Rebecca Clark (Lenexa, Kansas), and Christopher Rice (Redmond, Washington) and that the Eastern District of Texas is "the most convenient" forum for each of them. (Dkt. No. 68 at 4-6,20–22.) AGIS also argues that the "Northern District of California is not more convenient for other key non-party witnesses, such as employees of cellular carriers such as AT&T, Sprint, and Verizon," who have headquarters in Dallas, Texas, Overland, Kansas, and Basking Ridge, New Jersey, respectively. (*Id.* at 23.) However, AGIS has provided no support to suggest that any witnesses from these cellular carriers would be willing witnesses, and therefore appropriately considered under this factor.

While both parties have identified witnesses for whom the competing forums are respectively more convenient, the Courts finds that this factor weighs slightly against transfer. AGIS has named six witnesses for which this District is more convenient (five witnesses that live in or around Texas and one witness that lives in Washington). LG Korea has pointed to witnesses located in Korea and California for which travel to the transferee district would be more convenient. The difference in travel time for LG Korea's employees from Korea to San Francisco compared to Marshall is small and so it is not clear that the Northern District of California is "clearly more" convenient for those witnesses. The Court thus only gives weight to the witnesses located in California—LGEMR and LGEMU employees, Cecilia Son, Michael Henson, and their respective teams. Since AGIS has identified five witnesses that reside in or around Texas and LG

*Device USA Inc., et al.*, No. 2:17-cv-00513, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) ("Access to witnesses for presentation at trial, which is the purpose of the venue transfer analysis, is properly considered under either the second factor, relating to the Court's subpoena power to compel testimony at trial, or the third factor, which relates to the cost of attendance for willing witnesses. These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis.") (internal citation omitted).

Korea has only identified two witnesses and their teams that reside in California, the Court finds that this factor weighs slightly against transfer.

### d) All Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 6:09-cv-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011).

LG Korea is "unaware of any practical problems that might arise if this case were transferred to NDCA," as no docket control order has been entered nor has discovery begun. (Dkt. No. 46 at 24.) AGIS argues that judicial economy disfavors transfer because "[t]his Court is currently presiding over five AGIS Texas Cases, including the instant case, which involve the same plaintiff, the same Patents-in-Suit, the same underlying technology, and substantially identical claims" and thus "[t]ransferring AGIS's claims against LGEKR would 'create duplicative, parallel proceedings.'" (Dkt. No. 68 at 28.)

As this Court has previously noted, "certain cases warn against giving excessive weight" to consideration of copending cases in evaluating judicial economy under § 1404. *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302, 2017 U.S. Dist. LEXIS 155586, at *22 (E.D. Tex. Sept. 22, 2017) (citing *In re Google, Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017). However, "consideration to the existence of copending cases is not foreclosed." *Oyster Optics*, 2017 U.S. Dist. LEXIS 155586, at *22. "Rather, *In re Google* indicates that courts should avoid considering copending cases which currently have, or have had, motions to transfer venue to avoid any 'double count' in according proper weight." *Id.* at *22-23.

In every copending case that AGIS point to, a motion to transfer venue and/or dismiss for improper venue has been filed.  (*See* Dkt No. 46; 2:17-cv-516, Dkt. No. 53; 2:17-cv-514, Dkt. No. 29; 2:17-cv-517, Dkt. No. 38.)  Accordingly, the Court does not consider any of the copending cases in evaluating the judicial economy of retaining the action under this factor.  With no separate basis to support judicial economy or some other practical problem which would result from transfer, AGIS's position is rebuffed and the Court finds that this factor is neutral.

### 2.   Public Interest Factors

#### a)   The Administrative Difficulties Flowing from Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347.  LG Korea argues that both venues "offer comparable times" and so this factor is neutral.  (Dkt. No. 46 at 24.)  AGIS argues that the median time for cases to go to trial is much faster in this District and this factor weighs against transfer.  (Dkt. No. 68 at 29.)  Though the statistics vary slightly by source, this Court has consistently found that median time to trial in this District is several months faster than the Northern District of California.  *See, e.g.*, *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2:13-cv-1112, 2015 WL 1885256, at *10 (E.D. Tex. Apr. 24, 2015); *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-61 (Dkt. No. 38) (E.D. Tex. Apr. 16, 2014) ("The six-month difference in median time, though not substantial, is not negligible.").  Accordingly, the Court finds that this factor weighs slightly against transfer.

