**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT, LLC | § § § | |
| v. | § § | CASE NO. 2:17-CV-513-JRG |
| HUAWEI DEVICE USA INC., et al. | § § § | |

## CLAIM CONSTRUCTION
## MEMORANDUM AND ORDER

Before the Court is the Opening Claim Construction Brief (Dkt. No. 165) filed by Plaintiff

AGIS Software Development, LLC ("Plaintiff" or "AGIS"). Also before the Court are Defendants

Huawei Device USA Inc., Huawei Device Co., Ltd., Huawei Device (Dongguan) Co., Ltd.

("Huawei"), HTC Corporation ("HTC"), LG Electronics Inc. ("LG"), Apple Inc. ("Apple"), and

ZTE (USA) Inc., and ZTE (TX), Inc.'s ("ZTE's") (collectively, "Defendants'") Responsive Claim

Construction Brief (Dkt. No. 175) and Plaintiff's reply (Dkt. No. 186).[1,2]

---

[1] On August 22, 2018, the Court consolidated the following cases, *Agis Software Development LLC v. LG Electronics, Inc.*, 2:17-cv-515 (the "LG case") and *Agis Software Development LLC v. ZTE Corporation et al.*, 2:17-cv-517 (the "ZTE case"), under a new lead case, *Agis Software Development LLC v. HTC Corporation*, 2:17-cv-514 (the "HTC case"). (2:17-cv-514, Dkt. No. 57.) The Court set a Markman Hearing for the HTC case on December 17, 2018. (*Id.*) In addition, on September 28, 2018, the Court unconsolidated and transferred the ZTE case to the Northern District of California. (2:17-cv-514, Dkt. No. 78); (2:17-cv-513, Dkt. No. 203); (2:17-cv-517, Dkt. No. 85.)
[2] All citations to docket entries refer to entries in Case No. 2:17-cv-513.

## Table of Contents

I. BACKGROUND .................................................................................................. 3

II. LEGAL PRINCIPLES ...................................................................................... 4

III. AGREED TERMS ............................................................................................ 8

IV. DISPUTED TERMS .......................................................................................... 9

    A. "a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations" ........................................................ 9

    B. "means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, . . ." ..................................................................................... 11

    C. "[means for . . .] requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone" ...................... 18

    D. "means for requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display" ................. 20

    E. "means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert" ........................ 23

    F. "means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert" .................. 25

    G. "means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded" ........................................................ 28

    H. Claim 54 of the '838 Patent, Claims 24, 29, and 31 of the '251 Patent, Claims 28, 32, 33, 34, and 36 of the '055 Patent, and Claim 68 of the '829 Patent ................................... 30

    I. "a forced message alert software application program" ...................................................... 36

    J. "manual response" ............................................................................................................ 39

    K. "the repeating voice alert" ............................................................................................... 42

    L. "group" ............................................................................................................................ 44

    M. "receiving a message from a second device" .................................................................. 49

    N. "an identifier corresponding to the group" ...................................................................... 53

    O. "database of entities" ........................................................................................................ 54

    P. "Short Message Service (SMS) messages" ...................................................................... 56

    Q. "the other symbol" ........................................................................................................... 57

    R. "user selection of the sub-net" ......................................................................................... 57

V. CONCLUSION ................................................................................................ 59

# I. BACKGROUND

Plaintiff brings suit alleging infringement of United States Patents Nos. 8,213,970 ("the '970 Patent"), 9,408,055 ("the '055 Patent"), 9,445,251 ("the '251 Patent"), 9,467,838 ("the '838 Patent"), and 9,749,829 ("the '829 Patent") (collectively, "the patents-in-suit"). (*See* Dkt. No. 165, Exs. A–E.)

The '970 Patent, titled "Method of Utilizing Forced Alerts for Interactive Remote Communications," issued on July 3, 2012, and bears an earliest priority date of September 21, 2004. The Abstract of the '970 Patent states:

> The system and method having a specialized software application on a personal computer or a PDA/cell phone that that [*sic*] enables a participant to force an automatic acknowledgement and a manual response to a text or voice message from other participants within the same network. Each participant's PDA/cell phone includes a force message alert software application program for both creating and processing these forced message alerts. The system and method enabled by the force message alert software application program provides the ability to (a) allow an operator to create and transmit a forced message alert from a sender PDA/cell phone to one or more recipient PCs and PDA/cell phones within the communication network; (b) automatically transmit an acknowledgement of receipt to the sender PDA cell phone upon the receipt of the forced message alert; (c) periodically resend the message to the recipient PCs and PDA/cell phones that have not sent an acknowledgement; (d) provide an indication of which recipient PCs and PDA/cell phones have acknowledged the forced message alert; (e) provide a manual response list on the display of the recipient PC and PDA/cell phone's display that can only be cleared by manually transmitting a response; and (f) provide an indication on the sender PDA/cell phone of the status and content the [*sic*] manual responses.

The '838 Patent, titled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks," issued on October 11, 2016, and bears an earliest priority date of September 21, 2004. The Abstract of the '838 Patent states:

> A method and system includes the ability for individuals to set up an ad hoc digital and voice network easily and rapidly to allow users to coordinate their activities by eliminating the need for pre-entry of data into a web or identifying others by name, phone numbers or email. This method is especially useful for police, fire fighters, military, first responders or other emergency situations for coordinating different organizations at the scene of a disaster to elevate conventional communication

problems either up and down the chain of command or cross communication between different emergency units. The method and system provides that the users are only required to enter a specific Server IP address and an ad hoc event name, a password and perhaps the name of the particular unit.

The '055 Patent, the '251 Patent, and the '829 Patent resulted from continuations of the '838 Patent. Plaintiff asserts the '829 Patent only against Apple. (*See* Dkt. No. 162, at 2 n.1.)

Plaintiff has noted that the priority date for the patents-in-suit may be in dispute. (*See* Dkt. No. 165, at 3 n.2.) The parties have not shown that any such dispute would have an impact on how a person of ordinary skill in the art would understand the patents-in-suit.

## II. LEGAL PRINCIPLES

Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).

"In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must

contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in

the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314–17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the

United States Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319–24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323–25. Rather, *Phillips* held that a court must attach the appropriate

weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III. AGREED TERMS

In their July 23, 2018 Updated Joint Claim Construction and Prehearing Statement, the parties stated that "the parties have been unable to agree on the constructions of any claim terms at issue in this case." (Dkt. No. 162, at 2.)

## IV. DISPUTED TERMS

### A. "a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>　"facilitating the transmission of electronic files between said PDA/cell phones in different locations"<br><br>Structure:<br>　Communication network server, '970 Patent at 2:36–43; 4:1–36.[3] | Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>　"facilitating the transmission of electronic files between said PDA/cell phones in different locations"<br><br>Indefinite under 35 U.S.C. § 112(b)<br><br>Structure:<br>　No sufficient corresponding structure disclosed.  To the extent any structure is disclosed, it is a general purpose PDA or cell phone for implementing an undisclosed algorithm.  The disclosures set forth at '970 Patent at 1:39–43; 2:36–43; 4:1–36; Figs. 2, 3A, 3B, and 4.  '970 File History, Application 12/324,122, Claims, 2008-11-26 do not provide an algorithm that corresponds to the claimed function. |

(Dkt. No. 162, App'x 1, at 1; Dkt. No. 165, at 4–5.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 162, App'x 1, at 1.)

Plaintiff has argued that to the extent that Defendants are arguing that the disclosure fails to satisfy the algorithm requirement for computer-implemented means-plus-function terms, no algorithm is necessary where the functions can be accomplished by a general purpose computer without special programming.  (Dkt. No. 165, at 7.)  Plaintiff has also submitted that Defendants

---

[3] Plaintiff previously proposed: "Communication network server, '970 Patent at 1:39–43; 2:36–43; 4:1–36; Figs. 2, 3A, 3B, and 4."  (Dkt. No. 165, at 4–5.)

Apple, Huawei, and LG have identified corresponding structure in *inter partes* review ("IPR") petitions. (*Id.*, at 5.)

Defendants respond that "Defendants will agree to AGIS's proposed constructions (as revised and reflected in the parties' July 23, 2018 Joint Claim Construction Chart and Prehearing Statement)" for this term. (Dkt. No. 175, at 15 n.10.) Plaintiff's reply brief acknowledges this agreement. (*See* Dkt. No. 186, at 1 n.1.) This agreement also appears in the parties' August 27, 2018 Joint Claim Construction Chart. (*See* Dkt. No. 194, App'x A, at 1–2.) At the September 13, 2018 hearing, the parties clarified that they have agreed that the corresponding structure is "communications network server."

The Court therefore finds, as now agreed-upon by the parties, that **"a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations"** is a means-plus-function term, the claimed function is **"facilitating the transmission of electronic files between said PDA/cell phones in different locations,"** and the corresponding structure is **"communications network server; and equivalents thereof."**

**B. "means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, . . ."**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>    "attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone"<br><br>Structure:<br>    Algorithm set forth in Fig 2, 3A, 3B[,] 7:8–63. | Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>    "attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses"<br><br>Indefinite under 35 U.S.C. § 112(b)<br><br>Structure:<br>    No sufficient corresponding structure disclosed.  To the extent any structure is disclosed, it is a general purpose PDA or cell phone for implementing an undisclosed algorithm.  The disclosures set forth at '970 Patent at Fig 2, 3A, 3B[,] 7:8–63.  '970 File History, Application 12/324,122, Claims, 2008-11-26 do not provide an algorithm that corresponds to the claimed function. |

(Dkt. No. 162, App'x 1, at 3; Dkt. No. 165, at 7; Dkt. No. 186, at 1; Dkt. No. 194, App'x A, at 2–3.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 162, App'x 1, at 3.)

(1)  The Parties' Positions

Plaintiff argues that Defendants' proposal of "said forced message alert software packet containing a list of possible required responses" "does not describe the function of the 'means for attaching,' but merely identifies a structural requirement for the packet which is attached."  (Dkt. No. 165, at 8.)  As to corresponding structure, Plaintiff submits that Figure 3A "details the

operation of attaching a forced message alert packet to a voice or text message." (*Id.*) Plaintiff also submits that Defendants Apple, Huawei, and LG have identified corresponding structure in IPR petitions. (*Id.*, at 7.)