#### b)   Local Interest in Having Localized Interests Decided at Home

LG Korea argues that the Northern District of California has a strong interest in this case because it involves Google's apps and most of the relevant witnesses reside in the Bay Area.  (Dkt. No. 46 at 23.) AGIS argues that it is a Texas company and this District "has a significant interest in 'adjudicating a dispute brought by one of its own residents.'"  (Dkt. No. 68 at 28.)  AGIS

correctly points out that non-parties, such as Google, are "not relevant when determining whether localized interests weigh in favor of transfer," (*id.* at 28–29.), and thus absent other evidence, the Northern District of California does not have a strong local interest in this action. *See Astute Tech., LLC v. Learners Digest Int'l LLC*, No. 2:12-cv-689, 2014 U.S. Dist. LEXIS 197246, at *32 (E.D. Tex. Apr. 28, 2014) (Bryson, J., sitting by designation) ("While LDI argues that the Western District of Wisconsin has an interest in determining if technology employed by one of its resident corporations, Sonic Foundry, infringes a valid patent, that interest, affecting only a third party that is a stranger to the lawsuit, is not of sufficient magnitude to be an important consideration in the transfer decision."). Accordingly, the Court finds that this factor weighs against transfer.

### c) Avoidance of Unnecessary Conflicts of Law

HTC submits that this factor is neutral. (Dkt. No. 46 at 24), and AGIS does not argue one way or the other. The Court agrees with LG Korea that "there appears to be no unique conflict of law issues" and finds this factor neutral. (*Id.*)

### d) The Familiarity of the Forum with the Governing Law

LG Korea submits that this factor is neutral. (Dkt. No. 46 at 24.) AGIS argues that this District is "better equipped to handle patent cases because, among other things, it 'has adopted patent rules designed to ensure that patent cases proceed . . . expeditiously.'" (Dkt. No. 68 at 30.) AGIS's argument concerns judicial economy, and not familiarity with patent law, and is more appropriate under the first public interest factor. Either way, the Court agrees with LG Korea that this factor is neutral.

Having considered the relevant factors, the Court finds that LG Korea has not met its burden and shown that the Northern District of California is "clearly more convenient," *Volkswagen II*, 545 F.3d.[8]

## IV. CONCLUSION

For the reasons stated above, LG Korea's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue to the Northern District of California is **DENIED**.

**So ORDERED and SIGNED this 28th day of September, 2018.**


RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[8]The Court notes that the facts of this case are distinguishable from those present in the recent decision: *In Re HP, Inc.*, 2018-149, Dkt. No. 16 (Fed. Cir. Sept. 25, 2018). In that case, the Federal Circuit granted mandamus, finding that the district court "refus[ed] to transfer despite weighing several factors in favor of transfer and no factor in favor of keeping the case." *Id.* at 4. Unlike *HP*, however, this Court has found several factors that weigh *against* transfer. Moreover, the defendant in *HP* was a domestic corporation headquartered in the transferee district and had several employees living in the transferee district. LG Korea, in contrast, is a foreign corporation headquartered in Korea with no employees residing in the Northern District of California. In the *HP* decision, the Federal Circuit declined to treat the "clearly more convenient" standard as what it characterized as "far more convenient." While this provides some level of guidance to district courts, there is no clear guidance as to precisely where on the spectrum of convenience the "clearly more convenient" standard falls. It seems logical that if it should not be "far more convenient" than it also should not be "merely more convenient," especially if real and meaningful weight is to be afforded to a plaintiff's choice of venue. Until more precise guidance is provided, this Court continues to give "clearly more convenient" its plain and ordinary meaning and, by analogy, treats it on the order of *clear and convincing* evidence as distinguished from and yet existing in between a *preponderance* and *beyond a reasonable doubt*.