Defendants respond that their proposal for the claimed function is necessary and has an impact on whether the specification discloses sufficient corresponding structure. (Dkt. No. 175, at 16.)

Plaintiff replies that "the term 'said forced message alert software packet containing a list of possible required responses' is separated from the 'means for attaching' by a comma, and is thus a different structural limitation." (Dkt. No. 186, at 2.) Plaintiff also argues that, "[r]egarding the sufficiency of the algorithm, AGIS and its expert assert that the flowchart in Figure 3A *is the algorithm*." (*Id.*, at 2; *see id.*, at 3.)

(2) Analysis

Title 35 U.S.C. § 112, ¶ 6 provides: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

The parties disagree about whether the claimed function includes "said forced message alert software packet containing a list of possible required responses."

Claim 1 of the '970 Patent recites (emphasis added):

1. A communication system for transmitting, receiving, confirming receipt, and responding to an electronic message, comprising:
   a predetermined network of participants, wherein each participant has a similarly equipped PDA/cell phone that includes a CPU and a touch screen display a CPU [*sic*] and memory;
   a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations;

a sender PDA/cell phone and at least one recipient PDA/cell phone for each electronic message;

a forced message alert software application program including a list of required possible responses to be selected by a participant recipient of a forced message response loaded on each participating PDA/cell phone;

*means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone;*

means for requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display;

means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert;

means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert; and

means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded.

This "means for attaching . . ." limitation should be read as a whole, in particular as to the limitations of "said forced message alert software packet containing . . . and requiring . . . ." Plaintiff has failed to persuasively support its contention that this means-plus-function term ends with the comma. (Dkt. No. 186, at 2 & 4.) Instead, the entire limitation is limiting as part of this means-plus-function term. *See Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003) ("In identifying the function of a means-plus-function claim, a claimed function may not be improperly narrowed or limited beyond the scope of the claim language. Conversely, neither may the function be improperly broadened by ignoring the clear limitations contained in the claim language.") (citing *Micro Chem. Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999)).

As to the corresponding structure, the parties agree that an algorithm is required. *See WMS Gaming Inc. v. Int'l Gaming Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999) ("In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm."); *see also Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1384–85 (Fed. Cir. 2009) (rejecting argument that "a person skilled in the art could readily fashion a computer-based means for performing the [claimed] function").

Plaintiff has cited Figure 3A of the '970 Patent as setting forth an algorithm for the claimed function. Figure 3A of the '970 Patent is reproduced here:



*Fig. 3A*

Plaintiff has not shown, however, that any disclosure in Figure 3A is clearly linked to the claimed function of attaching a forced message alert that contains a list of possible required responses and that also requires transmission of an automatic acknowledgement. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015) ("Structure disclosed in the specification qualifies as 'corresponding structure' if the intrinsic evidence *clearly links or associates* that structure to the function recited in the claim.") (citations omitted; emphasis added).

Nonetheless, the written description discloses:

Referring now to FIG. 2, in order to set up a communication network that utilizes the forced message alert system, the forced message alert software application program must be installed on a plurality of PCs and/or PDA/cell phones. The application will provide for a forced alert message that can be designated for transmission according to several criteria: a.) A single PC and/or PDA/cell phone, b.) The list of users currently participating in the network, and c.) A user or administrator predefined list of network participants.

A required response list which will be either preinstalled in the phone application software or sent with the forced message alert will be presented to the user operator upon receipt of the forced message. When the forced text or voice alert is received, the user operator is presented with the required response list. In order to clear the forced text message alert from the user operator's PC or PDA/cell phone display, the user operator is required to select a reply from this list. If the alert is a voice message, the message keeps repeating at a defined rate until the user operator selects from the required response list. A military default response list would typically consist of choices such as, "will comply," "will not comply," and "have complied." However, depending on the nature of the industry in which the users in the communication network are in, this default response list could vary significantly.

* * *

Referring now to FIG. 3A and FIG. 3B, *the process of sending a forced message alert from a PC or PDA/cell phone* begins with a sender selecting the forced message alert software application program on a sender PC or PDA/cell phone. *The sender can then select by said sender PC or PDA/cell phone to type a text message or record a voice message or select the text alert or voice alert from a list. . . . The response list from which the message receiver must select can either be included in the forced alert message or be preloaded in each phone. The forced alert message is then transmitted via TCP/IP or other digital transmission means* to every PC or PDA/cell phone designated to receive the forced message alert either directly or

- 15 -

through a server whose function is to retransmit the messages to the correct users in the communications network.

After the forced message alert is transmitted, the sender PC or PDA/cell phone monitors for and receives electronic transmissions with acknowledgments of receipt from the PCs or PDA/cell phones that have received the forced message alert. . . .

* * *

Referring now to FIG. 4, the process of receiving, acknowledging and responding to a forced message alert from the sender PC or PDA/cell phone begins when an electronic transmission is received by a recipient PC or PDA/cell phone. . . . *Immediately following the detection of the forced message alert, the forced message alert software application program on the recipient PC or PDA/cell phone prepares and electronically transmits an automatic acknowledgement of receipt to the sender PC or PDA/cell phone.* . . .

'970 Patent at 7:8–8:36 (emphasis added).

On balance, this amounts to sufficient disclosure of an algorithm for performing the claimed function. *See Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) ("The specification can express the algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.") (citations and internal quotation marks omitted). Defendants' arguments as to lack of disclosure regarding response list creation are unavailing because neither the claims nor the specification attribute any novelty to the manner in which such text might be entered. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011) ("the amount of detail that must be included in the specification depends on the subject matter that is described and its role in the invention as a whole, in view of the existing knowledge in the field of the invention"); *see also Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 748 F.3d 1134, 1141 (Fed. Cir. 2014) ("We must also remember that a challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the

specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function.") (citation and internal quotation marks omitted); *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337 (Fed. Cir. 2008) ("It is certainly true that the sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to impart.").  The opinions of Defendants' expert to the contrary are unpersuasive.  (*See* Dkt. No. 175-23, Aug. 13, 2018 Bartone Decl., at ¶¶ 33–58.)[4]

The Court therefore hereby finds that **"means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone"** is a means-plus-function term, the claimed function is **"attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone,"** and the

---

[4] Plaintiff has also cited *Inter Partes* Review proceedings, but this evidence does not significantly affect the Court's analysis of this disputed term.  (*See* Dkt. No. 165, at 7.)

corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:8–8:36; and equivalents thereof."**

**C. "[means for . . .] requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain Meaning - not Governed by 35 U.S.C. § 112(6)<br><br>In the alternative, AGIS identifies the following structure/intrinsic support corresponding to Defendants' proposed function:<br>    '970 Patent, Fig 4; 2:7–35; 8:16–62. | Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>    "requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone"<br><br>Indefinite under 35 U.S.C. § 112(b)<br><br>Structure:<br>    No sufficient corresponding structure disclosed.  To the extent any structure is disclosed, it is a general purpose PDA or cell phone for implementing an undisclosed algorithm.  The disclosures set forth at 970 Patent, Fig 4; 2:7–35; 8:16–62.  '970 File History, Application 12/324,122, Claims, 2008-11-26 do not provide an algorithm that corresponds to the claimed function. |

(Dkt. No. 162, App'x 1, at 4–5; Dkt. No. 165, at 9; Dkt. No. 186, at 4; Dkt. No. 194, App'x A, at 3–4.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 162, App'x 1, at 4–5.)

(1)  The Parties' Positions

Plaintiff argues that "the claim recites known software structures, specifically a 'software packet,' that is known in the art as the name for a class of structure that includes packets for packetized communications and, thus, does not invoke 35 U.S.C. § 112(6)."  (Dkt. No. 165, at 9.)

Defendants respond that this limitation is governed by 35 U.S.C. § 112(6), and the purported algorithm disclosure cited by Plaintiff "amounts to nothing more than a restatement of the claimed function, which is insufficient, because it says nothing about *how* to perform the claimed function." (Dkt. No. 175, at 19.)

Plaintiff replies: "[T]here is a comma before 'said forced message alert software packet,' which sets that phrase, and everything after it, apart from the functional 'means' language. There are no additional commas in this claim phrase. Therefore, English grammar dictates that it is the '*packet* containing . . . and requiring.'" (Dkt. No. 186, at 4.) Plaintiff also submits that "packets are a known structure." (*Id.*)

<u>(2) Analysis</u>

The parties have presented this dispute as distinct from the above-addressed "means for attaching . . ." limitation. Claim 1 of the '970 Patent recites, in relevant part (emphasis added):

> 1. A communication system for transmitting, receiving, confirming receipt, and responding to an electronic message, comprising:
>> . . .
>> means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, *said forced message alert software packet containing* a list of possible required responses *and requiring* the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone; . . . .

The parties appear to be reading Claim 1 of the '970 Patent as if it recited "and *for* requiring" instead of merely "and requiring." Defendants have argued that this latter part of the limitation is a separate term because it requires the recipient's device to do something. On balance, the parties have not demonstrated how the claim purportedly recites this "requiring" language as a distinct limitation. The better reading is that the "and requiring . . ." language is recited as an additional limitation on "said forced message alert software packet" (in addition to the "containing"

- 19 -

. . ." language).  Thus, as discussed above, the claimed function for the "means for attaching . . ." includes the "requiring . . ." language that the parties have presented here.

The Court therefore does not separately construe the "means for . . . requiring . . ." but instead hereby refers the parties to the construction of the full "means for attaching . . ." term as addressed above.

**D. "means for requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>   "requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display"<br><br>Structure:<br>   Algorithm set forth in Figure 4 and 8:37–57 | Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>   "requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display"<br><br>Indefinite under 35 U.S.C. § 112(b)<br><br>Structure:<br>   No sufficient corresponding structure disclosed.  To the extent any structure is disclosed, it is a general purpose PDA or cell phone for implementing an undisclosed algorithm.  The disclosures set forth at '970 Patent at Figure 4 and 8:16–57; 11:1–21.  '970 File History, Application 12/324,122, Claims, 2008-11-26 do not provide an algorithm that corresponds to the claimed function. |

(Dkt. No. 162, App'x 1, at 6–7; Dkt. No. 165, at 10; Dkt. No. 186, at 5; Dkt. No. 194, App'x A, at 4–5.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 162, App'x 1, at 6.)

Plaintiff argues that the corresponding structure is "the algorithm detailed in the last three boxes of Figure 4, which details the operation of requiring a manual response in order to clear the recipient's screen."  (Dkt. No. 165, at 10.)  Plaintiff also submits that Defendants Apple, Huawei, and LG have identified corresponding structure in IPR petitions.  (*Id.*)

Defendants respond that there is no corresponding structure because "the specification is silent on how an algorithm *requires* a manual response."  (Dkt. No. 175, at 19–20.)

Plaintiff replies: "AGIS has explained how this 'means for requiring' corresponds to the algorithm described in the specification including the steps of, e.g., (1) taking control of the device's screen, (2) displaying text or playing a voice recording and displaying a list of responses, (3) receiving input by the user of a response, (4) transmitting the response, (5) releasing control of the device, and (6) clearing the display."  (Dkt. No. 185, at 5–6.)

(2)  Analysis

The specification discloses:

> After the acknowledgement of receipt is transmitted, the forced voice alert software application program effectively takes control of the recipient PC or PDA/cell phone.  If a text message was received, *the forced voice alert software application program causes the text message and the response list to be shown on the display of the recipient PC or PDA/cell phone until a manual response is selected from the response list.  Upon selection of the desired response, the forced alert text data is cleared from the recipient PC or PDA/cell phone display.*  If a voice message was received, the forced voice alert software application program causes the voice message to be periodically repeated using the speakers of the recipient PC or PDA/cell phone while the response list is shown on the display.  *This voice message cannot be stopped from repeating until one of the entries on the response list is selected.*

> Once a response is selected or recorded and transmitted to the sender PC or PDA/cell phone, the forced message alert software application program releases effective control of the recipient PC or PDA/cell phone, clears the display, and stops repeating the voice message and transmits the response to the force [*sic*] alert sender.

'970 Patent at 8:37–56 (emphasis added).

On balance, this amounts to sufficient disclosure of an algorithm for performing the claimed function. *See Noah*, 675 F.3d at 1312 ("The specification can express the algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.") (citations and internal quotation marks omitted); *see also Typhoon Touch*, 659 F.3d at 1385 ("the amount of detail that must be included in the specification depends on the subject matter that is described and its role in the invention as a whole, in view of the existing knowledge in the field of the invention"); *Chi. Bd. Options Exch.*, 748 F.3d at 1141; *Aristocrat*, 521 F.3d at 1337. The opinions of Defendants' expert to the contrary are unpersuasive. (*See* Dkt. No. 175-23, Aug. 13, 2018 Bartone Decl., at ¶¶ 59–68.)[5]

The Court therefore hereby finds that **"means for requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display"** is a means-plus-function term, the claimed function is **"requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display,"** and the corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:37–57; and equivalents thereof."**

---

[5] Plaintiff has also cited *Inter Partes* Review proceedings, but this evidence does not significantly affect the Court's analysis of this disputed term. (*See* Dkt. No. 165, at 10.)

**E. "means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>    "receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert"<br><br>Structure:<br>    PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem.  *See, e.g.,* '970 Patent at col. 4:12–46. | Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>    "receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert"<br><br>Indefinite under 35 U.S.C. § 112(b)<br><br>Structure:<br>    No sufficient corresponding structure disclosed.  To the extent any structure is disclosed, it is a general purpose PDA or cell phone for implementing an undisclosed algorithm.  The disclosures set forth at '970 Patent at col. [*sic*] Figures 2, 3A, 3B, 6:38–7:4; 7:17–8:15 do not provide an algorithm that corresponds to the claimed function. |

(Dkt. No. 162, App'x 1, at 8–9; Dkt. No. 165, at 11.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 162, App'x 1, at 8–9.)

Plaintiff has argued that no algorithm is required because "the functions of 'receiving' and 'displaying' are clearly linked to the hardware components described in the specification."  (Dkt. No. 165, at 12.)  Plaintiff has also submitted that Defendants Apple, Huawei, and LG have identified corresponding structure in IPR petitions.  (*Id.*)

Defendants respond that "Defendants will agree to AGIS's proposed constructions (as revised and reflected in the parties' July 23, 2018 Joint Claim Construction Chart and Prehearing Statement)" for this term.  (Dkt. No. 175, at 15 n.10.)  Plaintiff's reply brief acknowledges this

agreement. (*See* Dkt. No. 186, at 1 n.1.) This agreement also appears in the parties' August 27, 2018 Joint Claim Construction Chart. (*See* Dkt. No. 194, App'x A, at 5–6.) At the September 13, 2018 hearing, the parties clarified their agreement as to corresponding structure as "PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem."

The Court therefore hereby finds, as now agreed-upon by the parties, that **"means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert"** is a means-plus-function term, the claimed function is **"receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert,"** and the corresponding structure is **"PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem; and equivalents thereof."**

**F. "means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>    "periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert"<br><br>Structure:<br>    PDA/cell phone hardware including WiFi connectivity or a cellular modem.  '970 Patent at col. 4:12–46 | Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>    "periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert"<br><br>Indefinite under 35 U.S.C. § 112(b)<br><br>Structure:<br>    No sufficient corresponding structure disclosed.  To the extent any structure is disclosed, it is a general purpose PDA or cell phone for implementing an undisclosed algorithm.  The disclosures set forth at '970 Patent at Figures 2, 3A, 3B, 6:38–7:4; 7:17–8:15 do not provide an algorithm that corresponds to the claimed function. |

(Dkt. No. 162, App'x 1, at 10; Dkt. No. 165, at 13; Dkt. No. 186, at 6; Dkt. No. 194, App'x A, at 6–7.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 162, App'x 1, at 10.)

(1)  The Parties' Positions

Plaintiff argues that no algorithm is required because "this function can be achieved with the hardware that is specified in the specification."  (Dkt. No. 165, at 14.)  Plaintiff also submits that Defendants Apple, Huawei, and LG have identified corresponding structure in IPR petitions.  (*Id.*, at 13.)

Defendants respond that "the specification does not disclose any structure—in the form of an algorithm or otherwise—to resend a forced message alert 'periodically' or how to determine

which recipient PDA/cell phones 'have not automatically acknowledged the forced message alert.'" (Dkt. No. 175, at 20–21.)

Plaintiff replies that "this claim limitation does not require an algorithm because the function is carried out by known hardware and/or known hardware implementing known named software." (Dkt. No. 186, at 6–7.)

(2) Analysis

Plaintiff has cited disclosures in the specification regarding the TCP/IP protocol:

A plurality of PCs and PDA/cell phones each having forced alert software installed providing a communication network of PCs and PDA/cell phones with the ability to: a) allow an operator to create and transmit (*via TCP/IP or another digital transmission means*) a forced voice alert, wherein said forced voice alert is comprised of a text or voice message file and a forced alert software packet, from a sender PC or PDA/cell phone to one or more recipient PCs and PDA/cell phones within said communication network; (b) automatically transmit an acknowledgement of receipt from said recipient PCs and PDA/cell phones to the sender PCs or PDA/cell phones upon receipt of the forced message alert by the recipient PCs and PDA/cell phones; (c) periodically resend the message to the recipient PCs and PDA/cell phones that have not sent an acknowledgement until an acknowledgement is received from every recipient PC and PDA/cell phone; . . .

'970 Patent at 2:9–23; *see id.* at 7:58–60 ("The forced alert message is then transmitted via TCP/IP or other digital transmission means . . . .").

Plaintiff has argued that the TCP/IP protocol (as implemented by particular hardware) is a specific structure and, therefore, no algorithm is required. (*See* Dkt. No. 165, at 14.) In particular, Plaintiff has argued that a person of ordinary skill would understand that "periodically resending" is a function performed by TCP/IP. Plaintiff's argument is unpersuasive. Plaintiff has failed to demonstrate that the TCP/IP protocol is linked to performing the full claimed function, particularly as to the aspects of a "forced message alert" and "recipient PDA/cell phones." The opinions of Plaintiff's expert to the contrary are unpersuasive. (*See* Dkt. No. 165-1, July 25, 2018 Carbonell Decl., at ¶¶ 59–64.)

As to disclosure of corresponding structure in terms of an algorithm, the specification discloses as follows:

> The forced alert message is then transmitted via TCP/IP or other digital transmission means to every PC or PDA/cell phone designated to receive the forced message alert either directly or through a server whose function is to retransmit the messages to the correct users in the communications network.
>
> After the forced message alert is transmitted, the sender PC or PDA/cell phone monitors for and receives electronic transmissions with acknowledgments of receipt from the PCs or PDA/cell phones that have received the forced message alert. Then, the sender PC or PDA/cell phone provides an indication of which of the PC or PDA/cell phone that the forced message alert was sent to have acknowledged receipt and which of the PC or PDA/cell phone that the forced message alert was sent to have not acknowledged receipt on its display. The sender PC or PDA/cell phone will then *periodically resend the forced message alert to the PC or PDA/cell phone that have not acknowledged receipt.*

*Id.* at 7:58–8:8 (emphasis added).

On balance, this amounts to sufficient disclosure of an algorithm for performing the claimed function. *See Noah*, 675 F.3d at 1312 ("The specification can express the algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.") (citations and internal quotation marks omitted). Defendants' argument that the disclosure lacks sufficient detail is unavailing. *See Typhoon Touch*, 659 F.3d at 1385 ("the amount of detail that must be included in the specification depends on the subject matter that is described and its role in the invention as a whole, in view of the existing knowledge in the field of the invention"). The opinions of Defendants' expert to the contrary are unpersuasive. (*See* Dkt. No. 175-23, Aug. 13, 2018 Bartone Decl., at ¶¶ 69–76.)[6]

The Court therefore hereby finds that **"means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged**

_____

[6] Plaintiff has also cited *Inter Partes* Review proceedings, but this evidence does not significantly affect the Court's analysis of this disputed term. (*See* Dkt. No. 165, at 13.)

the forced message alert" is a means-plus-function term, the claimed function is **"periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert,"** and the corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:64–8:8; and equivalents thereof."**

**G. "means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>    "receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded"<br><br>Structure:<br>    PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem. *See, e.g.,* '970 Patent at col. 4:12-46. | Governed by 35 U.S.C. § 112(6)<br><br>Function:<br>    "receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert" [*sic*]<br><br>Indefinite under 35 U.S.C. § 112(b)<br><br>Structure:<br>    No sufficient corresponding structure disclosed.  To the extent any structure is disclosed, it is a general purpose PDA or cell phone for implementing an undisclosed algorithm.  The disclosures set forth at '970 Patent at Figures 3A, 3B, 6:38–7:4; 7:17–8:15 do not provide an algorithm that corresponds to the claimed function. |

(Dkt. No. 162, App'x 1, at 12; Dkt. No. 165, at 14–15.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 162, App'x 1, at 12.)

Plaintiff has argued that "[t]he function set forth in the claim is clear and Defendants' surplusage is not supported and unduly limiting."  (Dkt. No. 165, at 15.)  As to corresponding

structure, Plaintiff has argued that the same structure is applicable here as for the other "means for receiving and displaying . . ." limitation addressed above. (*Id.*) Plaintiff has urged that "[t]here is no additional processing or algorithmic steps required by this limitation, and relying on the same corresponding structure to satisfy two means-plus-function elements is permissible." (*Id.*) Plaintiff has also submitted that Defendants Apple, Huawei, and LG have identified corresponding structure in IPR petitions. (*Id.*)

Defendants respond that "Defendants will agree to AGIS's proposed constructions (as revised and reflected in the parties' July 23, 2018 Joint Claim Construction Chart and Prehearing Statement)" for this term. (Dkt. No. 175, at 15 n.10.) Plaintiff's reply brief acknowledges this agreement. (*See* Dkt. No. 186, at 1 n.1.) This agreement also appears in the parties' August 27, 2018 Joint Claim Construction Chart. (*See* Dkt. No. 194, App'x A, at 5–6.) At the September 13, 2018 hearing, the parties clarified their agreement as to corresponding structure as "PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem."

The Court therefore hereby finds, as now agreed-upon by the parties, that **"means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded"** is a means-plus-function term, the claimed function is **"receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded,"** and the corresponding structure is **"PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem; and equivalents thereof."**

**H. Claim 54 of the '838 Patent, Claims 24, 29, and 31 of the '251 Patent, Claims 28, 32, 33, 34, and 36 of the '055 Patent, and Claim 68 of the '829 Patent**

Defendants submit that "[t]en of the asserted claims recite either a 'device' or 'device programmed to perform operations' followed by a list of functions," which Defendants argue are means-plus-function terms governed by 35 U.S.C. § 112, ¶ 6.  (Dkt. No. 175, at 2.)  Defendants argue that these terms lack corresponding structure in the specification and are therefore indefinite. (*Id.*, at 8; *see* Dkt. No. 194, App'x A, at 10–45; *see also* Dkt. No. 162, App'x 1, at 13–107.)

(1)  The Parties' Positions

Plaintiff argues that "[w]hen read as a whole, each of these claims recites sufficient structure to set forth algorithmic steps to perform a function."  (Dkt. No. 165, at 17.)  Plaintiff also submits that "Defendants Apple, LG, and Huawei have filed a total of 12 *inter partes* review petitions challenging the claims of the '251, '055, and '838 Patents, but in none of these petitions do they apply 35 U.S.C. §112(6) to any of the terms of the '251, '055, or '838 Patents." (*Id.*, at 16 (footnotes omitted).)  Alternatively, Plaintiff argues that "each of these alleged functions can be supported by a general purpose computer."  (*Id.*, at 19.)  As to the terms "based on the user input, adding the user-specified symbol to the interactive display" and "establishing a conference among the one or more second devices of the sub-net for sharing voice, text, photographs, or video communications," however, Plaintiff submits that "the specification discloses sufficient corresponding structure."  (*Id.*, at 20.)

Defendants respond that "[t]he 'device' claims are functional claims subject to § 112(f)." (Dkt. No. 175, at 2.)  Defendants argue that because these claims recite computer-implemented functionality, the corresponding structure for each term must include an algorithm.  (*See id.*, at 8–9.)  To the extent that Plaintiff is relying on the claim language as setting forth an algorithm, Defendants argue that "AGIS cannot rebrand these functions as an algorithm merely by

substituting the nonce word 'device.'" (*Id.*, at 5.) Defendants also argue that the so-called "*Katz*" exception[7] does not apply because the claimed functions could not be performed by any general-purpose processor without special programming. (*Id.*, at 9.) Defendants further urge that "[t]he specification simply describes the computer-implemented functions in general terms with no indication of *how* to program a computer to perform those functions." (*Id.*, at 9–10.)

Plaintiff replies that 35 U.S.C. § 112, ¶ 6 does not apply because "each claim is drawn to a 'device' that is programmed to perform a specific algorithm detailed in the claim itself." (Dkt. No. 186, at 8.) Plaintiff also again emphasizes the positions presented by Defendants in IPR proceedings, and Plaintiff argues that "Defendants offer no support for the premise that differing claim construction standards affect the analysis of whether Section 112(6) applies." (*Id.*, at 7)

(2) Analysis

Here, the claims at issue do not use the word "means," so there arises a rebuttable presumption that 35 U.S.C. § 112, ¶ 6 does not apply. *Williamson*, 792 F.3d at 1348.

"When a claim term lacks the word 'means,' the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* at 1349 (citation and internal quotation marks omitted).

Defendants argue that this presumption is rebutted because the terms at issue here appear in result-oriented limitations that use "nonce" terms, such as "device," that lack structural meaning. *Id.* at 1350 ("Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words that

---

[7] *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011) ("Absent a possible narrower construction of the terms 'processing,' 'receiving,' and 'storing,' . . . those functions can be achieved by any general purpose computer without special programming. As such, it was not necessary to disclose more structure than the general purpose processor that performs those functions.") (footnote omitted).

reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they typically do not connote sufficiently definite structure and therefore may invoke § 112, para. 6.") (citation and internal quotation marks omitted).

If the presumption were rebutted and 35 U.S.C. § 112, ¶ 6 were applied, the parties appear to agree that the algorithm requirement would apply: "In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *WMS Gaming*, 184 F.3d at 1349.

Here, however, the *claims themselves* set forth algorithms (and Defendants have not disputed that these claims refer to computer-implemented operations). *See id.* at 1349; *see also* '838 Patent at 5:29–30 ("[e]ach cell phone includes a Central Processing Unit (CPU)"). Claim 54 of the '838 Patent, for example, recites an algorithm for the "device programmed to perform operations" (emphasis added):

> 54. A system comprising:
>> *a first device programmed to perform operations comprising*:
>> joining a communication network corresponding to a group, wherein joining the communication network comprises transmitting a message including an identifier corresponding to the group;
>> participating in the group, wherein participating in the group includes sending first location information to a first server and receiving second location information from the first server, the first location information comprising a location of the first device, the second location information comprising one or more locations of one or more respective second devices included in the group;
>> presenting, via an interactive display of the first device, a first interactive, georeferenced map and a first set of one or more user-selectable symbols corresponding to a first set of one or more of the second devices, wherein the first set of symbols are positioned on the first georeferenced map at respective positions corresponding to the locations of the first set of second devices, and wherein first georeferenced map data relate positions on the first georeferenced map to spatial coordinates;
>> sending, to a second server, a request for second georeferenced map data different from the first georeferenced map data;
>> receiving, from the second server, the second georeferenced map data;

presenting, via the interactive display of the first device, a second georeferenced map and a second set of one or more user-selectable symbols corresponding to a second set of one or more of the second devices, wherein the second set of symbols are positioned on the second georeferenced map at respective positions corresponding to the locations of the second set of second devices, and wherein the second georeferenced map data relate positions on the second georeferenced map to spatial coordinates; and

identifying user interaction with the interactive display selecting one or more of the second set of user-selectable symbols corresponding to one or more of the second devices and positioned on the second georeferenced map and user interaction with the display specifying an action and, based thereon, sending third data to the selected one or more second devices via the first server.

The other claims at issue are similar in this regard. Defendants have not identified any independent claim that recites merely a "device" rather than a "device programmed to perform operations."

Plaintiff has cited the Court's analysis in *Gemalto S.A. v. HTC Corp.*, in which the Court found that 35 U.S.C. § 112, ¶ 6 did not apply to the term "means for translating." No. 6:10-CV-561, 2012 WL 2505745, at *23 (E.D. Tex. June 28, 2012) (Love, J.). The language at issue in *Gemalto* included the following: "means for translating from the byte codes in the compiled form to byte codes in a format suitable for interpretation by the interpreter by: . . . ." *Id.* After acknowledging the presumption that a "means" term is governed by 35 U.S.C. § 112, ¶ 6, *Gemalto* found that "the claims recite a structurally complete 'means for translating' because they recite a 'programmable environment' and include all the necessary algorithmic steps to perform the 'means for translating' function." *Id.* (footnote omitted); *see id.* ("while not explicitly reciting a 'processor' . . ., the claims clearly contemplate a 'programmable environment' that includes a processor").

Although *Gemalto* was decided prior to *Williamson*, two points are noteworthy. First, *Gemalto* did not utilized the pre-*Williamson* "strong" presumption against applying 35 U.S.C. § 112, ¶ 6 in the absence of the word "means" because *Gemalto* involved a "means" term (as to

which 35 U.S.C. § 112, ¶ 6 was presumed to apply). *See Williamson*, 792 F.3d at 1349 ("expressly overrul[ing] the characterization of that presumption as 'strong'"). Second, *Williamson* states that the presumption against applying 35 U.S.C. § 112, ¶ 6 may be overcome if "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* at 1349 (citation and internal quotation marks omitted). In the above-quoted claim, for example, the "device" is recited as having been programmed to perform all seven of the limitations detailed in the remainder of the claim. The claim itself thus recites structure, and relatedly, this claim language is not "in a format consistent with traditional means-plus-function claim limitations." *Id.* at 1350.

Additional precedent cited by Plaintiff, as well as other authorities, provide further support. *See Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996) (finding that "perforation means . . ." term was not governed by 35 U.S.C. § 112, ¶ 6, noting that "[t]o invoke this statute, the alleged means-plus-function claim element must not recite a definite structure which performs the described function"); *see also Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1340–41 (Fed. Cir. 2011) (citing *Cole*); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) (noting that the terms at issue were "accompanied by . . . language reciting their respective objectives or operations"); *cf. Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10–CV–910, 2018 WL 1699429, at *15–*18 (E.D. Va. Apr. 6, 2018) (finding that various "computer code" terms were not means-plus-function terms). Also, Plaintiff has submitted the opinions of its expert that the claim language at issue would be understood as reciting structure. (*See* Dkt. No. 165-1, July 25, 2018 Carbonell Decl., at ¶¶ 65–94.)[8]

---

[8] Plaintiff has also cited *Inter Partes* Review proceedings, but this evidence does not significantly affect the Court's analysis of this disputed term. (*See* Dkt. No. 165, at 16.)

On balance, in light of the principles set forth in *Williamson*, *Cole*, and *Rembrandt*, the analysis in *Gemalto* is persuasive.[9]

Defendants' counter-arguments, including that that the word "by" in *Gemalto* separated function from algorithm, are unpersuasive. (*See* Dkt. No. 175, at 5–7.) The opinions of Defendants' expert are also unpersuasive. (*See* Dkt. No. 175-23, Aug. 13, 2018 Bartone Decl., at ¶¶ 78–84.) Further, Defendants have cited findings of the Court of Appeals for the Federal Circuit in *Advanced Ground Information Systems, Inc. v. Life360, Inc.*, but those pertained to lack of corresponding structure for the term "symbol generator," which the court found were governed by 35 U.S.C. § 112, ¶ 6. *See* 830 F.3d 1341, 1349 (Fed. Cir. 2016); *see also id.* at 1346–49. Defendants have not shown how the *Life360* analysis of the corresponding structure requirement *under* 35 U.S.C. § 112, ¶ 6 bears on *whether* 35 U.S.C. § 112, ¶ 6 applies. *See id.*[10]

Based on the foregoing, 35 U.S.C. § 112, ¶ 6 does not apply to Claim 54 of the '838 Patent. Claims 24, 29, and 31 of the '251 Patent, Claims 28, 32, 33, 34, and 36 of the '055 Patent, and Claim 68 of the '829 Patent are similar in this regard, and the Court therefore reaches the same

---

[9] Defendants have cited *Widevine Technologies, Inc. v. Verimatrix, Inc.*, which found that certain "first device . . ." and "second device . . ." terms were governed by 35 U.S.C. § 112, ¶ 6, but the claims at issue in the present case include more extensive algorithmic recitations and are thus distinguishable from the claims at issue in *Widevine*. *See* No. 2:07-CV-321, 2009 WL 3734106, at *14 (E.D. Tex. Nov. 4, 2009) (Ward, J.).

[10] *See also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1296 (Fed. Cir. 2014), *abrogated on other grounds by Williamson*, 792 F.3d 1339 (emphasis added):

> The overall means-plus-function analysis is a two-step process. Naturally, there is some analytical overlap between these two steps. In the first step, we must determine if the claim limitation is drafted in means-plus-function format. As part of this step, we must construe the claim limitation to decide if it connotes "sufficiently definite structure" to a person of ordinary skill in the art, which requires us to consider the specification (among other evidence). In the second step, if the limitation is in means-plus-function format, we must specifically review the specification for "corresponding structure." Thus, *while these two "structure" inquiries are inherently related, they are distinct.*

conclusion as to those claims. Finally, Defendants have not proposed any alternative construction.

To the extent that Defendants are maintaining their lack-of-disclosure arguments more generally (rather than only under 35 U.S.C. § 112, ¶ 6), such arguments may bear on issues of enablement or written description but do not present any further issue for claim construction.

The Court accordingly hereby finds that 35 U.S.C. § 112, ¶ 6 does not apply, and the Court hereby construes these claims to have their **plain meaning** (other than as set forth in this Claim Construction Memorandum and Order as to any other disputed terms that appear in these claims).

## I. "a forced message alert software application program"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "application software that allows an operator to create and transmit forced message alerts comprising a text alert that is displayed until cleared or a voice alert that repeats until cleared" | "application software that allows an operator to create and transmit forced message alerts, automatically transmit an acknowledgement of receiving them, periodically resend them when no acknowledgement is received, indicate on a display which recipient devices have acknowledged the forced message alert, provide a manual response list on the display of the recipient device, and provide an indication of the status and content of the manual response selected by the recipient devices" |

(Dkt. No. 162, App'x 1, at 109; Dkt. No. 165, at 21; Dkt. No. 175, at 40; Dkt. No. 186, at 10; Dkt. No. 194, App'x A, at 8.) The parties submit that this term appears in Claims 1 and 6 of the '970 Patent. (Dkt. No. 162, App'x 1, at 109.)

(1) The Parties' Positions

Plaintiff submits that "every embodiment disclosed in the specification comprises an alert that is displayed or repeated until it is cleared thereby implicitly defining what is meant by a 'forced message alert.'" (Dkt. No. 165, at 21.) Plaintiff also argues that "Defendants' proposed

construction notably injects additional limitations into the claim without providing any clarity with regard to the 'forced' aspect of the term." (*Id.*, at 22.)

Defendants respond that their proposed construction "tracks precisely the inventor's explanation of the precise operations the application must perform." (Dkt. No. 175, at 40 (citing '970 Patent at Abstract & 2:7–36).)

Plaintiff replies that "Defendants' construction fails to explain what is meant by 'a forced message alert.'" (Dkt. No. 186, at 11.) Plaintiff also argues that Defendants' proposal of "provid[ing] an indication . . ." lacks support in the specification. (*Id.*)

(2) Analysis

Defendants have cited disclosures in the Abstract and in the Summary of the Invention that refer to the functionality in Defendants' proposed construction. For example, the Summary of the Invention discloses:

> A plurality of PCs and PDA/cell phones each having forced alert software installed providing a communication network of PCs and PDA/cell phones with the ability to: a) allow an operator to create and transmit (via TCP/IP or another digital transmission means) a forced voice alert, wherein said forced voice alert is comprised of a text or voice message file and a forced alert software packet, from a sender PC or PDA/cell phone to one or more recipient PCs and PDA/cell phones within said communication network; (b) automatically transmit an acknowledgement of receipt from said recipient PCs and PDA/cell phones to the sender PCs or PDA/cell phones upon receipt of the forced message alert by the recipient PCs and PDA/cell phones; (c) periodically resend the message to the recipient PCs and PDA/cell phones that have not sent an acknowledgement until an acknowledgement is received from every recipient PC and PDA/cell phone; (d) provide an indication on the display of the sender PC or PDA/cell phone of which recipient PCs and PDA/cell phones have acknowledged the forced message alert; (e) provide a manual response list on the display of the recipient PC and PDA/cell phone's display that can only be cleared by manually selecting and transmitting a response from the list or recording and transmitting a voice response after sending said automatic acknowledgment; and (f) provide an indication on the sender PC or PDA/cell phone of the status [of] the manual response and the content of the manual response from each recipient PCs and PDA/cell phones.

'970 Patent at 2:7–34.  In some circumstances, statements that appear in the Summary of the Invention or that describe the invention as a whole may warrant a narrow construction.  *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) ("Although a statement's location is not 'determinative,' the location can signal the likelihood that the statement will support a limiting definition of a claim term.  Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term."); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1322 (Fed. Cir. 2011) ("These statements about the invention are not limited to specific embodiments or examples but describe and define the invention overall."); *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016) ("[W]hen a patent repeatedly and consistently characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization.") (citation and internal quotation marks omitted).

Here, however, Defendants have not identified any definition or disclaimer in this regard or otherwise shown that the patentee limited the disputed term  to require all of the cited details of how the claimed invention may be "embodied."  *See* '970 Patent at 2:3–6; *see also PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 755 (Fed. Cir. 2016) ("[i]t is not necessary that each claim read on every embodiment") (quoting *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010)).  On balance, these are specific features of particular disclosed embodiments that should not be imported into the construction of "a forced message alert software application program."  *See Phillips*, 415 F.3d at 1323.  The Court likewise rejects Plaintiff's proposal of requiring "a text alert that is displayed until cleared or a voice alert that repeats until cleared" as part of the construction of this term.  *See* '970 Patent at 2:49–55.

The Court therefore hereby construes **"a forced message alert software application program"** to mean **"application software that allows an operator to create and transmit forced message alerts."**

**J. "manual response"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain Meaning | "user-selectable reply that is sent back to the sender PDA/cell phone" |

(Dkt. No. 162, App'x 1, at 111; Dkt. No. 165, at 22; Dkt. No. 175, at 42; Dkt. No. 186, at 11; Dkt. No. 194, App'x A, at 8.)  The parties submit that this term appears in Claims 1 and 6 of the '970 Patent.  (Dkt. No. 162, App'x 1, at 111.)

(1)  The Parties' Positions

Plaintiff argues that "this term would be easily understood by the jury and does not require any construction."  (Dkt. No. 165, at 22.)  Plaintiff also argues that "Defendants' proposed construction adds the unnecessary limitation of 'that is sent back to the sender PDA/cell phone,'" and "Defendants cannot point to any definition by the Patentee or unambiguous disavowal of claim scope to support this limitation."  (*Id.*, at 22–23.)

Defendants respond that "the specification repeatedly describes the manual response as a user-selectable reply that is responsive to a forced message alert," and "[t]his functionality was twice emphasized via amendment and argument in prosecution to overcome two rejections."  (Dkt. No. 175, at 42.)

Plaintiff replies that "Defendants' arguments do not cite any statements that rise to the level of lexicography or disavowal that would mandate Defendants' proposed constructions."  (Dkt. No. 186, at 11.)

<u>(2)  Analysis</u>

Claim 1 of the '970 Patent, for example, recites (emphasis added):

1.  A communication system for transmitting, receiving, confirming receipt, and responding to an electronic message, comprising:

a predetermined network of participants, wherein each participant has a similarly equipped PDA/cell phone that includes a CPU and a touch screen display a CPU [*sic*] and memory;

a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations;

a sender PDA/cell phone and at least one recipient PDA/cell phone for each electronic message;

a forced message alert software application program including *a list of required possible responses* to be selected by a participant recipient of a forced message response loaded on each participating PDA/cell phone;

means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing *a list of possible required responses* and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone;

means for requiring a required *manual response from the response list* by the recipient in order to clear recipient's response list from recipient's cell phone display;

means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert;

means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert; and

means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a *manual response* to said forced message alert and details the response from each recipient PDA/cell phone that responded.

First, a "manual response" must be selectable by the recipient.  This understanding is consistent with the context in which the term is used in the claims, which recite that a manual response is selected from a response list.  *See* '970 Patent at Cls. 1 (reproduced above) & 6.  The specification is also consistent with this understanding.  *See* '970 Patent at 2:26–29 ("provide a manual response list . . . that can only be cleared by manually *selecting and transmitting a response*

from the list") (emphasis added), 7:24 ("user operator is required to *select* a reply from this list") (emphasis added) & 8:43–44 ("until a manual response is *selected* from the response list") (emphasis added). Defendants have also cited prosecution history in this regard. (*See* Dkt. No. 175, at 42 (citing Exs. 13 & 14).) Although Defendants have not identified any definitive statements in this prosecution history that provide a specific definition for the term "manual response," it is noteworthy that this prosecution history is consistent with Defendants' proposed interpretation. (*See* Dkt. No. 175, Ex. 13, Dec. 17, 2010 Response and Amendment, at 8; *see also id.*, Ex. 14, Sept. 9, 2011 Response and Amendment, at 8–9.)

Further, the foregoing evidence demonstrates that the *content* of the response must be sent, not merely an indication of whether or not a response has been selected. To whatever extent Plaintiff is interpreting the disputed term otherwise, the Court hereby expressly rejects Plaintiff's interpretation. Likewise, to whatever extent Plaintiff is arguing that a possible response to a message could be merely ignoring it, such an interpretation would be inconsistent with the foregoing evidence (including the context provided by other claim language) that a "manual response" must be an affirmative response.

Second, as to Defendants' proposal that the selected response must be "sent back to the sender PDA/cell phone," Claim 1 of the '970 Patent recites a "means for receiving and displaying a listing of which recipient PDA/cell phones have *transmitted a manual response* to said forced message alert and details the response from each recipient PDA/cell phone that responded." Claim 6 of the '970 Patent similarly recites "clearing the recipient's display screen or causing the repeating voice alert to cease upon recipient selecting a response from the response list required [*sic*] that can only be cleared by manually selecting and *transmitting a response* to the manual response list." The claims thus already address transmission of a response, and they impose no

limitation as to the response being "sent back to the sender PDA/cell phone." The Court therefore rejects Defendants' proposal in that regard.

The Court accordingly hereby construes **"manual response"** to mean **"recipient-selectable response message."**

## K. "the repeating voice alert"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain Meaning | Indefinite |

(Dkt. No. 162, App'x 1, at 112; Dkt. No. 165, at 23; Dkt. No. 175, at 43; Dkt. No. 186, at 12; Dkt. No. 194, App'x A, at 8.) The parties submit that this term appears in Claim 6 of the '970 Patent. (Dkt. No. 162, App'x 1, at 112.)

### (1) The Parties' Positions

Plaintiff argues that "[t]his term does not require construction as a person of ordinary skill in the art would understand its meaning with reasonable certainty from its context in the claim and based on the specification." (Dkt. No. 165, at 23.) Plaintiff also submits that Defendants Apple, Huawei, and LG have been able to apply this term for purposes of their *inter partes* review petitions. (*Id.*, at 7.)

Defendants respond that "[t]he limitation 'the repeating voice alert' lacks antecedent basis and is therefore indefinite." (Dkt. No. 175, at 43.) Defendants also argue that "the phrase 'repeating voice alert' has no inherent components that may provide implicit antecedent basis." (*Id.*)

Plaintiff replies that the meaning of this term is clear because "one of ordinary skill in the art would have understood that the 'voice message' repeats, not that the 'forced message alert' repeats." (Dkt. No. 186, at 12.)

<u>(2)  Analysis</u>

As a general matter, "a claim could be indefinite if a term does not have proper antecedent

basis where such basis is not otherwise present by implication or the meaning is not reasonably

ascertainable."  *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir.

2008) (citing *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370–71 (Fed. Cir.

2006)).  Here, Claim 6 of the '970 Patent recites (emphasis added):

> 6.  A method of sending a forced message alert to one or more recipient PDA/cell phones within a predetermined communication network, wherein the receipt and response to said forced message alert by each intended recipient PDA/cell phone is tracked, said method comprising the steps of:
>
> accessing a forced message alert software application program on a sender PDA/cell phone;
>
> creating the forced message alert on said sender PDA/cell phone by *attaching a voice or text message* to a forced message alert application software packet to said voice or text message;
>
> designating one or more recipient PDA/cell phones in the communication network;
>
> electronically transmitting the forced message alert to said recipient PDA/cell phones;
>
> receiving automatic acknowledgements from the recipient PDA/cell phones that received the message and displaying a listing of which recipient PDA/cell phones have acknowledged receipt of the forced message alert and which recipient PDA/cell phones have not acknowledged receipt of the forced message alert;
>
> periodically resending the forced message alert to the recipient PDA/cell phones that have not acknowledged receipt;
>
> receiving responses to the forced message alert from the recipient PDA/cell phones and displaying the response from each recipient PDA/cell phone; and
>
> providing a manual response list on the display of the recipient PDA/cell phone that can only be cleared by the recipient providing a required response from the list;
>
> clearing the recipient's display screen or causing *the repeating voice alert* to cease upon recipient selecting a response from the response list required [*sic*] that can only be cleared by manually selecting and transmitting a response to the manual response list.

On balance, although the term "the repeating voice alert" lacks explicit antecedent basis,

the claim is nonetheless readily understandable.  *See Microprocessor Enhancement Corp. v. Texas

Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (noting "the well-settled rule that claims

are not necessarily invalid for a lack of antecedent basis"). Defendants have argued that the claim is unclear as to the meaning of "voice alert," but the meaning is reasonably clear in light of the recital of "attaching a *voice* or text *message* to a forced message *alert*."

Further, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. The specification provides context by disclosing that "[i]f the alert is a voice message, the message keeps repeating at a defined rate until the user operator selects from the required response list" and "[t]his voice message cannot be stopped from repeating until one of the entries on the response list is selected." '970 Patent at 7:24–27 & 8:50–51. The opinion of Plaintiff's expert is also persuasive in this regard. (*See* Dkt. No. 165-1, July 25, 2018 Carbonell Decl., at ¶¶ 103–05.)[11] This intrinsic and extrinsic evidence reinforces that the disputed term would be readily understandable to a person of ordinary skill in the art.

The Court therefore hereby construes **"the repeating voice alert"** to mean **"voice message that is repeating and that was attached to the forced message alert."**

## L. "group"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain Meaning | "more than two participants associated together without having to pre-enter data into a web or identify other users by name, E-mail addresses or phone numbers" |

---

[11] Plaintiff has also cited expert declarations submitted in support of petitions for *Inter Partes* Review filed by Defendants, but this evidence does not affect the Court's analysis of this disputed term. (*See* Dkt. No. 165, at Exs. I & J.)

(Dkt. No. 162, App'x 1, at 114; Dkt. No. 175, at 22; Dkt. No. 186, at 13; Dkt. No. 194, App'x A, at 45.)  The parties submit that this term appears in Claims 1, 54, 55, and 84 of the '838 Patent, Claims 1 and 24 of the '251 Patent, and Claims 1, 34, 35, and 68 of the '829 Patent.  (Dkt. No. 162, App'x 1, at 114.)

### (1)  The Parties' Positions

Plaintiff argues that Defendants' proposal of "more than two" is inconsistent with disclosure in the specification regarding "two or more."  (Dkt. No. 165, at 25 (citing '838 Patent at 1:30–34).)  Plaintiff also argues that Defendants' proposal of a negative limitation of "without having to pre-enter data into a web or identify other users by name, E-mail addresses or phone numbers" lacks support.  (*See id.*, at 25–26.)

Defendants respond that "the specification repeatedly and consistently distinguishes communications involving a 'group' of participants from communications involving only two participants."  (Dkt. No. 175, at 22.)  Defendants also argue that "the specification repeatedly and consistently states that participants joining a group to coordinate their activities and share information can do so without having to pre-enter data or identify others by name, email, or phone number."  (*Id.*, at 24.)  Further, Defendants argue that "during prosecution of a related patent, the applicant distinguished prior art because—unlike the alleged invention—the prior art network required users to pre-enter phone numbers or email addresses before joining the network."  (*Id.*, at 25.)

Plaintiff replies, as to the number of users in a "group," that "Defendants point to several places in the specification, but these citations do not amount to clear and unambiguous disavowal of groups of two."  (Dkt. No. 186, at 13–14.)  As to the remainder of Defendants' proposal, Plaintiff replies that "Defendants ignore the specification of the incorporated-by-reference '728 Patent

which discloses groups, but makes *no mention* of pre-entry of data." (*Id.*, at 16.) Plaintiff also notes that "nothing in the claims themselves specify 'pre-enter,' 'a web,' or identification by 'name, e-mail address or phone number.'" (*Id.*, at 17.)

(2) Analysis

First, the parties dispute whether a "group" must have more than two participants. Second, the parties dispute whether the participants joining the group are "associated together" without having to pre-enter data or identify other users by name, e-mail, or phone number.

As to whether a "group" must have more than two participants, the following disclosure at the beginning of the Field of the Invention section of the specification refers to "two or more people": "A communications method and system using a plurality of cellular phones each having an integrated Personal Digital Assistant (PDA) and Global Positioning System (GPS) receiver for the management of *two or more people* through the use of a communications network." '838 Patent at 1:30–34 (emphasis added).

Defendants have highlighted, however, that the specification distinguishes between "individual calls" and "group calls": "A network of cellular communication systems set up around an area such as the United States allows multiple users to talk to each other, either on *individual calls* or on *group calls*." *Id.* at 1:56–59 (emphasis added). A reasonable reading of this disclosure is that whereas an "individual" call involves two parties, a "group" call involves more than two parties. Plaintiff has argued that this discussion of a "group *call*" does not necessarily address the meaning of the term "group" more generally, but other disclosure tends to reinforce the contrast between "group" and "individual." *See id.* at 2:54–60 ("establish an ad hoc network of devices so that the devices can either broadcast to a group or selectively transmit to each of the other").

On balance, this distinction between "individual" and "group" demonstrates that the patentee used the term "group" to refer to communication involving more than two participants. This distinction in the specification should be given effect in the construction of the claim term "group." *See, e.g., Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1272 (Fed. Cir. 2001) ("there is no question that the . . . specification uses the terms 'mode' and 'rate' to refer to two different and distinct concepts"); *see id.* at 1270–73; *see also PPC*, 815 F.3d at 755 ("[i]t is not necessary that each claim read on every embodiment") (quoting *Baran*, 616 F.3d at 1316).

As to the whether the participants joining the group are "associated together" without having to pre-enter data or identify other users by name, e-mail, or phone number, Defendants cite prosecution history regarding an ancestor patent, namely United States Patent No. 8,126,441 ("the '441 Patent"). During prosecution of the '441 Patent, the patentee distinguished the "Crowley" reference (United States Patent No. 7,593,740):

> Crowley *et al.* requires the entry of phone numbers or e-mail addresses into the web site to enable the web server to establish the networks between individuals. The Applicant's claims 3, 4 and 6 do not require the entry of either e-mail addresses or phone numbers to establish networks, but rather transmit an IP address to the remote private ACS IP server. The ACS server then sends the data to the other applicable IP addresses.
>
> * * *
>
> For Claims 3, 4, and 6, it is not necessary to know the other net participants phone numbers, e-mail addresses, or any data about them permitting anonymous communications; . . . .

(Dkt. No. 175, Ex. 6, Feb. 23, 2011 Response and Amendment, at 10 & 13.)

Defendants have argued that this prosecution history as to the related '441 Patent should apply to the patents here at issue. *See Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007) ("When the application of prosecution disclaimer involves statements from prosecution

of a familial patent relating to the same subject matter as the claim language at issue in the patent being construed, those statements in the familial application are relevant in construing the claims at issue.").

Yet, Defendants have not shown how these statements by the patentee as to the '441 Patent are related to the term "group" that is here at issue (rather than other, different claim language). *See id.* On balance, Defendants have not identified any relevant definitive statements in the prosecution history. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on *definitive* statements made during prosecution.") (emphasis added).

Defendants have also cited various disclosures in the specification, including in the Summary of the Invention. *See* '838 Patent at Abstract, 1:45–48, 2:8–14 ("The users need to be able to rapidly coordinate their activities eliminating the need for pre-entry of data into a web and or identifying others by name, phone numbers or email addresses so that all intended participants that enter the agreed ad hoc network name and password are both digitally and voice interconnected."), 2:34–41 ("enable both data and voice communications up and down their chain of command and simultaneously with different, not pre-known, organizations responding to a disaster"), 3:45–48 ("The invention described herein allows users to rapidly coordinate their activities without having to pre-enter data into a web or identify others by name, Email addresses or phone numbers."), 4:4–8, 10:30–31 & 11:2–6; s*ee also C.R. Bard*, 388 F.3d at 864 ("Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term."); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("When a patent thus

describes the features of the 'present invention' as a whole, this description limits the scope of the invention.").

Nonetheless, Defendants have not shown that any of these statements rises to the level of a definition or disclaimer as to whether the term "group" precludes pre-entering data. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Further, "[i]t is not necessary that each claim read on every embodiment." *PPC*, 815 F.3d at 755 (quoting *Baran*, 616 F.3d at 1316); *see Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004) ("The fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives.").

Based on the foregoing, the Court hereby construes **"group"** to mean **"more than two participants associated together."**

## M. **"receiving a message from a second device"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain Meaning | "receiving a message directly from a second device without the use of a server" |

(Dkt. No. 162, App'x 1, at 115; Dkt. No. 165, at 27; Dkt. No. 175, at 29; Dkt. No. 186, at 18; Dkt. No. 194, App'x A, at 87.) The parties submit that this term appears in Claims 1 and 24 of the '251 Patent. (Dkt. No. 162, App'x 1, at 115.)

### (1) The Parties' Positions

Plaintiff argues that "Defendants cannot prevail with their construction because they cannot point to any lexicography or clear and unambiguous disavowal by the Patentee with respect to this term." (Dkt. No. 165, at 27.) Plaintiff also argues that "the prosecution statement that the Defendants have identified does not rise to the level of a clear and unambiguous disclaimer because

Patentee did not make any statements regarding his invention or disclaim any specific scope." (*Id.*, at 28.)

Defendants respond that their proposed construction is consistent with "[t]he plain language of the claims and the applicant's disavowal of the use of a server during prosecution . . . ." (Dkt. No. 175, at 29.) Defendants submit that "the claims separately describe *other* communications between the first device and a 'server.'" (*Id.*)

Plaintiff replies that "[t]he plain meaning of the term 'receiving a message from a second device' can cover instances where the message is received both via a server, and via direct communication." (Dkt. No. 186, at 18.)

(2) Analysis

Claims 1 and 24 of the '251 Patent recite, in relevant part (emphasis added):

1. A computer-implemented method comprising:
    with a first device, *receiving a message from a second device*, wherein the message relates to joining a group; . . . .

* * *

24. A system comprising:
    a first device programmed to perform operations comprising:
        *receiving a message from a second device*, wherein the message relates to joining a group; . . . .

As a threshold matter, Defendants have not shown that anything in the claims warrants requiring that a message be received "directly" and "without the use of a server." Defendants have pointed out that these claims elsewhere recite sending information to a server and receiving information from a server, such as: "based on receiving the message from the second device, participating in the group, wherein participating in the group includes *sending first location information to a server and receiving second location information from the server*." '251 Patent at Cl. 1 (emphasis added). Defendants have not shown, however, how those separate recitals

compel a narrow interpretation of the disputed term. The following principles are noteworthy in this regard:

> The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.

*Thorner*, 669 F.3d at 1365. Likewise, the recital in the related '829 Patent of "one or more server devices . . . forwarding, to a first device, a request to join a group, wherein the request is received from a second device" does not compel a narrow construction of the claims of the '251 Patent. *See* '829 Patent at Cl. 1. Even assuming (without deciding) that the doctrine of claim differentiation is applicable, the claims are readily distinguishable because whereas this claim language in the '829 Patent requires use of a server, the disputed term here at issue in the '251 Patent neither requires nor precludes use of a server.

The remaining issue, then, is whether Defendants' proposed construction is supported by the prosecution history of the '251 Patent, in which the patentee distinguished the "Melen" reference (United States Patent Application Publication No. 2004/0148090). *See Fenner Investments, Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1325 (Fed. Cir. 2015) ("[T]he interested public has the right to rely on the inventor's statements made during prosecution, without attempting to decipher whether the examiner relied on them, or how much weight they were given.") (citing *Microsoft*, 357 F.3d at 1350 ("[A] patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation.")).

In the cited prosecution history, the patentee amended the claims in response to rejections so as to add the disputed term. (*See* Dkt. No. 175, Ex. 7, Aug. 13, 2015 Office Action, at 2–5; *see*

*also id.*, Ex. 8, Nov. 13, 2015 Amendment and Response, at 3 & 5.)  In particular, the patentee stated:

> In the process 504a [regarding the establishment of groups in Melen], a server 102 communicates with a first navigation system 300 to add the first navigation system 300 to a group at the request of a second navigation system 300, but *the first and second navigation systems do not communicate with each other until the server adds the first navigation system 300 to the group*.  The above-quoted passage of Melen therefore does not teach "with a first device, receiving a message from a second device, wherein the message relates to joining a group" and "based on receiving the message from the second device, participating in the group, wherein participating in the group includes sending first location information to a server and receiving second location information from the server," as recited in claim 1.

(*Id.*, at 13 (emphasis added); *see id.* at 11–13.)

In the passages cited by Defendants, the patentee thus argued that Melen relied on a server *to add the second device to a group*.  The patentee's statements do not support Defendants' argument that the patentee disclaimed using a server for conveying a message.[12]  Thus, Defendants have failed to show any relevant disclaimer.  *See, e.g., Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable.") (quoting *Omega Eng'g*, 334 F.3d at 1325–26).

The Court therefore hereby expressly rejects Defendants' proposed construction.  No further construction is necessary.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical

---

[12] Also, subsequent to the patentee's cited statements, the examiner stated: "Melen further discussed and/or stated that the navigation systems are capable of *establishing groups* of members and communicating wirelessly with other navigation systems *without the use of a vehicle network server*.  Therefore, in contrast to the Applicant's argument above, the claim does not uniquely and particularly define the limitations so as to distinguish from the applied prior art."  (Dkt. No. 165, Ex. N, Dec. 10, 2015 Office Action, at 2 (emphasis added).)  The examiner, too, thus appeared to be addressing the establishing of groups rather than whether or not a server is involved in conveying messages.

scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction."); *ActiveVideo Networks, Inc. v. Verizon Commcn's, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).

The Court accordingly hereby construes **"receiving a message from a second device"** to have its **plain meaning**.

**N.  "an identifier corresponding to the group"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain Meaning | "an ad hoc event name for the group" |

(Dkt. No. 162, App'x 1, at 117; Dkt. No. 165, at 29; Dkt. No. 175, at 33; Dkt. No. 186, at 19; Dkt. No. 194, App'x A, at 96.)  The parties submit that this term appears in Claims 1, 54, 55 and 84 of the '838 Patent.  (Dkt. No. 162, App'x 1, at 117.)

After the close of briefing, the parties reached agreement that this term should be given its plain meaning.  At the September 13, 2018 hearing, the parties confirmed their agreement in this regard.

In accordance with the parties' agreement, the Court accordingly hereby construes **"an identifier corresponding to the group"** to have its **plain meaning**.

## O. "database of entities"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain Meaning | "georeferenced database stored on the device's CPU that contains phone numbers and latitude and longitude of users and fixed facilities and if available IP addresses and email addresses" |

(Dkt. No. 162, App'x 1, at 119; Dkt. No. 165, at 30; Dkt. No. 175, at 34; Dkt. No. 186, at 20; Dkt. No. 194, App'x A, at 106.)  The parties submit that this term appears in Claim 23 of the '838 Patent and Claim 14 of the '251 Patent.  (Dkt. No. 162, App'x 1, at 119.)

### (1)  The Parties' Positions

Plaintiff argues that "Defendants' proposed construction improperly deviates from the claims, specification, and the ordinary and customary meanings of the terms."  (Dkt. No. 165, at 30.)

Defendants respond that "Defendants' construction aligns the claimed [*sic*] language with the term's consistent characterization—across three patent specifications—and further provides clarity to the proper claim scope and should therefore be adopted."  (Dkt. No. 175, at 35.)

Plaintiff replies that "Defendants seek to read in additional limitations for this term without citing to any clear disavowal of claim scope or lexicography by the patentee and therefore their proposed construction lacks support."  (Dkt. No. 186, at 20.)

### (2)  Analysis

Claim 23 of the '838 Patent, for example, recites (emphasis added):

23.  The method of claim 22, wherein identifying the particular user-selectable symbol based, at least in part, on the spatial coordinates represented by the selected position comprises:
 searching a *database of entities* for an entity located nearest to the spatial coordinates represented by the selected position, wherein the entities represented by data in the database include the one or more second devices included in the

group, wherein the database data include locations of the respective entities, and wherein the database is searchable by location; and

based on a result of searching the database, identifying the particular second device as the entity located nearest to the spatial coordinates represented by the selected position, wherein the particular user-selectable symbol corresponds to the particular second device.

Nothing in the claim language compels a narrow interpretation of "database of entities." Instead, Defendants have cited various disclosures in the specification regarding "geo-referenced" data, "latitude and longitude," and IP addresses and e-mail addresses. '838 Patent at 6:6–15, 6:51–67 & 8:1–31.[13] Defendants have also cited disclosure in an ancestor patent, United States Patent No. 7,630,724 ("the '724 Patent"), regarding entering "fixed entities (buildings, facilities, restaurants, police stations, etc.)" and "geo-referenced events" into the database. (Dkt. No. 175, Ex. 16 ('724 Patent) at 6:49–59; *see id.* at 7:65–8:10, 8:29–49 & 10:9–56; *see also id.* at 5:54–63 ("latitude and longitude . . . within a database along with a specific phone number and, if available, its IP address and email address") & 6:54–7:5 ("geo-referenced map").)

Even assuming (without deciding) that the disclosure in the '724 Patent is applicable for construction of the present disputed term in the '838 Patent and the '251 Patent, the disclosures cited by Defendants pertain to specific features of particular disclosed embodiments that should not be imported into the claims. *See Phillips*, 415 F.3d at 1323.

Finally, Defendants have not persuasively supported their proposal as to the "database of entities" necessarily being "stored on the device's CPU." For example, the specification discloses: "The IP Server also fills another role of being a database from which data can be requested by network participants (i.e. maps, satellite images, and the like) or can be pushed to network participants (i.e. symbology and soft switch changes, and the like)." '838 Patent at 3:36–42.

---

[13] The '251 Patent is a continuation of the '838 Patent.

Defendants have not shown how these claims limit the database to being stored on a particular device. Disclosures in the specification cited by Defendants pertain to specific features of particular disclosed embodiments that should not be imported into the claims. *See* '838 Patent at 6:10–15 & 6:54–67; *see also Phillips*, 415 F.3d at 1323.

The Court therefore hereby expressly rejects Defendants' proposed construction. No further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207; *ActiveVideo Networks*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291.

The Court accordingly hereby construes **"database of entities"** to have its **plain meaning**.

## P. "Short Message Service (SMS) messages"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain Meaning | "cellular based messages of limited size consisting of text and numbers" |

(Dkt. No. 162, App'x 1, at 120; Dkt. No. 165, at 30; Dkt. No. 175, at 35; Dkt. No. 186, at 20; Dkt. No. 194, App'x A, at 108.) The parties submit that this term appears in Claims 1 and 54 of the '055 Patent. (Dkt. No. 162, App'x 1, at 120.)

After the close of briefing, the parties reached agreement that this term should be construed to mean "cellular based messages of limited size consisting of text and numbers." At the September 13, 2018 hearing, the parties confirmed their agreement in this regard.

In accordance with the parties' agreement, the Court hereby construes **"Short Message Service (SMS) messages"** to mean **"cellular based messages of limited size consisting of text and numbers."**

## Q. "the other symbol"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain Meaning | Indefinite |

(Dkt. No. 162, App'x 1, at 122; Dkt. No. 165, at 31; Dkt. No. 175, at 37; Dkt. No. 186, at 21; Dkt. No. 194, App'x A, at 117.)  The parties submit that this term appears in Claims 2 and 42 of the '055 Patent.  (Dkt. No. 162, App'x 1, at 122.)

After the close of briefing, the parties reached agreement that this term should be construed as referring to the preceding recital of "another symbol."  At the September 13, 2018 hearing, the parties confirmed their agreement in this regard.

In accordance with the parties' agreement, the Court hereby construes the term **"the other symbol"** to have its **plain meaning** and finds that **the term refers back to the recital of "another symbol."**

## R. "user selection of the sub-net"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "user selection of one or more devices among an existing network of participants" | "user selection of less than all devices among an existing network of participants" |

(Dkt. No. 162, App'x 1, at 123; Dkt. No. 165, at 32; Dkt. No. 175, at 39; Dkt. No. 186, at 22; Dkt. No. 194, App'x A, at 118.)  The parties submit that this term appears in Claims 7 and 34 of the '055 Patent.  (Dkt. No. 162, App'x 1, at 123.)

(1)  The Parties' Positions

Plaintiff argues: "The only dispute between the parties is whether a 'sub-net' means 'one or more devices' or 'less than all devices' amongst an existing network of participants. Defendants' proposed construction should be rejected because it reads out a preferred embodiment and is inconsistent with the claim language."  (Dkt. No. 165, at 32.)

Defendants respond that "the specification explains that the formation of a sub-net begins from the existing network of ad hoc participants . . ., and results in the selection of a smaller number of participants . . . ." (Dkt. No. 175, at 39 (citing '055 Patent at 12:59–13:26 & Fig. 8).)

Plaintiff replies that "[t]his Court should reject Defendants' proposed claim construction for this term as its arguments focus on one non-limiting example while ignoring the claim language." (Dkt. No. 186, at 22.)

(2) Analysis

Claim 7 of the '055 Patent, for example, depends from Claim 6, and Claims 6 and 7 recite (emphasis added):

> 6. The method of claim 1, further comprising performing, by the first device:
> receiving second user *selection* of one or more of the symbols corresponding to one or more of the second devices; and
> receiving user input *assigning* the one or more second devices corresponding to the second selected one or more symbols to a *sub-net*.
>
> 7. The method of claim 6, further comprising performing, by the first device:
> *receiving user selection of the sub-net*; and
> establishing a conference among the one or more second devices of the sub-net for sharing voice, text, photographs, or video communications.

Defendants have not shown why the "selection" and "assigning" of "one or more" devices in Claim 6 could not include *all* devices. The disclosures cited by the parties do not preclude this possibility:

> When using the PTT [(Push To Talk)] feature, the ACS can enable the network participant to: 1. PTT with all that are in the ad hoc digital network, or 2. PTT with select specific network participants, by touching their symbol(s) and then selecting PTT soft switch or 3. *Specify a group of the network participants* by assigning their symbols or unit names to a list of network participants and then associating the list with a soft switch whose function is to enable the operator to have PTT communications with all in the list.

'055 Patent at 4:9–17 (emphasis added); *see id.* at 12:40–48 (similar); *see also id.* at 12:59–13:26 ("defining a map area that limits the participating group to only those users within a geographically

- 58 -

defined area") & Fig. 8.  The disclosures cited by Defendants in related United States Patent No. 7,031,728 similarly do not warrant the limitation proposed by Defendants.  (*See* Dkt. No. 175, Ex. 15 ('728 Patent) at 2:20–27 ("reporting their positions and status information directly to all or selected users") & 11:20–42 ("initiate and establish conference calls with all of the designated cellular phone users").)

Finally, Defendants' have cited a technical dictionary definition of "subnet" as referring to less than an entire network.  (*See* Dkt. No. 175, Ex. 12, *Microsoft Computer Dictionary* 502 (5th ed. 2002) (defining "subnet" as "a network that forms part of a larger network").)  Defendants have not persuasively shown that this definition is applicable in the context of the claimed inventions, which focus on interactions between users rather than "network-level" interactions. *See Phillips*, 415 F.3d at 1321 (discussing problems that may arise from "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent").

The Court therefore hereby construes **"user selection of the sub-net"** to mean **"user selection of one or more devices among an existing network of participants."**

## V.  CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit, and in reaching these conclusions the Court has considered extrinsic evidence.  The Court's constructions thus include subsidiary findings of fact based upon the extrinsic evidence presented by the parties in these claim construction proceedings.  *See Teva*, 135 S. Ct. at 841.

The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in

the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby **ORDERED**, in good faith, to mediate this case with the mediator agreed upon by the parties. As a part of such mediation, each party shall appear by counsel (with lead and local counsel present and participating) and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation. Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate. No participant shall leave the mediation without the approval of the mediator.

**So ORDERED and SIGNED this 10th day of October, 2018.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE